Nos. 23-15049, 23-15050, 23-15051 (consolidated)

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THERESA SWEET et al.,
*Plaintiffs-Appellees*,

v.

EVERGLADES COLLEGE, INC., LINCOLN EDUCATIONAL SERVICES
CORP., and AMERICAN NATIONAL UNIVERSITY,
*Intervenor-Appellants*,

v.

U.S. DEPARTMENT OF EDUCATION, MIGUEL A. CARDONA, in his official
capacity as Secretary of the U.S. Department of Education,
*Defendants-Appellees*

**On Appeal from the United States District Court for the
Northern District of California
Case No. 3:21-mc-80075-WHA, Hon. William Alsup**

## PLAINTIFF-APPELLEES' OPPOSITION TO INTERVENOR-APPELLANTS' MOTION FOR STAY PENDING APPEAL AND CROSS-MOTION TO DISMISS APPEALS FOR LACK OF JURISDICTION

Joseph Jaramillo
HOUSING & ECONOMIC RIGHTS
ADVOCATES
3950 Broadway, Suite 200
Oakland, CA 94611
jjaramillo@heraca.org
Tel.: (510) 271-8443

*Attorneys for Plaintiff-Appellees Theresa
Sweet, Chenelle Archibald, Daniel Deegan,
Samuel Hood, Tresa Apodaca, Alicia Davis,
Jessica Jacobson, and all others similarly
situated*

Rebecca C. Ellis
Rebecca C. Eisenbrey
Eileen M. Connor
PROJECT ON PREDATORY
STUDENT LENDING
769 Centre Street, Suite 166
Jamaica Plain, MA 02130
rellis@ppsl.org
reisenbrey@ppsl.org
econnor@ppsl.org
Tel.: (617) 390-2669

## TABLE OF CONTENTS

INTRODUCTION …………………………………………………………1

BACKGROUND …………………………………………………………..1

PLAINTIFF-APPELLEES' OPPOSITION TO MOTION FOR STAY……………6

    I.    Legal Standard ................................................................. 6

    II.    Appellants Will Not Experience Any Harm Absent a Stay ............... 8

        A.    Appellants' Asserted "Procedural" Harms Do Not Exist.......... 8

        B.    Appellants' Claims of Reputational Harm Are Vague, Conclusory, and Unconnected to Implementation of the Settlement ...............................................................10

PLAINTIFF-APPELLEES' CROSS-MOTION TO DISMISS ……...…………13

    I.    Legal Standard.................................................................14

    II.    Appellants Lack Article III Standing...................................15

        A.    Appellants Have Not Suffered Any Injury-in-Fact.................15

        B.    Appellants' Claimed Injuries Could Not Be Redressed By a Favorable Ruling ...................................................20

CONCLUSION ……………………………………………………………...21

i

## TABLE OF AUTHORITIES

**Cases**

*adidas America, Inc. v. Skechers USA, Inc.*, 890 F.3d 747 (9th Cir. 2018) ............12

*Al Otro Lado v. Wolf*, 952 F.3d 999 (9th Cir. 2020) .............................................. 7

*Diamond v. Charles*, 476 U.S. 54 (1986) .............................................................13

*Doe #1 v. Trump*, 957 F.3d 1050 (9th Cir. 2020) .............................................7, 13

*Fikre v. FBI*, 35 F.4th 762 (9th Cir. 2022) ...........................................................19

*Grae v. Corrections Corp. of Am.*, 57 F.4th 567 (6th Cir. 2023) ..........................19

*Hart v. Parks*, 450 F.3d 1059 (9th Cir. 2006) .......................................................19

*Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239
    (9th Cir. 2013) .....................................................................................5, 16

*Hilton v. Braunskill*, 481 U.S. 770 (1987) ............................................................ 7

*Laird v. Tatum*, 408 U.S. 1 (1972) .................................................................17, 20

*Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011) ........................................... 7

*Local 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. Cleveland*,
    478 U.S. 501 (1986) ..................................................................................17

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .....................................14, 19

*Meese v. Keene*, 481 U.S. 465 (1987) ...................................................................17

*Nalder v. United Auto. Ins. Co.*, 817 F. App'x 347 (9th Cir. 2012) ......................14

*Nken v. Holder*, 556 U.S. 418 (2009) .................................................................6, 7

