Nos. 23-15049, 23-15050, 23-15051 (consolidated)

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THERESA SWEET, et al.,

*Plaintiffs-Appellees*,

&

EVERGLADES COLLEGE, INC., LINCOLN EDUCATIONAL SERVICES CORPORATION, and AMERICAN NATIONAL UNIVERSITY,

*Intervenors-Appellants*,

v.

MIGUEL CARDONA, et al.,

*Defendants-Appellees.*

On Appeals from the United States District Court
for the Northern District of California
No. 3:19-cv-3674 | Hon. William H. Alsup

## REPLY IN SUPPORT OF JOINT MOTION
## FOR STAY PENDING APPEAL

Jesse Panuccio
Jason Hilborn
BOIES SCHILLER & FLEXNER LLP
401 E. Las Olas Blvd., Ste. 1200
Fort Lauderdale, FL 33301
(954) 356-0011
jpanuccio@bsfllp.com

*Counsel for Everglades College, Inc.*

Lucas C. Townsend
Jeffrey Liu
GIBSON DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
LTownsend@gibsondunn.com

James L. Zelenay, Jr.
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7449

*Counsel for Lincoln Educational Services Corp.*

**Additional Counsel Listed on Next Page**

John S. Moran
MCGUIREWOODS LLP
888 16th St. N.W., Suite 500
Black Lives Matter Plaza
Washington, D.C. 20006
(202) 828-2817
jmoran@mcguirewoods.com

Piper A. Waldron
MCGUIREWOODS LLP
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
(310) 315-8250

*Counsel for American National University*

Katherine Worden
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105
(415) 393-8229

*Additional Counsel for Lincoln Educational Services Corp.*

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................1

    I.      Appellants Are Likely To Succeed On The Merits. ..................................1

          A.      The Court Lacked Jurisdiction And The Class Should Have Been Decertified. ..................................................................................1

          B.      ED Lacks Authority To Provide The Settlement Relief. .......................1

          C.      The Settlement Violates Due Process. ...................................................6

    II.     Appellants Will Be Irreparably Harmed Absent A Stay. ..........................7

    III.    A Stay Will Not Impose Irreparable Harm. ...........................................11

    IV.    The Public Interest Favors A Stay. ........................................................12

CONCLUSION ..................................................................................................13

i

# TABLE OF AUTHORITIES

**Cases**

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
   141 S. Ct. 2485 (2021) (per curiam)...................................................................4

*Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*,
   534 F. App'x 633 (9th Cir. 2013) ......................................................................9

*Biomet 3i, LLC v. Land*,
   2017 WL 1174064 (N.D. Ind. Mar. 30, 2017) .................................................10

*Conservation Nw. v. Sherman*,
   715 F.3d 1181 (9th Cir. 2013) ......................................................................5, 6

*De Niz Robles v. Lynch*,
   803 F.3d 1165 (10th Cir. 2015) .........................................................................6

*FDIC v. Garner*,
   126 F.3d 1138 (9th Cir. 1997) ................................................................1, 4, 12

*Fikre v. FBI*,
   35 F.4th 762 (9th Cir. 2022) ..............................................................................6

*Kirwa v. U.S. Dep't of Def.*,
   285 F. Supp. 3d 257 (D.D.C. 2018) ...................................................................7

*Leiva-Perez v. Holder*,
   640 F.3d 962 (9th Cir. 2011) (per curiam) ........................................................1

*Mexichem Specialty Resins, Inc. v. EPA*,
   787 F.3d 544 (D.C. Cir. 2015) ..........................................................................5

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*,
   944 F.2d 597 (9th Cir. 1991) ...........................................................................10

*Reuters Ltd. v. United Press Int'l, Inc.*,
   903 F.2d 904 (2d Cir. 1990) ............................................................................10

*Turtle Island Restoration Network v. U.S. Department of Commerce*,
   672 F.3d 1160 (9th Cir. 2012) ...........................................................................6

*United States v. Carpenter*,
    526 F.3d 1237 (9th Cir. 2008) ................................................................5

