Nos. 23-15049, 23-15050, 23-15051 (consolidated)

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

THERESA SWEET, et al.,

*Plaintiffs-Appellees*,

&

EVERGLADES COLLEGE, INC., LINCOLN EDUCATIONAL SERVICES
CORPORATION, and AMERICAN NATIONAL UNIVERSITY,

*Intervenors-Appellants*,

v.

MIGUEL CARDONA, et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of California
No. 3:19-cv-3674 | Hon. William H. Alsup

## INTERVENORS-APPELLANTS' OPPOSITION TO
## PLAINTIFFS-APPELLEES' CROSS-MOTION TO DISMISS

Jesse Panuccio
Jason Hilborn
BOIES SCHILLER & FLEXNER LLP
401 E. Las Olas Blvd., Ste. 1200
Fort Lauderdale, FL 33301
(954) 356-0011
jpanuccio@bsfllp.com

*Counsel for Everglades College, Inc.*

Lucas C. Townsend
Jeffrey Liu
GIBSON DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
LTownsend@gibsondunn.com

James L. Zelenay, Jr.
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7449

*Counsel for Lincoln Educational Services
Corp.*

*Additional Counsel Listed on Next Page*

John S. Moran
MCGUIREWOODS LLP
888 16th St. N.W., Suite 500
Black Lives Matter Plaza
Washington, D.C. 20006
(202) 828-2817
jmoran@mcguirewoods.com

Piper A. Waldron
MCGUIREWOODS LLP
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
(310) 315-8250

*Counsel for American National University*

Katherine Worden
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA  94105
(415) 393-8229

*Additional Counsel for Lincoln Educational Services Corp.*

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

ARGUMENT .........................................................................................3

    I.    Appellants Have Suffered Reputational Injury That A Favorable Ruling Would Redress................................................................5

    II.    Appellants Will Suffer Concrete Injury From Extinguishment of Their Defenses And Participation Rights in Pending BD Adjudications................................................................14

    III.    Plaintiffs' Motion To Dismiss Is Improper, And Appellants Have Raised Serious Jurisdictional Issues That Are Fatal To The Motion To Dismiss................................................................19

CONCLUSION .....................................................................................21

i

# TABLE OF AUTHORITIES

## Cases

*Ala. Legislative Black Caucus v. Alabama,*
 575 U.S. 254 (2015) ...................................................................... 12

*Arizonans for Off. Eng. v. Arizona,*
 520 U.S. 43 (1997) .................................................................... 4, 20

*Bender v. Williamsport Area Sch. Dist.,*
 475 U.S. 534 (1986) ...................................................................... 20

*Burnett v. Lampert,*
 432 F.3d 996 (9th Cir. 2005) ........................................................ 20

*California v. Azar,*
 911 F.3d 558 (9th Cir. 2018) ..................................................... 8, 17

*Church v. City of Huntsville,*
 30 F.3d 1332 (11th Cir. 1994) ..................................................... 12

*Citizens for Better Forestry v. U.S. Dep't of Agric.,*
 341 F.3d 961 (9th Cir. 2003) ............................................. 16, 17, 19

*Clapper v. Amnesty Int'l USA,*
 568 U.S. 398 (2013) ...................................................................... 17

*Council of Ins. Agents & Brokers v. Molasky-Arman,*
 522 F.3d 925 (9th Cir. 2008) ..................................................... 8, 11

*Didrickson v. U.S. Dep't of Interior,*
 982 F.2d 1332 (9th Cir. 1992) ..................................................... 12

*Ewing v. MED-1 Sols., LLC,*
 24 F.4th 1146 (7th Cir. 2022) ........................................................ 5

*Ezzell Trucking, Inc. v. Federal Motor Carrier Safety Admin.,*
 309 F.3d 24 (D.C. Cir. 2002) ........................................................ 11

*Foretich v. U.S.,*
 351 F.3d 1198 (D.C. Cir. 2003) ............................................... 11, 13

ii

*Guzman-Andrade v. Gonzales*,
    407 F.3d 1073 (9th Cir. 2005) ..............................................................20

*Idaho Farm Bureau Fed'n v. Babbitt*,
    58 F.3d 1392 (9th Cir. 1995) ..............................................................4, 13

*Int'l Primate Prot. League v. Administrators of Tulane Educ. Fund*,
    500 U.S. 72 (1991) ..............................................................................16

*Latch v. United States*,
    842 F.2d 1031 (9th Cir. 1988) ..............................................................20

*Maryland Shall Issue, Inc. v. Hogan*,
    971 F.3d 199 (4th Cir. 2020) ...............................................................8

