**Nos. 23-15049, 23-15050, 23-15051 (consolidated)**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

THERESA SWEET et al.,
*Plaintiffs-Appellees*,

v.

EVERGLADES COLLEGE, INC., LINCOLN EDUCATIONAL SERVICES
CORP., and AMERICAN NATIONAL UNIVERSITY,
*Intervenor-Appellants*,

v.

U.S. DEPARTMENT OF EDUCATION, MIGUEL A. CARDONA, in his official
capacity as Secretary of the U.S. Department of Education,
*Defendants-Appellees*

**On Appeal from the United States District Court for the
Northern District of California
Case No. 3:21-mc-80075-WHA, Hon. William Alsup**

**PLAINTIFF-APPELLEES' REPLY IN SUPPORT OF CROSS-MOTION TO
DISMISS APPEALS FOR LACK OF JURISDICTION**

Joseph Jaramillo
HOUSING & ECONOMIC RIGHTS
ADVOCATES
3950 Broadway, Suite 200
Oakland, CA 94611
jjaramillo@heraca.org
Tel.: (510) 271-8443

*Attorneys for Plaintiff-Appellees Theresa
Sweet, Chenelle Archibald, Daniel Deegan,
Samuel Hood, Tresa Apodaca, Alicia Davis,
Jessica Jacobson, and all others similarly
situated*

Rebecca C. Ellis
Rebecca C. Eisenbrey
Eileen M. Connor
PROJECT ON PREDATORY
STUDENT LENDING
769 Centre Street, Suite 166
Jamaica Plain, MA 02130
rellis@ppsl.org
reisenbrey@ppsl.org
econnor@ppsl.org
Tel.: (617) 390-2669

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

ARGUMENT ........................................................................................2

    I.     Appellants Have Suffered No Redressable Injury From the Denial of Intervention as of Right ...............................................................2

    II.    Appellants Lack Standing Based on Reputational Injury ....................3

    III.   Appellants Have Not Suffered Any Procedural Injury ........................7

    IV.   Appellants Assert No Redressable Interest ........................................10

    V.    Appellants' Assertions of Mootness Do Not Create Standing............11

CONCLUSION ...................................................................................12

i

# TABLE OF AUTHORITIES

## Cases

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997).............................11

*Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534 (1986)...............................11

*California v. Azar*, 911 F.3d 558 (9th Cir. 2018) ....................................................5, 7

*Citizens for Better Forestry v. Dep't of Agric.*, 341 F.3d 961 (9th Cir. 2003).........8

*Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925 (9th Cir. 2008).............................................................................................3

*DeVry Univ., Inc. v. Dep't of Educ.*, No. 22-cv-5549 (N.D. Ill. 2022) .............. 9, 10

*Diamond v. Charles*, 476 U.S. 54 (1986) ..................................................................1

*Ewing v. MED-1 Solutions, LLC*, 24 F.4th 1146 (7th Cir. 2022) ............................4

*Foretich v. United States*, 351 F.3d 1198 (D.C. Cir. 2003)...................................3, 5

*Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199 (4th Cir. 2020) ........................5

*Meese v. Keene*, 481 U.S. 465 (1987)......................................................................3, 5

*Mitchell v. Maurer*, 293 U.S. 237 (1934) ...............................................................11

*Myersville Citizens for a Rural Cmty., Inc. v. FERC*, 783 F.3d 1301 (D.C. Cir. 2015).............................................................................................7

*Parsons v. Department of Justice*, 801 F.3d 701 (6th Cir. 2015)....................... 3, 10

*Robins v. Spokeo, Inc.*, 867 F.3d 1108 (9th Cir. 2017)............................................4

*Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370 (1987) ....................2

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ................................................7

*TransUnion v. Martinez*, 141 S. Ct. 2190 (2021) .....................................................4

*Turkish Coal. of Am., Inc. v. Bruininks*, 678 F.3d 617 (8th Cir. 2012) ...................3

## Statutes

28 U.S.C. § 516..........................................................................................................8

ii

**Regulations**

34 C.F.R. § 668.87 ........................................................................9

34 C.F.R. § 685.206 ......................................................................9

34 C.F.R. § 685.222 ................................................................ 9, 10

81 Fed. Reg. 75,926-01 .................................................................9

**Other Authorities**

YouTube: The Federalist Society, "Sweet v. Cardona: The Administration's Other
    Student-Loan Cancellation Program,"
    https://www.youtube.com/watch?v=JDxqccjhdtM ........................................7