*Paul v. Davis*, 424 U.S. 693 (1976) .....................................................................19

*Przywieczerski v. Blinken*, No. 20-cv-02098, 2021 WL 2385822
    (D.N.J. June 10, 2021) ..............................................................................20

*Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904 (2d Cir. 1990) ...................12

*Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) ...........................14

ii

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ........................................................14

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ....................................18, 19

*Wittman v. Personhuballah*, 578 U.S. 539 (2016) ...............................................13

### Statutes

5 U.S.C. § 555(e) ...............................................................................................2, 10

5 U.S.C. § 706(2) ..................................................................................................... 2

20 U.S.C. § 1082(a)(6) .............................................................................................9

20 U.S.C. § 1087e(a)(1) ...........................................................................................9

28 U.S.C. § 516 ........................................................................................................9

28 U.S.C. § 519 ........................................................................................................9

### Regulations

34 C.F.R. § 685.206(e)(10) ......................................................................................9

59 Fed. Reg. 61664-01 ............................................................................................. 9

81 Fed. Reg. 75,926-01 ........................................................................................9, 10

### Rules

Ninth Circuit Rule 3-6(a)(2) ...................................................................................14

Ninth Circuit Rule 3-6(b) ........................................................................................14

## INTRODUCTION

Appellants' Motion for a Stay Pending Appeal does not require a lengthy background, complex legal analysis, or consideration of any questions of "unprecedented" importance (Mot. at 2). Rather, it turns on one simple fact: Appellants have not shown that they will experience any irreparable harm absent a stay of the district court's judgment pending their appeals. They thus fail this Circuit's test for a stay. Appellants' motion should be denied.

But moreover, Appellants have not shown that anything about the Settlement has caused or is likely to cause them *any* cognizable legal injury. Put differently: they lack Article III standing. An intervenor who appeals a final judgment when neither of the original parties below have appealed must demonstrate independent Article III standing to maintain that appeal. Appellants have failed to do so, as demonstrated by the record in the district court and their deficient Motion. Plaintiffs therefore cross-move for dismissal of these appeals for lack of appellate jurisdiction.

## BACKGROUND

In short, the underlying litigation here is, and has always been, between the federal student loan borrowers who constitute the Plaintiff Class and the U.S. Department of Education ("Department"). Class members submitted applications to the Department to have their student loans canceled based on misconduct by their schools, in a process known as borrower defense to repayment ("BD").

1

For the better part of five years, the BD process stood at an unlawful standstill. Plaintiffs initiated this suit in June 2019 to force the Department to restart the process, alleging that its failure to adjudicate BD applications constituted agency action unlawfully withheld or unreasonably delayed under the Administrative Procedure Act ("APA"). *See* A.102-103. After an abortive attempt at a settlement and a finding by the district court of bad faith by the Department, *see* Plaintiff-Appellees' Supplemental Appendix ("Supp.A.") at 11-16, the parties entered into discovery. Based on materials adduced in discovery, Plaintiffs filed a Supplemental Complaint that significantly expanded the scope of the case. They alleged that Defendants adopted an unlawful "presumption of denial" policy for BD applications and issued thousands of unlawful form denial notices pursuant to this policy, in violation of Sections 706(2) and 555(e) of the APA and the Due Process Clause of the U.S. Constitution. A.195-197.

Following further litigation and a lengthy negotiation process, the parties signed the Settlement Agreement at issue in these appeals (the "Settlement") on June 22, 2022. *See* A.201, A.224. As relevant here, the Settlement included a list of schools, referred to in the litigation as "Exhibit C"; class members who borrowed federal loans for the cost of attendance at these schools would receive automatic relief under the Settlement, consisting of discharges of their relevant federal loans, refunds of amounts paid, and credit repair. *See* A.227, A.229, A.260-263. The

2

Department has consistently stated (including under oath), and the district court has found, that the Department will not—indeed, *cannot*—seek to recoup any amounts discharged or refunded under the Settlement from the schools that the class members attended. *See* A.376-377, A.482, A.541-543.