**Statutes**

5 U.S.C. § 551 ...............................................................................................5

5 U.S.C. § 701 ...............................................................................................5

5 U.S.C. § 702 .......................................................................................1, 2, 7

20 U.S.C. § 1077 ...........................................................................................3

20 U.S.C § 1078-10 .......................................................................................3

20 U.S.C § 1078-11 .......................................................................................3

20 U.S.C § 1078-12 .......................................................................................3

20 U.S.C. § 1082 ...................................................................................2, 3, 4

20 U.S.C. § 1087a ..........................................................................................3

20 U.S.C. § 1087e ......................................................................................2, 5

20 U.S.C. § 1098a ..........................................................................................5

**Regulations**

34 C.F.R. § 685.206 ......................................................................................7

34 C.F.R. § 685.222 ......................................................................................7

*Student Assistance General Provisions*, 84 Fed. Reg. 49,788
    (Sept. 23, 2019) .......................................................................................7

## INTRODUCTION

This Court need not reach the equitable stay factors because the Settlement states that its Effective Date has not yet occurred. Mot. 12-13. Regardless, the traditional factors warrant a stay.

## ARGUMENT

I. **Appellants Are Likely To Succeed On The Merits.**

    A. **The Court Lacked Jurisdiction And The Class Should Have Been Decertified.**

In June 2022, ED informed the district court that (1) this case is moot, and (2) class certification was no longer proper. App.314-15. ED has not retracted these positions, including here. ED Br. 14 n.2. Plaintiffs offer *no* briefing on these issues. Appellees thus concede that Appellants have a strong likelihood of success on these dispositive issues. *See FDIC v. Garner*, 126 F.3d 1138, 1145 (9th Cir. 1997) (argument waived if party "present[s] no case law or argument"). This favors a stay. *See Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011) (per curiam).

    B. **ED Lacks Authority To Provide The Settlement Relief.**

This class-action lawsuit challenged "unlawful delay" under the APA, which waives sovereign immunity only for non-monetary relief. 5 U.S.C. § 702. ED supposedly "resolv[es]" more than 250,000 of these non-monetary APA claims by creating a new "framework" for adjudicating *monetary claims* from *different proceedings* pending before the agency. ED Br. 19. Below, ED claimed only that

1

20 U.S.C. § 1082(a)(6) provided authority to do this. Now ED adds a nebulous claim of "authority to provide discharges and refunds to borrowers who have made borrower-defense claims." ED Br. 16. Neither theory prevails.

**1.** ED cannot proceed under its "authority" to grant "borrower-defense claims," ED Br. 16, because that authority is exercisable only as "specif[ied] in regulations," 20 U.S.C. § 1087e(h). Far from citing any BD regulation authorizing the Settlement's new "framework" (none exists), ED concedes it is not proceeding under that authority. *See* ED Br. 10-11 (Settlement's "purpose" is to "avoid" "individualized adjudications contemplated by the borrower-defense regulations"); *id.* at 19 (similar). Thus, all ED can be settling is the APA claims, which the Settlement acknowledges. *See* App.287 (releasing claims "alleged in this Action"). But the Secretary cannot grant monetary relief for an APA claim because the APA waives sovereign immunity only for "relief other than money damages." 5 U.S.C. § 702. Accordingly, there is no basis for ED's nebulous theory of discharge authority.

**2.** As for the HEA, ED's arguments likewise fail.

ED concedes (at 16) that subsection 1082(a)(6), standing alone, provides no authority for blanket cancellation of Direct Loans. ED thus relies on subsection 1087e(a)(1), which states Direct Loans "shall have the same terms, conditions, and benefits" as FFEL loans. ED insists the Secretary's "functions, powers, [and]

2

duties" are "inextricably intertwined with the indisputable terms and conditions governing repayment." ED Br. 17. But that is ED's entire argument—one sentence of ipse dixit, devoid of analysis. ED ignores that: (1) "terms, conditions, and benefits" of FFEL loans are defined in *other* subsections of Part B, *see* 20 U.S.C. § 1077 ("terms of federally insured student loans"); and (2) if the Secretary's powers are loan "terms," it would lead to absurd conclusions, such as the Secretary's "power[] … [to] prescribe … regulations" constituting a loan "term," *id.* § 1082(a)(1).