*Meese v. Keene*,
    481 U.S. 465 (1987)..............................................................11, 12, 14

*Myersville Citizens for a Rural Cmty., Inc. v. FERC*,
    783 F.3d 1301 (D.C. Cir. 2015)............................................................16

*NCAA v. Governor of N.J.*,
    730 F.3d 208 (3d Cir. 2013) ................................................................11

*Nw. Requirements Utils. v. FERC*,
    798 F.3d 796 (9th Cir. 2015) ...............................................................19

*Parsons v. U.S. Dep't of Justice*,
    801 F.3d 701 (6th Cir. 2015) ..............................................11, 13, 14

*Robins v. Spokeo, Inc.*,
    867 F.3d 1108 (9th Cir. 2017) ..............................................................5

*San Diego Cty. Credit Union v. Citizens Equity First Credit Union*,
    60 F.4th 481 (9th Cir. 2023) ................................................................18

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)..............................................................................3

*Texas Ass'n of Manufacturers v. United States Consumer Prod. Safety Comm'n*,
    989 F.3d 368 (5th Cir. 2021) ...............................................................15

iii

*TransUnion v. Martinez*,
141 S. Ct. 2190 (2021) .................................................................5, 6, 11

*Turkish Coal. of Am., Inc. v. Bruininks*,
678 F.3d 617 (8th Cir. 2012) ...............................................................11

*United States v. Hooton*,
693 F.2d 857 (9th Cir. 1982) ...............................................................21

*United States v. Stein*,
881 F.3d 853 (11th Cir. 2018) .............................................................12

*Weissman v. Quail Lodge, Inc.*,
179 F.3d 1194 (9th Cir. 1999) .............................................................11

**Rules**

Fed R. Civ. P. 23 ....................................................................................1

Ninth Circuit Rule 3-6 .........................................................................19

**Regulations**

*Student Assistance General Provisions*, 84 Fed. Reg. 49,788
(Sept. 23, 2019)....................................................................................17

**Other Authorities**

*Information on the* Sweet v. Cardona *Settlement*, Project on Predatory
Student Lending, https://www.ppsl.org/sweet-v-cardona-class-
members/#sweet-settlement (last visited Mar. 17, 2023) .....................6

Press Release, *Education Department Takes Steps To Hold Leaders of
Risky Colleges Liable*, U.S. Dep't of Educ. (Mar. 2, 2023),
bit.ly/3YQjKaO........................................................................................9

Stipulation, *Commonwealth v. ANU*, No. 11-CI-4922 (Ky. Cir. Ct.,
Fayette Cnty. Nov. 17, 2020)..................................................................7

Sweet v. Cardona *Settlement*, Federal Student Aid,
https://studentaid.gov/announcements-events/sweet-settlement (last
visited Mar. 17, 2023)..............................................................................6

iv

# INTRODUCTION

The judgment below approves a "settlement" of an Administrative Procedure Act lawsuit certified as an injunctive class under Rule 23(b)(2) by awarding more than $6 billion in monetary relief to a subset of the class and changing the regulatory process that binds class members and third parties alike. It purports to provide a new administrative process to 250,000 individuals outside the certified class. It also gratuitously incorporates a list of 151 third-party schools deemed to have engaged in "substantial misconduct" based on no evidence or official proceeding. And it does all this in a case that the Department of Education ("ED") contends is moot and nonjusticiable. This raw political giveaway by the Department of Education as part of its plan to cancel student loans *en masse* is not a legitimate exercise of the Secretary's power. Like the other debt-cancellation cases currently pending before the Supreme Court, this case presents incredibly important questions about executive power and the guardrails on administrative action.

Appellants are three schools named in, and directly harmed by, the Settlement Agreement. They intervened below to protect their rights. As parties in the case, Appellants are entitled to appeal as of right, and their forthcoming merits briefing will present several issues concerning the unlawfulness of the Settlement and Appellants' property interests in this case. Now, Plaintiffs (not joined by ED) improperly move to dismiss these appeals based largely on their view of the *merits*

1

of Appellants' arguments. While Plaintiffs evidently hope to avoid judicial review of their collusive and unlawful settlement with ED, Plaintiffs' motion to dismiss these appeals for lack of standing borders on frivolous.