## INTRODUCTION

Appellants assert that an "appellate motion to dismiss is not an appropriate vehicle for deciding the merits," Appellants' Opposition ("Opp.") 19, but their own Motion to Stay plainly demonstrates that they lack standing. Indeed, the first page of their Opposition reveals their true position: they see this case as an opportunity to make a political point about student debt cancellation writ large. And their characterization of Plaintiffs' Motion to Dismiss as "border[ing] on frivolous" (Opp. 2) is a blatant projection.

In their own words, Appellants' goal is to obtain a "signal" from this Court that they are, in fact, good guys. Opp. 13. But no matter how mighty their attempts, Appellants cannot twist the record in this case to give them standing to pursue their objectives. Appellants have no right to invoke this Court's jurisdiction to undo the settlement of litigation in which they assert no legal interest, claims, or defenses. *See Diamond v. Charles*, 476 U.S. 54, 62 (1986) ("[T]he decision to seek review must be placed in the hands of those who have a direct stake in the outcome," not those "who will use it simply as a vehicle for the vindication of value interests."). Plaintiffs' Motion is appropriate, and this Court can and should dismiss these appeals.

## ARGUMENT

### I. Appellants Have Suffered No Redressable Injury From the Denial of Intervention as of Right

Appellants attempt to brush aside the need for a jurisdictional inquiry by stating that they seek review of the district court's denial of their intervention as of right, Opp. 19—as if this fact precludes consideration of their standing to appeal. But permissive intervention gave Appellants everything they purported to seek. Their intervention request was predicated, they said, on objecting to the Settlement. Supp.A.41; A.391. They preemptively disavowed any desire to assert claims or defenses. *Id*. The court granted them party status and allowed them to object to the Settlement, which they did at great length.

True, the district court found Appellants did not satisfy the requirements for intervention as of right because they had no significant protectable interest in the litigation. *See* Supp.A.112; A.390. Appellants are impaired by this ruling only insofar as it drives home the conclusion that they do not have standing to invoke this Court's jurisdiction as to the merits of the Settlement.[1] And although Appellants now

---

[1] Appellants may lack standing to challenge the intervention decision as well: *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 379-80 (1987), suggests that denial of intervention as of right in favor of permissive intervention is appealable only where the permissive intervention order materially limited the intervenor's participation.

2

imply they were erroneously deprived of discovery to establish their standing, Opp. 12, they expressly disavowed any intention of conducting discovery, Supp.A.109-111, and attempted to demonstrate, by their own submission of evidence (including over Plaintiffs' objections, *see* A.548-549), that the Settlement negatively affected their interests. They failed.

## II.   Appellants Lack Standing Based on Reputational Injury

Appellants neither establish that reputational injury alone confers Article III standing nor point to any substantial evidence of such injury.

1.      Appellants claim that reputational injury constituting only an "identifiable trifle" is sufficient under Article III. Opp. 8 (citing *Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 932 (9th Cir. 2008)). But, to confer standing, the "trifling" injury must also be connected to an "important interest." *Molasky-Arman*, 522 F.3d at 932. The cases cited by Appellants located a standing-conferring interest in the deprivation of a constitutional right. *See id.* (privileges and immunities); *Meese v. Keene*, 481 U.S. 465, 473-74 (1987) (First Amendment); *Turkish Coal. of Am., Inc. v. Bruininks*, 678 F.3d 617, 622-23 (8th Cir. 2012) (same); *Parsons v. Dep't of Justice*, 801 F.3d 701, 711 (6th Cir. 2015) (First, Fifth Amendments); *Foretich v. U.S.*, 351 F.3d 1198, 1213 (D.C. Cir. 2003) (bills of attainder). Appellants cannot identify any similarly important interest that the Settlement implicates.