Three weeks after the parties moved for preliminary approval of the Settlement, four educational institutions—including the three Appellants here—moved to intervene in the litigation. *See* A.35 (Dkt. 254, 261). Each argued, in effect, that it had an interest in the case because it was named on Exhibit C. At a hearing on August 4, 2022, the district court granted preliminary approval of the Settlement from the bench. Supp.A.100, 108. The court explained that it might allow the intervenors to "oppose the settlement," Supp.A.109, but the Court was "not saying that any ... intervenors have a property interest that's at stake," Supp.A.112. Rather, the court was "inclined to let [intervenors] in ... to keep the system honest" by "help[ing] [the court] see the opposing arguments." *Id.* On August 31, 2022, the court denied Appellants' motions to intervene as of right, but allowed them permissive intervention "for the sole and express purpose of objecting to and opposing the class action settlement." A.390.

Appellants did oppose final approval of the Settlement, *see* A.40 (Dkt. 325, 326, 327), and were heard at the fairness hearing, *see* Supp.A.137-164. The class, meanwhile, overwhelmingly supported the Settlement: the district court received

3

over a thousand comments in favor of it and less than 175 objecting or requesting changes, out of approximately 264,000 class members. *See* A.489. On November 16, 2022, the district court granted final approval of the Settlement. A.467 ("Final Approval Order"). The Final Approval Order addressed each of the arguments Appellants had raised—the same arguments they raise in the instant Motion—and explained in detail why those arguments did not prevail. *See generally* A.467-491.

On January 13, 2023—the final business day before the appeal deadline—the Appellants filed notices of appeal, along with a motion to stay the judgment pending appeal. *See* A.42 (Dkt. 350). Their motion raised arguments substantively identical to the ones in Appellants' briefs opposing final approval and, now, in their Motion before this Court. The district court entered an administrative stay that prevented the Department from discharging any loans for class members from Exhibit C schools until the court could hear the stay motion. A.43 (Dkt. 356).

Following full briefing and argument, the court denied Appellants' motion to stay on February 24, 2023. A.532 ("Stay Order"). The court found that Appellants had failed to demonstrate that they would suffer irreparable injury if the Settlement were to take effect pending appeal. *See* A.541-551. Regarding Appellants' allegations of "regulatory" harm, the court reiterated its finding from the Final Approval Order that Appellants' procedural rights were not impaired by the Settlement. A.542. As to alleged reputational harm, the court concluded that, despite

4

multiple opportunities, "movants' assertions of reputational harm remain markedly speculative, 'grounded in platitudes rather than evidence.'" A.545 (quoting *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013)). Further, Appellants' protestations regarding "bureaucratic momentum" that might result from allowing the Settlement to take effect would not result in "irreparable harm *to movants*." A.551 (emphasis added). Indeed, the court was "at a loss to identify an injury to movants arising from this settlement agreement (that they were not a party to) resolving this litigation (that did not involve them)." A.552.

Though the failure to demonstrate irreparable injury was fatal to Appellants' motion, the district court nonetheless addressed Appellants' other arguments. First, the court rejected Appellants' tortured reading of the Settlement, under which they claimed that they were entitled to an automatic stay of the judgment. A.537-541. Next, rejecting Appellants' arguments that they were likely to succeed on the merits of their appeals, the court not only reiterated its conclusions of law from the Final Approval Order, *see* A.552, but also found that Appellants likely lacked standing to appeal because they had not suffered any Article III injury, A.552-553.

Finally, the court found that the balance of equities and public interest favored the Settlement. A.553-555. Whereas the "claims of harm experienced by movants are acutely overstated," Appellants' portrayal of the likely harms to Plaintiffs from further delay was "acutely understated." A.553. So too here: Appellants' flippant

5

reference to "vague assertions of intangible harm" to the Class, Mot. at 37, actually refers to 144 sworn declarations that detail specific harms that class members will suffer if settlement relief is delayed, including mental and physical health struggles, delays to marriage and retirement, job losses, even homelessness. *See* Supp.A.201-359. As long ago as October 2020, the district court had already found that members of the class were subjected to a "disturbingly Kafkaesque" BD process, Supp.A.8, which devolved into an "impossible quagmire" across three administrations, A.477. Forcing the class to wait even longer for relief would exacerbate the "financial, physical, and emotional" harms they had already suffered. A.554.