Appellants' plain-text reading does not leave the Secretary without "any powers related to" Direct Loans. ED Br. 17. The HEA, Part D, is replete with provisions granting the Secretary powers over the Direct Loan program. *E.g.*, 20 U.SC. § 1087a(a) (Direct Loans "made available … at participating institutions … selected by the Secretary").

As to subsection 1082(a)(6), ED ignores that interpreting it to grant a generalized debt-cancellation authority would swallow the HEA's other express debt-cancellation provisions. *E.g.*, 20 U.S.C § 1078-10(c)(1) ($5,000 for teachers broadly); *id.* § 1078-10(c)(3) ($17,500 for teachers in math, science, or special education); *id.* § 1078-11(c) ($10,000 for professions of national need); *id.* § 1078-12(d)(3) ($40,000 for legal-aid attorneys). The Secretary's ability to compromise claims is limited to "the performance of … powers[] and duties[] vested in him by

3

this part," *id.* § 1082(a)—and "this part" (Part B) specifically delimits the Secretary's power or duty to cancel loans. This Settlement meets none of those specifications.

Incorporation of subsection 1082(a) as "terms, conditions, and benefits" of Direct Loans would also require application of subsection 1082(a)(2), which divests courts of jurisdiction to "issu[e]" any "injunction" or "similar process … against the Secretary." ED ignores this, too, and thus waives any defense. *See Garner*, 126 F.3d at 1145.

ED insists (at 1 n.1) this case has nothing to do with its other debt-cancellation program now before the Supreme Court, but in both cases ED claims boundless authority. As ED admits (at 1), this is a "massive" class action, which can be resolved through this Settlement only if ED has "a breathtaking amount of authority," *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2489 (2021) (per curiam), to cancel **_all_** student debt. ED does not—and cannot—identify any limit to the power it claims. The Supreme Court will soon decide whether the major-questions doctrine precludes such a reading of the HEROES Act, and that holding will have major implications here.

3.     ED claims (at 19) it is not violating the APA because the BD regulations remain in place while this Settlement "establishes a framework for resolving a discrete set of outstanding administrative adjudications." Swap out "framework" for

"rule" or "regulation" and the illegality is apparent on its face. *See* 5 U.S.C. § 551(4) (defining "rule"); *id.* § 553 (requiring notice-and-comment); 20 U.S.C. § 1087e(h) (requiring the Secretary to specify borrower defenses "in regulations"); *id.* § 1098a(b)(2) (requiring "negotiated rulemaking" for "[a]ll regulations"); *Conservation Nw. v. Sherman*, 715 F.3d 1181, 1188 (9th Cir. 2013) (rejecting settlement allowing agency "effectively to promulgate a substantial and permanent amendment" "without having followed statutorily required procedures"); *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 557 (D.C. Cir. 2015) (agency cannot "circumvent the rulemaking process through litigation concessions").

ED claims (at 20) there is "no basis" under the APA to "challenge" the "Attorney General's discretionary decision to settle litigation," citing 5 U.S.C. § 701(a)(2), which references "agency action … committed to agency discretion by law." This Court rejected that argument in *United States v. Carpenter*, 526 F.3d 1237, 1242 (9th Cir. 2008).

ED makes almost no attempt to explain why its actions are not arbitrary, asserting only that it settled the case to "resolve" BD claims "on a timeline that is operationally feasible." ED Br. 20. This meager explanation is belied by the fact that, in creating and soliciting "Post-Class Applicants," ED added *more* new claims to the adjudication queue than it eliminated through Exhibit C.

5

Finally, ED cites *Turtle Island Restoration Network v. U.S. Department of Commerce*, 672 F.3d 1160 (9th Cir. 2012), but that case "lends further support to the conclusion that procedural requirements" are relevant when approving settlements. *Sherman*, 715 F.3d at 1186. The federal agency there "did not seek to make substantive changes to regulations" and instead agreed to an injunction vacating a portion of its latest amendment to a regulatory program. *Turtle Island*, 672 F.3d at 1166, 1168. As this Court later explained in *Sherman*, "central" to its "decision" in *Turtle Island* was that the agreed-to injunction merely restored the status quo ante rather than create new substantive regulations. 715 F.3d at 1187. Here, the Settlement creates a new substantive "framework" for "resolving" BD claims.