Appellants' standing is clear. Plaintiffs can question it only by asking the Court to ignore the specific and concrete harms documented in the record. But Plaintiffs cite no authority holding that parties named in and harmed by a judgment like the one below lack standing to appeal. The judgment:

- eliminates Appellants' right to participate in borrower-defense ("BD") adjudications, assert defenses, create an administrative record, and receive a reasoned decision on borrower-defense claims associated with their schools;

- exposes Appellants to millions of dollars of liability for "recoupment" of Title IV funds received by Appellants—in some cases, decades ago;

- subjects Appellants to a number of other financial and programmatic actions that could be taken against them based on the Settlement;

- extends relief to 250,000 individuals outside the class who filed post-class claims solicited by the settling parties; and

- maligns Appellants by including them on a list of 151 schools "determined" to have engaged in "substantial misconduct" (based on no evidence whatsoever) by their primary federal regulator

2

("Exhibit C").

Reversing or vacating the judgment would redress these harms and require ED to decide any BD claims on their merits, pursuant to binding regulations.

Plaintiffs argue that the Settlement does not deprive Appellants of their rights, create liability, or inflict reputational harm. Those arguments are implausible, and ignore record evidence and obvious realities. They also require accepting Plaintiffs' views of contested merits issues—indicating that this motion to dismiss was inappropriate. This Court will decide those merits issues in due course, after full briefing and oral argument. There is no basis to decide them summarily on a motion to dismiss.

The motion to dismiss should be denied.

## BACKGROUND

Appellants explained the relevant background in their recently-filed Joint Motion for Stay Pending Appeal and thus, for the sake of brevity, do not repeat that background here.

## ARGUMENT

Appellants' standing is clear. They "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "To obtain standing on appeal, an intervenor need not show

3

that the intervenor could have sued the party who prevailed in district court," but need only "allege a threat of injury stemming from the order they seek to reverse, an injury which would be redressed if they win on appeal." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1399 (9th Cir. 1995).

Appellants satisfy this standard for two independent reasons. First, the approval of the Settlement is inflicting—and has inflicted—a continuously expanding reputational injury that will be ameliorated by a court order holding that ED's process-free and evidence-free determination of substantial misconduct was illegal and should not be credited. Second, the Settlement strips Appellants of rights guaranteed by the BD regulations, and the loss of those rights will directly imperil Appellants' concrete financial interests by allowing ED to pursue recoupment on otherwise meritless or time-barred claims. The Parties' arguments to the contrary fail.

Even if Appellants' standing were questionable (it is not), Plaintiffs ignore the high irony in moving to dismiss for lack of standing when they have never explained how the district court could approve a settlement after this case became moot. This Court at minimum has jurisdiction "for the purpose of correcting the error of the lower court in entertaining the suit," *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 73 (1997), which independently justifies denial of the motion to dismiss.

4

## I. Appellants Have Suffered Reputational Injury That A Favorable Ruling Would Redress

By branding Appellants as having engaged in "substantial misconduct, the Settlement has damaged their reputation with financial partners, current and potential students, and other schools. This reputational injury continues to expand— in part through efforts by Plaintiffs and the federal government to promote the Settlement—and has already had downstream economic consequences on Appellants' business relationships. This injury is sufficient for Article III standing.

**A.** Contra Plaintiffs' assertions that reputational injury cannot support standing by itself, Pls. Br. 17-18, the reputational injuries visited through widespread publication of Exhibit C "bear[] a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts—namely, the reputational harm associated with the tort of defamation." *TransUnion v. Martinez*, 141 S. Ct. 2190, 2208 (2021). "[A] person is injured when a defamatory statement 'that would subject him to hatred, contempt, or ridicule' is published to a third party." *Id.*; *see also Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1114-15 (9th Cir. 2017) (analogizing to common law of libel per se to hold that "dissemination" of information "claimed to have been misleading or false" "can itself constitute a concrete harm" (citations omitted)); *Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146, 1153-54 (7th Cir. 2022) (allegedly defamatory statements accompanied by "third-party dissemination" constitute a concrete harm under *TransUnion*).

5

Plaintiffs' attempts to distinguish *TransUnion* misrepresent the law and the facts. Plaintiffs misleadingly claim (at 18) that *TransUnion* "rejected the standing claims of those who had yet to experience any false statements." But the Court actually held that "[t]he mere presence of an inaccuracy … *if it is not disclosed* to a third party, causes no concrete harm." *TransUnion*, 141 S. Ct. at 2210 (emphasis added). Here, Exhibit C has been widely published—including by Plaintiffs themselves. Indeed, Plaintiffs have a publicity website dedicated to this Settlement that publishes and editorializes about Exhibit C, stating: "The automatic discharge list consists of schools that, for purposes of this settlement, the Department of Education determined had strong indicia regarding substantial misconduct[.]"[1]

And while Plaintiffs claim (at 18) that "there has been no false statement" and that "the record in this litigation and the public record" support ED's "determination" of wrongdoing, the fact is that ED's determination is false (as shown by Plaintiffs' total inability to cite evidence of "substantial misconduct"), ED has never produced any evidence to support its conclusory accusations, and