3

And unlike the plaintiffs in *TransUnion v. Martinez*, 141 S. Ct. 2190 (2021), *Robins v. Spokeo, Inc.*, 867 F.3d 1108 (9th Cir. 2017), and *Ewing v. MED-1 Solutions, LLC*, 24 F.4th 1146 (7th Cir. 2022), Appellants do not allege injuries that bear any relationship to defamation. In *TransUnion*, the Supreme Court held that being labeled a "potential terrorist" caused a defamation-like injury. 141 S. Ct. at 2208. But there is no similar statement here. The only statement that Appellants complain of is not misleading, but rather a statement of fact relating to the development of Exhibit C: *viz.*, "attendance at one of [the Exhibit C] schools justifies presumptive relief, for purposes of this settlement, based on strong indicia regarding substantial misconduct by listed schools, whether credibly alleged or in some instances proven, and the high rate of class members with applications related to the listed schools." A.206. This is a fair, qualified statement supported by significant evidence, as discussed below.

    2.    Appellants present only scant, speculative suggestions of reputational harm from the Settlement: an ECI executive stating that "[s]ome lenders have expressed concern and begun inquiring about the Settlement as part of their due diligence," A.526,[2] and a Lincoln executive stating that a teacher disinvited a

---

[2] Appellants misrepresent their own evidence: the Berardinelli declaration implies, without specifically alleging, a causal connection between questions about Exhibit C and lenders' eventual financing decisions. *See* A.526.

Lincoln representative from a classroom presentation because of the school's inclusion on "the U.S. Department of Ed's list of predatory schools," A.519.[3] This is a far cry from a demonstration sufficient to confer standing.[4] *Cf. Keene*, 481 U.S. at 473-74 (detailed affidavits containing expert analysis and opinion polls); *Foretich*, 351 F.3d at 1213 (affidavit describing tangible effects of being labeled a child abuser); *California v. Azar*, 911 F.3d 558, 572 (9th Cir. 2018) (analysis showing reasonable probability of millions of dollars in economic harm); *Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 211 (4th Cir. 2020) (evidence of lost sales and revenue decline).

Appellants also cannot establish that any reputational injury is traceable to their inclusion on Exhibit C, rather than to other evidence that, *contra* Opp. 6, is in the public domain and the record in this case:

- A Senate report showed that ECI and Lincoln have exceptionally poor retention rates, completion rates, and graduate debt default rates, and included numerous complaints about Lincoln's poor educational services and lack of job placement assistance. The report also found that career services employees at Lincoln had conspired to falsely

---

[3] Because Lincoln did not provide the alleged email or the name of any party involved, it is impossible to know whether the teacher was, in fact, referring to Exhibit C.

[4] Appellants' argument that standing should be assessed under a pleading standard, Opp. 12, is unavailing: as evidenced by the hundreds of pages appended to their Motion for Stay, Appellants have had numerous opportunities to develop a record.

report graduates' employment outcomes. Reply.A.80-81, 99, 105, 119, 168, 221, 224-227.

- Lincoln settled a consumer protection suit brought by the Massachusetts Attorney General in 2015, discharging student debt and agreeing to change its disclosures and job placement calculations. Reply.A.251.

- In June 2022, the Massachusetts AG began investigating misconduct "in connection with [Lincoln's] policies regarding fee refunds and associated disclosures to students and prospective students." Reply.A.303.

- ECI entered an Assurance of Voluntary Compliance with the State of Florida in 2012, agreeing to offer thousands of students free re-training and cease misrepresenting what the school offered.[5] Reply.A.365.

- ECI settled a False Claims Act lawsuit in 2015, which alleged violations of the incentive compensation ban. Reply.A.385.

- In 2010, three senior admissions officials of ECI's predecessor entity were found to have been admitting students with fake high school diplomas from a diploma mill. Reply.A.391.

- The U.S. House of Representatives has investigated ECI and asked the IRS to review whether ECI has complied with the requirements of its non-profit status. Reply.A.400.

- Arthur Keiser, the "Chancellor and CEO" of Keiser University (an ECI school), was sued by his own mother for fraud and conversion in connection with his management of University-affiliated corporate entities. Reply.A.402.

---

[5] As Plaintiffs' Supplemental Complaint explained, more than 100 BD applicants raised claims directly related to issues covered by this Assurance. *See* A.150-151. That the Department previously ignored this evidence of wrongdoing (*see* Opp. 7) does not show that the wrongdoing didn't occur, but rather illustrates the arbitrariness of the Department's contemporaneous BD policies.