Having confirmed that the Effective Date of the Settlement was January 28, 2023, A.539, the court permitted the Department to begin effectuating relief for the vast majority of the class, including those with loans from Exhibit C schools other than Appellants. As to Appellants' former students, the court granted a seven-day administrative stay to give Appellants time to file the instant Motion in this Court. Appellants having now filed this Motion, the administrative stay will remain in place until this Court rules on Appellants' request for a stay pending appeal.

## PLAINTIFF-APPELLEES' OPPOSITION TO MOTION FOR STAY

### I. Legal Standard

A stay pending appeal is an "intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right." *Nken v.*

*Holder*, 556 U.S. 418, 427 (2009) (cleaned up). Rather, a stay is discretionary, and "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433-34 (internal quotation marks and citation omitted). In deciding whether a stay is warranted, a court considers four factors: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

The first two of these factors are the "most critical." *Id.* Consideration of the first factor is not necessary, however, if the movant fails to satisfy the second factor: "[I]f the petition has not made a certain threshold showing regarding irreparable harm ... then a stay may not issue, regardless of the petitioner's proof regarding the other stay factors." *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) (per curiam) (citing *Nken*, 556 U.S. at 433-34). The mere "possibility" of irreparable harm is not enough—a stay applicant must show that "irreparable injury is likely to occur during the period before the appeal is decided." *Doe #1 v. Trump*, 957 F.3d 1050, 1059 (9th Cir. 2020); *see also Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020) (citing *Leiva-Perez*, 640 F.3d at 968) ("minimum threshold showing" for stay pending appeal is that "irreparable injury must be is likely to occur during the

7

period before the appeal is likely to be decided").

## II. Appellants Will Not Experience Any Harm Absent a Stay

The question presented by Appellants' Motion is whether they have carried their burden of showing that they will likely experience irreparable harm *as a result of the Settlement going into effect while their appeals are pending*.[1] As detailed below in Plaintiffs' cross-motion, Appellants have not shown that anything about the Settlement has caused or will cause them *any* cognizable legal injury. But much less have they shown that they will suffer irreparable harm from the fact that class members will begin receiving discharges of their federal student loans while Appellants pursue their arguments in this Court.

### A. Appellants' Asserted "Procedural" Harms Do Not Exist

As the district court has explained twice, Appellants' claims of procedural harm are rooted in fundamental misunderstandings of both the Settlement and the BD process. The Settlement is an exercise of the Attorney General's authority to settle litigation and the Secretary of Education's authority to compromise, waive, or

---

[1] Appellants also fail to satisfy the other three prongs of the stay analysis. Plaintiffs focus here on the dispositive "irreparable harm" factor. As to likelihood of success on the merits, balance of equities, and the public interest, Plaintiffs rely on the factual findings and well-reasoned conclusions of the district court in the Stay Order and Final Approval Order. *See* A.551-555; A.472-491. Additionally, for the reasons stated in the Stay Order, the Settlement does not provide for a self-executing stay in the event of an appeal by an intervenor. *See* A.537-541.

release claims of the Department, including claims on student loan obligations. *See* 28 U.S.C. §§ 516, 519; 20 U.S.C. §§ 1082(a)(6), 1087e(a)(1); A.473-475. The Secretary's "settlement and compromise" authority is plenary. As the district court detailed, the Secretary could have compromised the student loan debt of each class member, one by one; doing so on a class basis via the Settlement does not alter the Secretary's authority or affect the legal rights of anyone outside the Class. A.477.

For that reason, Appellants' complaints about being "deprived" of their procedural rights under the BD regulations are entirely beside the point—the BD regulations do not control Settlement relief. *See* A.542. But regardless, Appellants are also wrong about what the BD regulations require. The 1995 BD regulations— which would govern most of the class's BD applications absent the Settlement—do not require that institutions receive *any* notice of BD claims. *See* 59 Fed. Reg. 61664-01, *61696 (1995 Final Rule). The 2016 BD regulations introduced the concept that the Department would provide schools with notice of BD applications—but a school's (optional) response to that notice is simply part of a fact-finding process, not a veto right. *See* 81 Fed. Reg. 75,926-01, *76,084 (2016 Final Rule).