### C. The Settlement Violates Due Process.

ED argues (at 21) the Settlement does not "extinguis[h] … any protected right or status." But the BD regulations protect Appellants from having their federal regulator "determine" they engaged in "substantial misconduct" outside lawful procedures. That harm adequately establishes a "plus facto[r]." *Fikre v. FBI*, 35 F.4th 762, 776-77 (9th Cir. 2022). As for Appellants' property interests, ED asserts that any future recoupment proceeding "would provide the schools with full due process." ED Br. 21. But the new "framework" (including applying the 2016 rule to all Post-Class Applicant claims) will revive claims that could not otherwise proceed. *See De Niz Robles v. Lynch*, 803 F.3d 1165, 1172 (10th Cir. 2015)

6

(Gorsuch, J.) (retroactive application of agency policy changes violates due process); *Kirwa v. U.S. Dep't of Def.*, 285 F. Supp. 3d 257, 271-72 (D.D.C. 2018).

## II. Appellants Will Be Irreparably Harmed Absent A Stay.

**1.** Plaintiffs wrongly assert (at 9) that schools have no right to notice for "most of the class's BD applications." Appellants have a right to participate in BD adjudications for "loans first disbursed prior to July 1, 2017." 34 C.F.R. § 685.222(a)(1). That right is not confined to "notice," but includes the right to participate, offer evidence and defenses, receive a reasoned decision, and challenge final agency action. *Id.* §§ 685.206(c)(1)-(2), (e)(10), .222(e)(3)(i); 5 U.S.C. § 702. These rights were intended to "reduce the likelihood" that "schools will be burdened by unjustified claims." *Student Assistance General Provisions*, 84 Fed. Reg. 49,788, 49,825 (Sept. 23, 2019). ED concedes (at 2) that schools "may generally respond" to BD applications. Even if the Settlement eliminated these rights for part of the class, that would be sufficient injury.[1]

By eliminating threshold BD adjudications, the Settlement also immediately exposes Appellants to millions of dollars of "recoupment" liability. Mot. 27-28. Plaintiffs contend (at 3) that ED "*cannot*" seek recoupment from schools on Exhibit

---

[1] This also refutes ED's unpreserved argument (at 15) that Appellants are outside the "zone of interests."

C.[2]  But ED recently disputed that "no recoupment action could be initiated based on th[e] discharges" under this Settlement.  Reply in Supp. of Defs.' Mot. to Dismiss at 10 n.4, *DeVry Univ., Inc. v. U.S. Dep't of Educ.*, No. 22-cv-5549 (N.D. Ill. Mar. 3, 2023), ECF No. 25 (quotation marks omitted).  ED stated that "[a]ny recoupment proceedings against the schools that intervened in *Sweet*" could "be based on separate decisions that the standard for borrower defense is met."  *Id.*  Thus, ED threatens to "adjudicate" no-longer-pending BD claims to justify relief *already awarded*.  ED's representations show that recoupment liability is real and imminent.

  **2.** The record is replete with other evidence of concrete harm that Appellees ignore or trivialize.

  Appellants showed that a community partner disinvited a Lincoln representative from a classroom presentation *because of* Exhibit C:

> "It is my understanding that Lincoln Tech is on the U.S. Department of Ed's list of predatory schools.  I no longer feel comfortable taking class time to have your people talk to my students."

App.519 ¶ 4.  This teacher email draws a "direct connection" between Exhibit C and programmatic harm to schools, *id.* ¶ 5, demonstrating why schools are harmed by effectuating a settlement that unjustly maligns them.  Appellees offer no response.