---

[1] *Information on the* Sweet v. Cardona *Settlement*, Project on Predatory Student Lending, https://www.ppsl.org/sweet-v-cardona-class-members/#sweet-settlement (under FAQ: "Why wasn't my school included on the automatic discharge list"?) z`(last visited Mar. 17, 2023). ED likewise publicizes Exhibit C on its websites. *See* Sweet v. Cardona *Settlement*, Federal Student Aid, https://studentaid.gov/announcements-events/sweet-settlement (last visited Mar. 17, 2023) (linking to Dkt. 317-1, *Sweet v. Cardona*, No. 3:19-cv-03674 (N.D. Cal. Mar. 18, 2021), https://studentaid.gov/sites/default/files/sweet-v-cardona-school-list.pdf).

Appellants have never had any opportunity to contest ED's claims.  In fact, the administrative record that *is* available refutes the claims of wrongdoing.  In the only record document related to ECI, the Department said it reviewed "a sample of 50 applications" and concluded it "has not identified evidence that suggests that the Everglades is participating in … activity that would support borrower defense discharges."  Dkt. 193-3 at 41, *Sweet v. Cardona*, No. 3:19-cv-03674 (N.D. Cal. Mar. 18, 2021). The Department also submitted an exhibit to identify any "final determinations" that certain schools had "engaged in fraudulent conduct for which borrower defense relief may be granted," and identified "None" for Lincoln. Dkt. 145-2 at 13, *id.* (Oct. 14, 2020).[2]

**B.**  Assuming, however, a concrete injury beyond publication is necessary, the record is replete with such evidence that Plaintiffs either ignore or trivialize. Appellants have produced uncontroverted affidavits attesting (1) that ECI's financial partners have requested diligence on the Settlement or refused to extend credit because of the Settlement, App.526, and have even made further requests since proceedings on the stay motion began, Berardinelli Decl. ¶ 8 (Dkt. 17-4, No. 23-15050); and (2) that Lincoln has been compelled to report the Settlement as a

---

[2] ED argues (at 8) that American National University (ANU) was found liable of consumer-protection violations, but the action was dismissed after ANU appealed. *See* Stipulation, *Commonwealth v. ANU*, No. 11-CI-4922 (Ky. Cir. Ct., Fayette Cnty. Nov. 17, 2020).

material risk in its Securities and Exchange Commission reporting, App.521. There is "no requirement that … economic harm be of a certain magnitude," *California v. Azar*, 911 F.3d 558, 572 (9th Cir. 2018), and the harm here far exceeds the "identifiable trifle" necessary for standing, *Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 932 (9th Cir. 2008) (citation omitted). *See also Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 211 (4th Cir. 2020) (holding "lost business opportunities" are sufficient). The additional diligence and administrative and reporting burdens the Settlement has imposed on Appellants alone are concrete, non-speculative injuries.

Appellants have also experienced far more serious reputational injuries directly traceable to inclusion on Exhibit C. Appellants have shown, for instance, that a teacher recently disinvited a Lincoln representative from a classroom presentation *because of* Exhibit C. The teacher's email stated:

> It is my understanding that Lincoln Tech is on the U.S. Department of Ed's list of predatory schools. I no longer feel comfortable taking class time to have your people talk to my students.

App.519 ¶ 4. As a result, the Lincoln representative did not speak to the class, and both Lincoln and the students lost an invaluable opportunity to connect regarding career opportunities. *Id.* This email draws a "direct connection" between inclusion on Exhibit C and programmatic harm to schools, *id.* ¶ 5, showing why schools are harmed by effectuating a settlement that unjustly maligns them as wrongdoers.

Plaintiffs do not even mention—much less respond to—this evidence.

Plaintiffs, the federal government, and third parties have also used Exhibit C to publicly malign listed schools, including Appellants. Plaintiffs' counsel recently touted ED's "determination" of "strong indicia regarding substantial misconduct" against the University of Phoenix—another Exhibit C school—in an effort to block its potential acquisition by an entity affiliated with the University of Arkansas. Berardinelli Decl. Ex. A at 1-2. Third-party activists are using Exhibit C to oppose schools' access to Title IV funding—an existential threat to schools. *See* Stay Mot. 33. And the federal government has advertised Exhibit C to solicit more BD claims against schools by equating listing on Exhibit C with engaging in deceptive practices. *See id.* (citing App.519-20).[3]