6

- ANU was found liable of violating Kentucky's consumer protection statute in a case brought by the state's Attorney General, a decision upheld on appeal.[6] Reply.A.427.

- A list of open BD cases produced by the Department in discovery showed that as of April 2020 (long before Exhibit C was created), there were 225 pending BD applications from former ANU students, 535 from ECI students, and over 1,000 from Lincoln students. Reply.A.430-433, 437-439.

And ironically, Appellants themselves have encouraged third parties to focus on their involvement in this lawsuit: ECI's counsel contends, in a video posted online on March 14, 2023, that this case "deserves greater awareness."[7]

## III. Appellants Have Not Suffered Any Procedural Injury

Appellants make the same mistake here as in their arguments about reputational harm: alleged procedural violations must be accompanied by actual, real-world harm to confer standing. *See Myersville Citizens for a Rural Cmty., Inc. v. FERC*, 783 F.3d 1301, 1317 (D.C. Cir. 2015) (depressed property values, pollution, blight, and safety risks); *Azar*, 911 F.3d at 572-73 (economic harm); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation … is insufficient to create Article III standing."). The cases Appellants say hold

---

[6] ANU's assertion that the parties to this lawsuit later resolved it (Opp. 7 n.2) does not affect the indicia of misconduct.

[7] *See* https://www.youtube.com/watch?v=JDxqccjhdtM at 1:30.

otherwise are distinguishable and confined to environmental law and standing under NEPA. *See, e.g.*, *Citizens for Better Forestry v. Dep't of Agric.*, 341 F.3d 961, 972-75 (9th Cir. 2003).

In any event, there is no procedural violation. Appellants are no more entitled to notice-and-comment on this Settlement than Plaintiffs were on the settlement ECI reached with the government regarding violations of the incentive compensation ban. *See* 28 U.S.C. § 516. And Appellants have no right to prevent the Department from granting relief to BD applicants, under either the Settlement or the regulations they claim have been sidestepped (Opp. 14-16).

As explained (Pltfs.' Opp. M. Stay 8-9), the BD regulations do not apply to Settlement relief. But even under those regulations, Appellants could not "prevail" or assert "defenses" in a proceeding between the Department and a borrower, *contra* Opp. 18 n. 5 ("If the BD adjudications were carried out under binding regulations, Appellants would have an excellent chance of prevailing."[8]); *id.* at 16 (claiming the Settlement "denies Appellants defenses in the adjudications"). Institutions'

---

[8] Appellants continue to suggest that borrowers lied under penalty of perjury in their BD applications, *see* Opp. 18 n.5—despite *no evidence* of fraud. Appellants were forced to admit they were wrong when they touted supposed "indicia of unreliability" in their stay motion below. Reply.A.447-450. Lincoln complains that some borrowers in a group BD application had no federal loans from Lincoln—but this case does not involve group applications, and regardless, if there are no loans then *a fortiori* there is no BD to grant and no risk of recoupment.

participation in the BD adjudication process is limited *by regulation* to the voluntary provision of information that could potentially inform the Department's decision-making. 34 C.F.R. §§ 685.206(e)(10), 685.222(e)(3). Likewise, borrowers have no right to participate in recoupment proceedings. *Id.* § 668.87(c). This bifurcation is intentional: it separates the processes to create a bulwark against "resource inequities between schools and borrowers."[9] 81 Fed. Reg. 75,926-01, 75,974.

It is possible—indeed anticipated—that the Department could grant BD applications yet fail to establish the right to recoup from the school.[10] This would not undo the BD grant. 34 C.F.R. § 668.87(d). Ultimately, an institution that provides information during the BD application process has exactly the same due process rights in a hypothetical recoupment proceeding as one that did not. *See id.* § 668.87(a)-(b).

Nor does the Settlement revive time-barred claims (Opp. 15). Under the 1995 and 2016 regulations—which govern the vast majority of applications in this case—there is *no statute of limitations* on when a borrower can assert a defense to repayment. 34 C.F.R. §§ 685.206(c), 685.222(b)-(d). True, there are limitations

---

[9] There is no better illustration of that inequity than this appeal, brought against indebted students by three multinational law firms.