The 2020 regulations—which Appellants focus on, even though they apply to a scant minority of BD applications—require the Department to "invite the school to respond and to submit evidence" regarding BD applications from their former students. 34 C.F.R. § 685.206(e)(10). Again, the opportunity to respond does not

9

mean (as Appellants seem to assume) that the Department will accept the school's version of events. But regardless, this procedure does not confer a protectable property interest because, as the district court pointed out, the approval of a BD claim does not trigger any financial liability for the school. *See* A.480-482; A.541-543. The school's liability, if any, is determined separately, in recoupment proceedings that preserve full due process. A.480-481; A.542-544; 81 Fed. Reg. at 75,963.[2]

And here—precisely *because* the Settlement is an exercise of separate statutory authority, and Settlement relief does not constitute an approved application under the BD regulations—Appellants (and all schools on Exhibit C) will not be subject to any recoupment proceedings for amounts discharged and refunded under the Settlement. *See* A.480-482; A.541-544. As the district court correctly observed, this makes Appellants "the luckiest guy[s] in the room": they have "already gotten the money and [they] don't have to pay it back." Supp.A.84.

### B. Appellants' Claims of Reputational Harm Are Vague, Conclusory, and Unconnected to Implementation of the Settlement

To the extent Appellants identify any supposed reputational harms, they point

---

[2] Likewise, while the 2020 regulations entitle the school to a copy of a written BD decision, the APA guarantees a "brief statement of the grounds" for such decision only in the event of a *denial* of the application. 5 U.S.C. § 555(e). A BD grant is not a denial of any right of the school, and the school is thus not entitled to any detailed accounting of the Department's approval decision.

to incidents that allegedly have already occurred—not harms that will occur as a result of the Settlement going into effect pending appeal. For example, Lincoln complains of an advocacy group's blog post from November 2022—which criticized the Department *for having already approved* Lincoln's Program Participation Agreement to receive Title IV funds.[3] *See* Mot. at 33; A.546-547. Given this timing, the Department clearly did not take any adverse action against Lincoln based on public criticism regarding Exhibit C; indeed, quite the opposite.

Lincoln similarly points to a post on the Federal Trade Commission's website from September 2022—which, as in the district court, Appellants badly mischaracterize, *see* A.550—and to securities disclosures it made in 2022 that had no discernible effect on its stock price. *See* Mot. at 34-36. (Plaintiffs struggle to see how a "stock price need not go down to be negatively affected by material events," Mot. at 36 n.9—there is no other way to negatively affect a stock price.) ECI and ANU do not identify *any* specific instances of supposed reputational harm; they point only to public statements that mention schools that are not involved in these appeals. *See* Mot. at 34.

---

[3] As the district court pointed out, that blog post also identified numerous other law enforcement actions against Lincoln that are unrelated to the Settlement. *See* A.546-547; Supp.A.193-194. "The relationship between alleged stigma and approved settlement is thereby strained," the court found, and Lincoln was merely trying to "make a scapegoat of the settlement here." A.547.

All of these allegations—weak as they are—concern events that have already occurred. As to alleged future harms, Appellants offer no reason to believe that the Settlement going into effect pending appeal will change anything about their situation. The effective date of the Settlement controls only the timing for when class members will receive relief. A stay would do nothing to alter the inclusion of Appellants on Exhibit C, which is the source of their grievances.

Appellants cite two cases on irreparable harm, neither of which support their position. In *adidas America, Inc. v. Skechers USA, Inc.*, 890 F.3d 747 (9th Cir. 2018), a trademark infringement case, the court affirmed a preliminary injunction where consumer surveys showed that people were, in fact, confusing plaintiff's product with the allegedly infringing product. *Id.* at 756. Notably, the court *reversed* the injunction as to a second product, explaining that plaintiff failed to provide evidence to support their theory of reputational harm relating to that product. *Id.* at 759-60. Likewise, in *Reuters Ltd. v. United Press International, Inc.*, 903 F.2d 904 (2d Cir. 1990), the court upheld a preliminary injunction preventing a wire service from terminating its supply of photographs to another wire service, where the plaintiff showed with survey evidence that many of its subscribers "would immediately drop their subscription if UPI became unable to provide Reuters photographs." *Id.* at 908. The risk of irreparable harm existed only because "interrupting the flow of pictures even briefly threatens a wire service company's continued viability." *Id.*