  Appellants also showed that Plaintiffs' counsel recently used Exhibit C to

---

[2] Tellingly, Plaintiffs elsewhere tout the "significant potential liability to the Department of Education" faced by Exhibit C schools because of "automatic federal loan discharges."  Berardinelli Decl. Ex. A at 2-3.

oppose another school's business opportunity. Mot. 33-34. Appellees ignore these "actual negative consequences" from Exhibit C. Supp.App.26. Appellees also trivialize evidence that activists are using Exhibit C to oppose schools' access to Title IV funds—an existential threat to schools, *see* Mot. 33—and evidence that the federal government has used Exhibit C to solicit more BD claims, *see id.* at 34 (citing App.519-20). And Appellees fail to dispute affidavits attesting that ECI's financial partners have increased diligence and even refused credit based solely on the Settlement—harm that has reoccurred even since stay proceedings began (App.526; Berardinelli Decl. 2)—and that Lincoln has been compelled to report the Settlement as a material risk in financial reporting (App.521). ED casts these instances as "isolated," ED Br. 7, but all are traceable to the same Settlement, and Appellees' promotion of it.[3]

This evidence satisfies the irreparable-harm standard. Irreparable harm exists when denying a stay could "significantly contribut[e]" to Appellants' injuries, *Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, 534 F. App'x 633, 636 (9th Cir. 2013), and a showing of "a loss of goodwill" or "a need to start over again on building personal relationships" suffices, *Biomet 3i, LLC v. Land*, 2017 WL 1174064, at *5 (N.D. Ind.

---

[3] Referring to the FTC's solicitation of Post-Class Applicants, Plaintiffs contend (at 16) Appellants "mischaracterized statements that did not even relate to them." But the FTC showcased several schools it had sued "for their allegedly deceptive practices" (App.520, 523) to solicit new claims against *all* Exhibit C schools. The taint by implication related to Appellants.

9

Mar. 30, 2017). This Court has accepted claims of irreparable harm on far less evidence than Appellants proffer here. *See, e.g.*, *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (noting possible "damage to ongoing recruitment efforts and goodwill").

Plaintiffs wrongly suggest (at 11) that Appellants' harms do not count because they "already occurred." On the contrary, Appellants' evidence shows that reputational harm materializes over time—and will continue doing so as Appellees promote the Settlement in new ways. Appellants' harm cannot both be "speculative" (Pls. Br. 5, 15) and have "already occurred" (*id.* at 11). Courts reject such "catch-22 implication[s]" in assessing irreparable harm. *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 908 (2d Cir. 1990).

ED argues (at 8) that Appellants' harm is not traceable to Exhibit C, but the record does not support that *post hoc* litigating position. In the only record document related to ECI, ED revealed it had "reviewed a sample of 50 applications" and concluded it "has not identified evidence that suggests that the Everglades is participating in … activity that would support borrower defense discharges." Mot. 26 (cleaned up). ED also submitted an exhibit to identify any "final determinations" that certain schools had "engaged in fraudulent conduct for which borrower defense relief may be granted." *Id*. ED identified "None" for Lincoln. *Id*. That ED still "determined" that "substantial misconduct" occurred at ECI and Lincoln (App.206),

10

despite the exculpatory record, shows the harm from inclusion on Exhibit C.[4]

ED argues (at 9-10) that reputational harms will remain "matters of public record" regardless of any stay, but of course a stay would deny Exhibit C effect during appeal. Effectuating the Settlement, in contrast, would make it far more difficult to correct existing misperceptions.

A stay pending appeal would not be "overbroad," as ED argues (at 12). Appellees themselves defined the Settlement as all-or-nothing, *see* App.248 § XIII.B, and Plaintiffs proceeded as a single injunctive class. A complete stay is therefore warranted. But if the Court is concerned about harm from a stay, the Court should at least grant Appellants a stay pending appeal. Mot. 41-42.[5]

## III. A Stay Will Not Impose Irreparable Harm.

Plaintiffs delayed their case *for 17 months* to await this Court's resolution of whether a single deposition could proceed. Now Plaintiffs no longer want to permit this Court time to decide and claim it would be unfair to hold their prior delay against them. They offer no explanation why.