More recently, ED boasted that "[t]he Biden-Harris Administration is canceling the loans of more than a million borrowers cheated by for-profit colleges," an apparent reference to the loans canceled for Exhibit C schools. *See* Press Release, *Education Department Takes Steps To Hold Leaders of Risky Colleges Liable*, U.S. Dep't of Educ. (Mar. 2, 2023), bit.ly/3YQjKaO. This illustrates the stark contrast between how ED's political leadership maligns Exhibit C schools in public

---

[3] Referring to the government's solicitation, Plaintiffs argue (at 16) that Appellants have "mischaracterized statements that did not even relate to them." But the government's advertisement showcased several schools it had sued "for their allegedly deceptive practices" (App.520, .523) to solicit new claims against *all schools* on Exhibit C. The taint by implication obviously related to Appellants.

communications and how ED's lawyers describe Exhibit C in court filings. In the same announcement, ED purported to provide "guidance" that "clarifies" how it will seek *personal liability* for the leaders of certain colleges. Significantly, "settlements … by the Department … involving federal student aid or claims of dishonesty, fraud, misrepresentation, consumer harm, or financial malfeasance" will be a factor that ED considers "when determining whether to pursue personal liability." *Id.* This further shows how ED might use Exhibit C to create a misimpression of wrongdoing by listed schools—including Appellants, against whom there has been no legitimate finding of wrongdoing.

It is grossly unjust for Plaintiffs and ED to actively use Exhibit C to malign Appellants in public while telling courts that Appellants will suffer no "actual negative consequences." Supp.App.26. Exhibit C was *designed* to harm schools. If ED wished to grant BD claims *en masse*, it could have purported to do so without specifically naming 151 non-party schools. Exhibit C was collusively created by Plaintiffs' counsel and ED leadership, and included in the Settlement, to make a political statement and harm disfavored schools—based on no findings of wrongdoing.

Plaintiffs and ED offer no real response to this evidence. They quibble that these episodes are too "isolated," ED Br. 7, and that ECI did not lay out the details of confidential discussions with financial partners, Pls. Br. 11. But Appellants have

adduced far more than the "identifiable trifle" required for standing, *Council of Ins. Agents*, 522 F.3d at 932, and courts routinely find standing based on evidence of this kind. *See Meese v. Keene*, 481 U.S. 465, 473-74 (1987) (affidavits establishing impact on conduct of government designation of films as "political propaganda" sufficed for standing); *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 716-17 (6th Cir. 2015) ("Reputational injury … is sufficient to establish an injury in fact."); *Turkish Coal. of Am., Inc. v. Bruininks*, 678 F.3d 617, 622-23 (8th Cir. 2012) (defendant's labeling plaintiff's website "unreliable" was sufficient for standing); *NCAA v. Governor of N.J.*, 730 F.3d 208, 220-22 (3d Cir. 2013) (injury-in-fact requirement satisfied by evidence that sports leagues' reputations would be harmed by legalized gambling on games); *Foretich v. U.S.*, 351 F.3d 1198, 1213 (D.C. Cir. 2003) ("[W]here reputational injury derives directly from an unexpired and unretracted government action, that injury satisfies the requirements of Article III standing to challenge the action."); *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1200 (9th Cir. 1999) (formal reprimand of an attorney is sufficient for standing to appeal).[4]

---

[4] ED's citation of *Ezzell Trucking, Inc. v. Federal Motor Carrier Safety Admin.*, 309 F.3d 24 (D.C. Cir. 2002), is inapposite because the plaintiff there had an opportunity to develop a record but never produced any evidence that "insurance providers or customers have changed their business decisions based on the company's … listing." *Id.* at 26. Likewise, Plaintiffs' attempt to dismiss *Meese* as a "First Amendment" case is belied by *TransUnion*'s characterization of *Meese* as
*(Cont'd on next page)*

11

The documents and declarations that Appellants submitted are more than adequate evidence of injury in fact at this stage of the proceedings. Appellants intervened after the Plaintiffs and ED announced their proposed settlement, and the district court permitted Appellants to participate only though motion practice, not discovery. Supp.App.109. When the standing of a party that has not been afforded an opportunity to develop a record on that issue is challenged, standing should be assessed under a pleading standard. *Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir. 1994); *see also Ala. Legislative Black Caucus v. Alabama*, 575 U.S. 254, 256 (2015) ("elementary principles of procedural fairness required the District Court … to give the Conference an opportunity to provide evidence" of standing). But even if a summary-judgment standard applied, uncontroverted affidavits are more than sufficient to create a genuine dispute of material fact. *Didrickson v. U.S. Dep't of Interior*, 982 F.2d 1332, 1340 (9th Cir. 1992) (holding intervenors had standing based on affidavits submitted on appeal); *United States v. Stein*, 881 F.3d 853, 556 (11th Cir. 2018) (even "self-serving and uncorroborated statements" in one