[10] The Department has brought exactly one BD recoupment action against an institution. *DeVry Univ., Inc. v. Dep't of Educ.*, No. 22-cv-5549 (N.D. Ill. 2022).

periods for the Department to seek recoupment against a school, *id.* § 685.222(e)(7), but the Settlement does not create BD adjudications and therefore does not create any possibility of recoupment liability. As for future BD applicants, if Appellants ultimately face any recoupment proceedings—an entirely speculative suggestion— they will have a fulsome opportunity to argue that the Department failed to seek recoupment within (what they believe are) the proscribed time limits.

## IV.    Appellants Assert No Redressable Interest

To begin, Appellants still cannot evade the fact that their requested relief would expose them to recoupment liability that the Settlement forecloses. Appellants try to spin dark implications from a footnote in a separate litigation—one involving BD adjudications that predated the Settlement. *See* Opp. 18 (citing *DeVry*, ECF No. 25 at 10 n.4). But, per usual, Appellants take this statement out of context. The Department emphasized in *DeVry* the very conclusion that the district court reached here: that "no recoupment action could be initiated … as a result of the [S]ettlement." *DeVry*, ECF No. 25 at 10 n.4; *see* A.482.

At best, Appellants claim, vacatur of the Settlement would create a "signal." Opp. 13. There is simply no evidence here that vacatur would change anyone's conduct toward Appellants, and a speculative prospective benefit depending on actions of independent third parties is no redress. *See Parsons*, 801 F.3d at 715.

## V.    Appellants' Assertions of Mootness Do Not Create Standing

For reasons explained by the district court, this case is not moot. *See* A.483-486. Nonetheless, Appellants propose (Opp. 20) that an appellate court can *sua sponte* review whether the district court correctly determined its own jurisdiction, even if no one has standing to appeal. This bizarre position is flatly contrary to Article III. Each case cited by Appellants simply recites the basic principle that an appellate court can review whether a lower court had jurisdiction—so long as an appeal was properly taken.[11] *See, e.g.*, *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Appellants propose that this Court can overlook their lack of standing to reach out and review the district court's judgment. But before it examines a district court's decision, an appellate court will first "satisfy itself … of its own jurisdiction." *Bender*, 475 U.S. at 541 (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934)). Here, for reasons explained, Appellants fail to provide any basis for such jurisdiction.

---

[11] If *Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997), may appear to suggest otherwise, the result is explained by that case's unusual procedural posture, *see id.* at 58-64; the fact that it became moot while already on appeal, *see id.* at 71-72; and its sensitive questions of federalism, *see id.* at 75-77. And in that case, unlike here, the lower court determined that intervenor-appellants possessed Article III standing. *See id.* at 58.

## CONCLUSION

For the reasons stated, Appellants' appeals should be dismissed.


Dated: March 24, 2023


*Rebecca C. Ellis*

Rebecca C. Ellis
Rebecca C. Eisenbrey
Eileen M. Connor
PROJECT ON PREDATORY
STUDENT LENDING
769 Centre Street, Suite 166
Jamaica Plain, MA 02130
rellis@ppsl.org
reisenbrey@ppsl.org
econnor@ppsl.org
Tel.: (617) 390-2669

Joseph Jaramillo
HOUSING & ECONOMIC RIGHTS
ADVOCATES
3950 Broadway, Suite 200
Oakland, CA 94611
jjaramillo@heraca.org
Tel.: (510) 271-8443

*Attorneys for Plaintiff-Appellees*
*Theresa Sweet, Chenelle Archibald,*
*Daniel Deegan, Samuel Hood, Tresa*
*Apodaca, Alicia Davis, and Jessica*
*Jacobson and all others similarly*
*situated*

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this motion complies with the limits set forth in Fed. R. App. P. 27(d)(2)(A) and Ninth Circuit Rule 32-3(2) because, excluding the parts of the document exempted by Fed. R. App. P. 27(a)(2)(B), it contains 2,597 words.

This motion complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E) and 32(a)(5), and the type-style requirements of Fed. R. App. P. 27(d)(1)(E) and 32(a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

Dated: March 24, 2023

_Rebecca C. Ellis_____
Rebecca C. Ellis

# CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: March 24, 2023

_Rebecca C. Ellis_____
Rebecca C. Ellis