12

Here, Appellants themselves describe their risk as the possibility of injury that could "manifest itself over time in subtle ways"—ways that might not even be discernible by Appellants, or traceable to the Settlement, or that might never occur at all. Mot. at 33; *see also id.* at 35 ("reputational consequences" might "materialize silently," and Appellants "may never be able to identify" anyone whose opinion was affected by the Settlement). It is difficult to imagine a description of harm further from "irreparable injury [that] is likely to occur during the period before the appeal is decided." *Doe #1*, 957 F.3d at 1059. Rather than providing evidence of actual, concrete risks of imminent harm, Appellants rely on the rhetorical force of phrases like "stigma" and "branded." Mot. at 27, 28, 33. But a mere assertion of "self-evident harm, rather than evidence of such harm," is insufficient to warrant a stay. *Scholl v. Mnuchin*, 494 F. Supp. 3d 661, 682 (N.D. Cal. 2020).

* * *

## PLAINTIFF-APPELLEES' CROSS-MOTION TO DISMISS

An intervenor who appeals a final judgment when neither of the original parties below have appealed must demonstrate independent Article III standing to maintain that appeal. *See Wittman v. Personhuballah*, 578 U.S. 539, 543-44 (2016); *Diamond v. Charles*, 476 U.S. 54, 68 (1986). Here, for many of the same reasons that Appellants fail to establish a likelihood of irreparable injury, they also fail to show they have suffered or will suffer *any* injury traceable to the Settlement.

Because Appellants do not satisfy the requirements of Article III, they do not have standing to appeal the Final Approval Order. Their appeals should be dismissed for want of jurisdiction. *See* Circuit Rule 3-6(b); *Nalder v. United Auto. Ins. Co.*, 817 F. App'x 347, 349 (9th Cir. 2012) (granting motion to dismiss appeal for lack of standing). In the alternative, this Court should grant summary affirmance of the Final Approval Order because it is "manifest that the questions on which" the appeals rest "are so insubstantial as not to justify further proceedings." Circuit Rule 3-6(a)(2).

## I. Legal Standard

The familiar "irreducible constitutional minimum" of standing consists of three elements: the party "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). An "injury in fact" consists of "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (cleaned up). To satisfy redressability, "it must be 'likely,' as opposed to merely 'speculative,'" that a favorable decision from the court will ameliorate the alleged injury. *Lujan*, 504 U.S. at 560 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976)).

14

## II.    Appellants Lack Article III Standing

### A. Appellants Have Not Suffered Any Injury-in-Fact

Over the span of eight months and four rounds of briefing, Appellants have not produced any evidence to demonstrate a legally cognizable interest that has been injured as a result of the Settlement.

First, in denying Appellants' requests to intervene as of right, the district court found that Appellants lacked any property interest in the litigation. Supp.A.112; *see* A.390. The court merely allowed them permissive intervention to "keep the system honest" by "help[ing] [the court] see the opposing arguments," Supp.A.112—in other words, essentially as amici.

Next, Appellants' oppositions to the Final Approval Order did not demonstrate any injury, nor even a legal interest that needed protecting. At that time, Appellants pressed the same theories of regulatory and reputational harm that they assert now. *See* A.475-483. But the district court found, correctly, that "the schools have lost no procedural rights, nor has their status been altered. No liberty or property interest has been disturbed" by the Settlement. A.482; *see supra* at 8-10. Further, the court recognized that Appellants' assertions about reputational harm were "speculative" at best, A.482, and that "because the class and Secretary's briefing advocating for approval of the settlement had no legally binding effect on the intervenors, no actionable reputational harm exists on that basis either," *id.*

15

Appellants' motion to stay in the district court did not demonstrate any injury, even after the court agreed to consider Appellants' late-filed declarations. *See* A.548-549. The district court found, again, that Appellants have no financial interest at stake in the litigation, *see* A.541-542, and that their asserted rights under the BD regulations "are not even implicated" by the Settlement, A.542; *see also* A.544.

As to alleged reputational harm, the court found that "movants' assertions of reputational harm remain markedly speculative, 'grounded in platitudes rather than evidence.'" A.545 (quoting *Herb Reed*, 736 F.3d at 1250). As described above, Lincoln cited three public statements that had zero effect on its business, *see supra* at 11; A.545-547, A.549-550; ECI vaguely suggested that "some lenders have expressed concern" about the Settlement during due diligence, *see* A.548, A.551; ANU said nothing about its own experience, *see generally* A.545-551; and all three mischaracterized statements that did not even relate to them, *see* A547 n.4, A.550. In considering Appellants' arguments regarding likelihood of success on their appeals, the district court held that Appellants likely lacked standing. A.551-553. The district court indeed was "at a loss to identify an injury to movants arising from this settlement agreement (that they were not a party to) resolving this litigation (that did not involve them)." A.552.