Plaintiffs rely (at 6) on their "144 sworn declarations" of harm. Only three related to Appellants, and each bore indicia of unreliability. *See* Mot. 38. The rest,

---

[4] ED argues (at 8) ANU was found liable of consumer-protection violations, but the action was dismissed after ANU appealed. *See* Stipulation, *Commonwealth v. ANU*, No. 11-CI-4922 (Ky.Cir.Ct., Fayette Cnty. Nov. 17, 2020).

[5] Appellants' irreparable harm creates standing, Mot. 29-31; Appellants will address this further in opposing the motion to dismiss.

submitted by individuals who did not attend Appellants' schools, nonetheless refer to Appellants pejoratively—proving the harmful effects Exhibit C has on public perception. Moreover, Appellees themselves provided for an automatic stay pending appeal in the Settlement, Mot. 12-13, undercutting their claimed harm. The class's loans will "remain in forbearance" during this appeal, App.229 § IV.A.3, further demonstrating that a stay would not harm Plaintiffs irreparably.

ED cites (at 13) the "burgeoning" backlog of BD claims, but this "harm" is self-inflicted. ED exacerbated the backlog by soliciting some 250,000 "post-class" BD claims. Mot. 16 n.2. ED fails to respond to Appellants' points (*see* Mot. 37-38), thereby conceding them, *see Garner*, 126 F.3d at 1145.

## IV. The Public Interest Favors A Stay.

A stay would protect this Court's appellate jurisdiction and promote the orderly administration of justice, especially while *Nebraska* is pending. ED complains (at 13-14) about "whipsawing" because it has "already begun the process of effectuating the settlement." But ED chose to proceed with effectuating the Settlement despite Appellants' stay motion, so any "whipsawing" is of ED's own making. There is no valid reason why ED must effectuate the Settlement before the Court decides the stay motion; ED merely hopes to render the Settlement a *fait accompli* before it reaches the merits panel. *See* Mot. 40. The public interest does not countenance such gamesmanship.

12

## CONCLUSION

The Court should stay the judgment pending appeal.

| | |
|---|---|
| Dated: March 16, 2023 | Respectfully submitted, |

/s/ *Jesse Panuccio*  
Jesse Panuccio  
Jason Hilborn  
BOIES SCHILLER & FLEXNER LLP  
401 E. Las Olas Blvd., Ste. 1200  
Fort Lauderdale, FL 33301  
(954) 356-0011  
jpanuccio@bsfllp.com  

*Counsel for Everglades College, Inc.*

/s/ *John S. Moran*  
John S. Moran  
MCGUIREWOODS LLP  
888 16th St. N.W., Suite 500  
Black Lives Matter Plaza  
Washington, D.C. 20006  
(202) 828-2817  
jmoran@mcguirewoods.com  

Piper A. Waldron  
MCGUIREWOODS LLP  
1800 Century Park East, 8th Floor  
Los Angeles, CA 90067  
(310) 315-8250  

*Counsel for American National University*

/s/ *Lucas C. Townsend*  
Lucas C. Townsend  
Jeffrey Liu  
GIBSON, DUNN & CRUTCHER LLP  
1050 Connecticut Avenue, N.W.  
Washington, D.C. 20036  
(202) 887-3731  
LTownsend@gibsondunn.com  

James L. Zelenay, Jr.  
GIBSON, DUNN & CRUTCHER LLP  
333 South Grand Avenue  
Los Angeles, CA 90071  
(213) 229-7449  

Katherine Worden  
GIBSON, DUNN & CRUTCHER LLP  
555 Mission Street  
San Francisco, CA 94105  
(415) 393-8229  

*Counsel for Lincoln Educational Services Corp.*

13

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing reply complies with the type-volume limitation of Ninth Circuit Rules 27-1 and 32-3 because it contains 2799 words. This reply also complies with the typeface and the type-style requirements of Federal Rule of Appellate Procedure 27 because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point, Times New Roman font.

*/s/    Lucas C. Townsend*
Lucas C. Townsend

**CERTIFICATE OF SERVICE**

  I hereby certify that on March 16, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all current participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

                */s/  Lucas C. Townsend*
                   Lucas C. Townsend