---

the prototypical example of standing based on "reputational harms." 141 S. Ct. at 2204. And while evidence of downstream consequences was present in *Meese*, the Court never purported to rule that evidence of effects beyond third-party dissemination was necessary for reputational-injury standing. *See* 481 U.S. at 474-75 (holding that standing existed because "uncontradicted" affidavits "supported the conclusion that appellee could not exhibit the films without incurring a risk of injury to his reputation"). In any event, Appellants here have adduced similarly strong evidence of downstream consequences.

affidavit can create "an issue of material fact"); *Foretich*, 351 F.3d at 1212 (holding "injury to reputation" was sufficient where plaintiff's "affidavit to that effect was not contradicted").

**C.** Causation and redressability are equally clear. ED's argument that Appellants' injuries may have been caused by other state-regulatory actions, ED Br. 8, ignores that lenders and community partners cited *the Settlement* as the basis for requesting additional diligence and forgoing business relations, not these unrelated actions. *See supra* 7-8. These harms started immediately after Exhibit C was announced—not before. That is enough to show "a threat of injury stemming from the order" Appellants "seek to reverse." *Babbitt*, 58 F.3d at 1399; *see also Parsons*, 801 F.3d at 713-15.

With respect to redressability, Plaintiffs and ED suggest (ED Br. 8-9; Pls. Br. 20-21) that staying and ultimately vacating the Settlement would have no effect on public perception of the accusations leveled against Appellants. This argument blinks reality. A stay would give lenders, community partners, current and potential students, and others an obvious reason to suspend judgment until the legality of the Settlement has been reviewed. Vacatur on appeal would establish, and signal to interested parties, that ED's accusations of systemic wrongdoing were unsupported and unlawful. Both remedies would mitigate existing reputational harms and prevent the emergence of new ones. *See, e.g.*, *Foretich*, 351 F.3d at 1214-16

(holding that "[a] judicial determination that Congress acted unlawfully … will provide a significant measure of redress for the harm to … reputation" and noting that "it is foundational to the law of libel and defamation that a party who prevails on a claim that the defendant's tort has harmed his or her reputation is in some sense relieved by that judgment"); *Parsons*, 801 F.3d at 716-17 (order setting aside agency decision labeling music fans a "gang-like" group would "likely combat at least some future risk that they would be subjected to reputational harm"); *Meese*, 481 U.S. at 476 ("enjoining application of the words 'political propaganda' to the films would at least partially redress the reputational injury of which appellee complains").

The undisputed actions by Plaintiffs and the federal government to promote the Settlement and Exhibit C show that they, too, recognize its practical importance. Staying its effectiveness and ultimately vacating or reversing the judgment is an essential step in redressing the damage it has caused.

## II.  Appellants Will Suffer Concrete Injury From Extinguishment of Their Defenses And Participation Rights in Pending BD Adjudications

Appellants also have standing because the Settlement strips them of rights in the BD process which would otherwise safeguard Appellants' concrete interests. Effectuating the Settlement would eliminate pending BD adjudications in which Appellants have a right to participate, and extinguish Appellants' defenses and judicial-review rights.  Stay Mot. 31-32.  Had ED taken this action through informal

notice in the Federal Register, Appellants would undoubtedly have standing to challenge that action under the APA. *E.g.*, *Texas Ass'n of Manufacturers v. United States Consumer Prod. Safety Comm'n*, 989 F.3d 368, 380 (5th Cir. 2021) (agency's "violat[ion]" of "various procedural requirements" and "stigmatic effect of the rule provides standing," where "injuries were caused by an allegedly unlawful rule and would be redressed by vacatur of the rule"). There is no valid reason to treat the Settlement differently.

Plaintiffs and ED instead parrot the district court's inaccurate statement that the Settlement does not strip Appellants of their procedural rights in the BD process because it "'does not call for the Department to adjudicate the borrower defense applications of the group of class members to which Exhibit C applies.'" ED Br. 11 (quoting App.542); Pls. Br. 16. That is irrelevant. Regardless of the *means* by which the Secretary violates schools' rights, the Settlement in fact unlawfully eliminates schools' rights in pending (and future) BD adjudications by automatically resolving every pending BD claim *against* the schools listed on Exhibit C. And this statement conveniently ignores that the Settlement mandates the resolution of the claims of "post-class applicants" who attended Exhibit C schools under the 2016 regulations, and thereby extends the statute of limitations for those claims by ***three years***. Due to the overhaul worked by the Settlement, Appellants face the prospect of

recoupment proceedings on claims that—but for the Settlement—would have been time-barred. Stay Mot. 29-31.