The instant Motion fares no better. Appellants simply repeat the same arguments they already made twice in the district court, relying on the same faulty

16

evidence and misreadings of the applicable law. Behind the sound and fury, there is nothing: Appellants' "claim, simply stated, is that they disagree with the judgments made by the Executive Branch," and they have offered only "speculative apprehensiveness that [someone] may at some future date misuse the [Settlement] in some way that would cause direct harm." *Laird v. Tatum*, 408 U.S. 1, 13 (1972). That is not enough for Article III standing. *See id.*; *cf. Local 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. Cleveland*, 478 U.S. 501, 529-30 (1986) (intervenor could not block consent decree where decree did not "bind [intervenor] to do or not to do anything," did not "impose[] [any] legal duties or obligations on [intervenor] at all," and did not "purport to resolve any claims [intervenor] might have" under applicable law).

Appellants devote a scant page and a half of their nearly double-length Motion to the issue of standing and cite only three inapposite cases. *See* Mot. at 29-31. None of these cases supports Appellants' proposition that a mere assertion of potential reputational damage, without any real-world harm, is sufficient to create Article III standing. In *Meese v. Keene*, 481 U.S. 465 (1987), the Supreme Court addressed First Amendment standing—a distinct doctrine—in a context where the appellee had submitted affidavits, opinion polls, and an expert opinion to show that he would likely experience cognizable injury, not a mere "subjective chill" to his speech, from

the government's application of the term "political propaganda" to his activities. *See id.* at 473-74.

In *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), a class of individuals alleged that TransUnion failed to use reasonable procedures to ensure the accuracy of their credit files, but the Supreme Court found that only about 20% of the class had standing—consisting of the people for whom TransUnion had actually provided misleading credit reports to third-party businesses. *See id.* at 2200. The case did not hold broadly that "reputational injuries are cognizable in their own right," Mot. at 30—rather, a portion of the class had suffered actionable harm because being falsely labeled a "potential match" with terrorists and drug traffickers in the eyes of potential creditors was sufficiently similar to the harm caused by the tort of defamation. *Ramirez*, 141 S. Ct at 2208-09. Here, by contrast, there has been no false statement: both the record in this litigation and the public record contain ample evidence that Appellants do bear "strong indicia regarding substantial misconduct." *See* Supp.A.29-30, 51-53.[4] And the Court in *Ramirez* rejected the standing claims of those who had yet to experience any false statements: though they may have been "exposed … to a risk of future harm," that "risk [did] not materialize," which "would

---

[4] Appellants do not seriously contend otherwise, complaining primarily that the Department was not specific enough about which misconduct it was looking at. *See* Mot. at 25-26.

18

ordinarily be cause for celebration, not a lawsuit." *Ramirez*, 141 S. Ct. at 2211.

Finally, in *Fikre v. FBI*, 35 F.4th 762 (9th Cir. 2022), the plaintiff alleged that his reputation was harmed by his inclusion in the government's Terrorist Screening Database, which had caused him to be subjected to enhanced screening at airports and impeded his ability to travel. *See id.* at 768. As in *Ramirez*, this real-world effect—the burdens on plaintiff's liberty to travel—gave rise to his claim. *See id.* at 776. While it is true that *Fikre* considered the plaintiff's allegations on a motion to dismiss for failure to state a claim, rather than for lack of standing, the underlying principles could not have been stated more clearly: "Damage to reputation alone is not actionable," and a plaintiff can only assert the deprivation of a cognizable liberty interest if he "was stigmatized in connection with the denial of a 'more tangible' interest." *Id.* (quoting *Hart v. Parks*, 450 F.3d 1059, 1069-70 (9th Cir. 2006)); *see also Paul v. Davis*, 424 U.S. 693, 711-12 (1976); *cf. Grae v. Corrections Corp. of Am.*, 57 F.4th 567, 569-70 (6th Cir. 2023) (intervenor who asserts "intangible harm" must show that he "suffered adverse effects" as a result to establish Article III injury). In other words, without that "more tangible" invasion, a plaintiff who is merely concerned about his reputation does not have a liberty interest to protect.