Plaintiffs are thus wrong to cast Appellants' injury as merely "procedural." Pls. Br. 9, 15. Appellants have identified "various concrete injuries that … flow from" the denial of their participation rights. *Myersville Citizens for a Rural Cmty., Inc. v. FERC*, 783 F.3d 1301, 1317 (D.C. Cir. 2015). Not only does the Settlement immediately revive time-barred claims, but it also denies Appellants defenses in the adjudications and opens Appellants up to vast potential liability. *See supra* 14-15. Those are substantive, concrete injuries. The Supreme Court has held that merely denying a party the ability to litigate an issue in the "forum of their choice" is a "clear" and concrete Article III injury. *Int'l Primate Prot. League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 77 (1991). *A fortiori*, depriving a party of its ability to litigate a defense *at all*—not to mention revival of time-barred claims against them—must be sufficient injury.

Appellants' injuries are "procedural" only in the sense that they are based on "procedures … designed to protect [a] threatened concrete interest," and because there is a "reasonable probability" that the challenged action will affect those interests, Appellants have standing. *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 969, 972-975 (9th Cir. 2003) (immediacy, causation, and redressability requirements are "relaxed" for procedural injuries). The BD

regulations establishing the limitations period for claims and the right to participate in pending BD adjudications protect schools' concrete interest in avoiding the financial costs of wrongful recoupment—as the regulations themselves make plain. *See Student Assistance General Provisions*, 84 Fed. Reg. 49,788, 49,825 (Sept. 23, 2019) (rights were intended to "reduce the likelihood" that "schools will be burdened by unjustified claims"). And there is at least a "reasonable probability" that ED will pursue recoupment on otherwise time-barred claims unless the Settlement's *de facto* amendment of the regulations is vacated. *Citizens for Better Forestry*, 341 F.3d at 969; *see also Azar*, 911 F.3d at 571-72. These injuries are directly traceable to the Settlement and would be redressed by a favorable ruling vacating the Settlement on appeal, restoring Appellants' rights in pending BD adjudications. It follows that Appellants have standing.

Plaintiffs' and ED's counterarguments are nonstarters. ED asserts (at 11-12) that recoupment is not a "certainly impending" injury under *Clapper v. Amnesty International USA*, 568 U.S. 398, 410 (2013). But *Clapper*'s heightened standard of imminence does not apply. Procedural injuries that protect concrete interests "can establish standing 'without meeting all the normal standards for . . . immediacy,'" and parties seeking to enforce procedural requirements "need only establish 'the reasonable probability of the challenged action's threat to [their] concrete interest.'" *Citizens for Better Forestry*, 341 F.3d at 969 (citations omitted); *see also Azar*, 911

17

F.3d at 571-72; *San Diego Cty. Credit Union v. Citizens Equity First Credit Union*, 60 F.4th 481, 493 (9th Cir. 2023) (holding that *Clapper* "applied an 'especially rigorous' analysis" due to "the separation-of-powers considerations inherent in a national security case" and a "substantial risk" is sufficient even in non-procedural-injury cases (citation omitted)).

Plaintiffs' conjecture (at 20-21) that the Settlement might result in Appellants facing *fewer* recoupment proceedings is plainly wrong. Even now, ED refuses to disavow the possibility of recoupment. It recently disputed that "no recoupment action could be initiated based on th[e] discharges" under this Settlement, and represented that "[a]ny recoupment proceedings against the schools that intervened in *Sweet*" could "be based on separate decisions that the standard for borrower defense is met." Reply ISO Defs.' Mot. to Dismiss at 10 n.4, *DeVry Univ., Inc. v. U.S. Dep't of Educ.*, No. 22-cv-5549 (N.D. Ill. Mar. 3, 2023), ECF No. 25. As ED's apparent view confirms, there is no prospect that the Settlement could somehow *reduce* Appellants' exposure to recoupment liability.[5]

---

[5] If the BD adjudications were carried out under binding regulations, Appellants would have an excellent chance of prevailing. The record shows that BD claims filed against Appellants bear indicia of material error or worse. For example, at least 12% of the individuals (at least 40 out of approximately 350) in a "group" BD application against Lincoln had no Title IV loans for attending Lincoln. App.464. If the Settlement is effectuated, these BD claims would be automatically granted, along with countless other baseless claims.

18

Redressability "does not require certainty." *Nw. Requirements Utils. v. FERC*, 798 F.3d 796, 806 (9th Cir. 2015). And when standing is based on a procedural injury, redressability requires only that the agency decisions at issue "*could be influenced*" in a way that would protect the party's concrete interests. *Citizens for Better Forestry*, 341 F.3d at 976. That standard is easily satisfied here.