In sum, Appellants have not been able to identify a "legally protected interest" they have that the Settlement actually affects in a "concrete and particularized" way. *Lujan*, 504 U.S. at 560. Appellants' mere speculation that their inclusion on Exhibit

19

C might, someday, cause them some yet-to-be-identified harm does not rise to the level of Article III injury. *See, e.g.*, *Laird*, 408 U.S. at 13; *Przywieczerski v. Blinken*, No. 20-cv-02098, 2021 WL 2385822, at *4 (D.N.J. June 10, 2021) (finding plaintiff lacked standing where "there has been no action or threatened action by the Government that could harm" him, and explaining that government's stated position in litigation "is not equivalent to a final adjudication of [plaintiff's] legal rights").

## B. Appellants' Claimed Injuries Could Not Be Redressed by a Favorable Ruling

The form of relief that Appellants seek reveals that their purported injuries are not redressable by a decision in their favor. Appellants request that this Court invalidate the Settlement or, at minimum, carve their former students out of the certified class.[5] *See* Mot. at 2, 41-42. Yet either of these options would likely *expose* Appellants to liability that they would *avoid* under the Settlement.

This is because, if Appellants were removed from Exhibit C, their former students' BD applications would then be adjudicated and could very well be granted. Indeed, Appellants insist that they "do not wish to prevent ... [the] granting of

---

[5] Appellants have not identified, and Plaintiffs are not aware of, any precedent in which a stranger to a class settlement obtained a change to the class definition that deprived certain class members of relief to which they would otherwise be entitled.

meritorious BD applications."[6] Mot. at 41-42. The Department would then have every right to begin recoupment proceedings against Appellants and recover the amounts discharged and/or refunded pursuant to those BD grants. *See* A.480-481 (explaining recoupment regulations). Under the Settlement, by contrast, Appellants will *not* be subject to recoupment for any amounts discharged or refunded to class members. *See* A.481-482; A.541-543. Perversely, then, Appellants are suffering no harm from the Settlement now, but would willingly invite potential future harm upon themselves—simply to force borrowers to wait even longer for justice. This cynical ploy turns Article III's redressability requirement on its head.

## CONCLUSION

For the reasons stated above, Appellants' motion for a stay pending appeal should be denied, and their appeals should be dismissed for lack of Article III jurisdiction, or in the alternative, the Court should grant summary affirmance of the Final Approval Order.

---

[6] Appellants' apparent assumption, never directly stated, is that a "fair" BD process would result in the denial of all of their former students' applications. There is no evidence to support this assumption.

Dated: March 9, 2023

*Rebecca C. Ellis*
_____

Rebecca C. Ellis
Rebecca C. Eisenbrey
Eileen M. Connor
PROJECT ON PREDATORY
STUDENT LENDING
769 Centre Street, Suite 166
Jamaica Plain, MA 02130
rellis@ppsl.org
reisenbrey@ppsl.org
econnor@ppsl.org
Tel.: (617) 390-2669

Joseph Jaramillo
HOUSING & ECONOMIC RIGHTS
ADVOCATES
3950 Broadway, Suite 200
Oakland, CA 94611
jjaramillo@heraca.org
Tel.: (510) 271-8443

*Attorneys for Plaintiff-Appellees
Theresa Sweet, Chenelle Archibald,
Daniel Deegan, Samuel Hood, Tresa
Apodaca, Alicia Davis, and Jessica
Jacobson and all others similarly
situated*

# CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this motion complies with the limits set forth in Fed. R. App. P. 27(d)(2)(A) and Ninth Circuit Rule 32-3(2) because, excluding the parts of the document exempted by Fed. R. App. P. 27(a)(2)(B), it contains 5,080 words.

This motion complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E) and 32(a)(5), and the type-style requirements of Fed. R. App. P. 27(d)(1)(E) and 32(a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

Dated: March 9, 2023

_Rebecca C. Ellis_____
Rebecca C. Ellis

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: March 9, 2023

_Rebecca C. Ellis_____
Rebecca C. Ellis