### III. Plaintiffs' Motion To Dismiss Is Improper, And Appellants Have Raised Serious Jurisdictional Issues That Are Fatal To The Motion To Dismiss

Plaintiffs' motion to dismiss should be denied for two independent reasons.

First, Plaintiffs' standing arguments cannot be decided on a motion to dismiss under Circuit Rule 3-6(b), which permits dismissal "without notice or further proceedings" only if it is plain "the appeal is not within [the Court's] jurisdiction." Here, Plaintiffs' standing arguments rest on Plaintiffs' view of numerous contested merits issues, including the operation of rights afforded under the BD regulations, the significance of Appellants' reputational injuries, and the propriety of the district court's denial of intervention of right. Indeed, Plaintiffs repackage their arguments for denying intervention of right as standing arguments, even though Appellants are challenging the denial of intervention of right on appeal. *See* Pls. Br. 15 (citing district court denial of intervention of right as reason why Appellants have "no legally cognizable interest" to support standing). An appellate motion to dismiss is not an appropriate vehicle for deciding the merits.

19

Second, even if this Court somehow lacks jurisdiction over "the merits," it at least has jurisdiction "for the purpose of correcting the error of the lower court in entertaining the suit." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 73 (1997) (citations omitted). The district court lacked jurisdiction to approve the Settlement because Plaintiffs' claims were moot at the time the parties settled. "Mootness is jurisdictional." *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). And courts have an inherent "obligation to 'satisfy [themselves] not only of [their] own jurisdiction, but also of that of the lower courts in a cause under review.'" *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (citation omitted); *Latch v. United States*, 842 F.2d 1031, 1032 (9th Cir. 1988) (same).

As Appellants explained in their pending Stay Motion, this case was moot well before the parties settled it. *See* Stay Mot. 13-14. ED vigorously argued mootness below, and in settling the case, even Plaintiffs acknowledged the "legal risk" they faced. App.218. But settling the case, of course, did not obviate that risk, because "[t]he parties' agreement … cannot create subject matter jurisdiction nor waive its absence." *Guzman-Andrade v. Gonzales*, 407 F.3d 1073, 1077 (9th Cir. 2005). At the very least, this Court therefore has jurisdiction to vacate the Settlement on mootness grounds. On that ground alone, the motion to dismiss should be denied.

\*    \*    \*

20

For all these reasons, there is no basis to dismiss this appeal—much less to entertain Plaintiffs' undeveloped request (at 14) for "summary affirmance." That extraordinary relief is warranted only "[w]here the outcome of a case is beyond dispute" and the case is "obviously controlled by precedent." *United States v. Hooton*, 693 F.2d 857, 858 (9th Cir. 1982). Plaintiffs do not even attempt to show that standard is met here. Rather, given the serious and novel issues raised in this appeal, Plaintiffs' motion has done nothing but "unduly burde[n] the parties and the court." *Id.* Both Plaintiffs' motion to dismiss and their frivolous request for summary affirmance should be dismissed.

## CONCLUSION

Plaintiffs' cross-motion to dismiss should be denied.

Dated: March 17, 2023

Respectfully submitted,

*/s/ Jesse Panuccio*

Jesse Panuccio
Jason Hilborn
BOIES SCHILLER & FLEXNER LLP
401 E. Las Olas Blvd., Ste. 1200
Fort Lauderdale, FL 33301
(954) 356-0011
jpanuccio@bsfllp.com

*Counsel for Everglades College, Inc.*

*/s/ John S. Moran*

John S. Moran
MCGUIREWOODS LLP
888 16th St. N.W., Suite 500
Black Lives Matter Plaza
Washington, D.C. 20006
(202) 828-2817
jmoran@mcguirewoods.com

Piper A. Waldron
MCGUIREWOODS LLP
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
(310) 315-8250

*Counsel for American National University*

*/s/ Lucas C. Townsend*

Lucas C. Townsend
Jeffrey Liu
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 887-3731
LTownsend@gibsondunn.com

James L. Zelenay, Jr.
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7449

Katherine Worden
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105
(415) 393-8229

*Counsel for Lincoln Educational Services Corp.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing response complies with the type-volume limitation of Ninth Circuit Rules 27-1 and 32-3 because it contains 4845 words. This response complies with the typeface and the type style requirements of Federal Rule of Appellate Procedure 27 because this brief has been prepared in a proportionally spaced typeface using Word 14-point Times New Roman typeface.

*/s/*    *Lucas C. Townsend*
            Lucas C. Townsend

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.  I certify that all current participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/    Lucas C. Townsend*
Lucas C. Townsend