**Nos. 23-15049, 23-15050, 23-15051 (consolidated)**

# United States Court of Appeals
# For the Ninth Circuit

THERESA SWEET et al.,
Plaintiffs-Appellees,

v.

EVERGLADES COLLEGE, INC., LINCOLN EDUCATIONAL SERVICES
CORP., and AMERICAN NATIONAL UNIVERSITY,
Intervenor-Appellants,

v.

U.S. DEPARTMENT OF EDUCATION, MIGUEL A. CARDONA, in his official
capacity as Secretary of the U.S. Department of Education,
Defendants-Appellees

On Appeal from the United States District Court for the Northern District of
California Case No. 3:21-mc-80075-WHA, Hon. William Alsup

## AMICUS BRIEF FOR THE INTERVENOR-APPELLANTS

Shennan Kavanagh
Kyra Taylor
National Consumer Law Center®
7 Winthrop Square, 4th Floor
Boston, MA 02110
617.542.8010
SKavanagh@nclc.org
KTaylor@nclc.org

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

The National Consumer Law Center (NCLC) is an IRS § 501(c)(3) non-profit corporation incorporated under the laws of Massachusetts. NCLC does not issue stock and is neither owned by nor is the owner of any other corporate entity, in part or in whole.

# TABLE OF CONTENTS

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ......................................i

TABLE OF AUTHORITIES...................................................................iv

INTEREST OF AMICUS CURIAE...........................................................1

RULE 29 COMPLIANCE STATEMENT ..................................................2

INTRODUCTION AND SUMMARY OF ARGUMENT.......................................2

ARGUMENT ...................................................................................4

    A.    The Structure and Procedures of the Borrower Defense
        Regulations In Effect Prior to July 1, 2023...........................................4

        1)    The applicability of the various borrower defense rules
                varied based on when the borrower's loan was disbursed..........4

        2)    The 1994 Rule had sparse procedural requirements, but
                stated that different processes would be used to
                adjudicate individual borrower defense applications and
                pursue the recovery of amounts discharged on granted
                claims from schools. ..................................................6

        3)    The 2016 Rule similarly bifurcated the individual
                application adjudication process from the school
                recoupment process. ..................................................8

                a)    The 2016 Rule's individual process only notified
                        schools of borrowers' claims, treated schools like
                        potentially relevant witnesses, and limited when
                        the Department could exercise its discretion to
                        initiate a school recoupment proceeding for
                        granted claims...............................................10

b) The regulations governing how the Department engages in enforcement proceedings against schools, 34 C.F.R. § 668.81 *et seq.*—which include administrative hearings—encompass the procedures used when the Department exercises its discretion to collect amounts discharged on granted claims..................................................13

c) The 2016 Rule's group discharge regulations, which do not apply to the applications at issue in the *Sweet* class, required that the Department proceed through a hearing process to determine whether or not to provide relief to the class. .................15

4) Like both prior rules, the 2019 Rule similarly made recoupment for granted claims discretionary but allowed more back and forth between borrowers and schools during the individual application adjudication process—procedures which created insurmountable logistical problems. ..................................................................17

B) The Department has consistently determined it needs to bifurcate the school recoupment and individual adjudication processes to ensure that the rights of borrowers and institutions are balanced and that the adjudication of individual claims is timely. ...............................................................20

C) Virtually all of the applications submitted by class members were covered by the procedural rules laid out in the 2016 Rule at the time the settlement was entered. ...............................................22

CONCLUSION ........................................................................24

COMPLIANCE STATEMENT .............................................25

STATEMENT OF RELATED CASES..................................26

CERTIFICATE OF SERVICE..............................................27

# TABLE OF AUTHORITIES

**CASES:**

*Career Colls. and Schs. of Tex. v. U.S. Dept. of Educ.*, No. 23-50491
(5th Cir. Aug. 7, 2023) ....................................................................2

*NYLAG v. DeVos*, No. 1:20-cv-01414 (S.D.N.Y. Feb. 19, 2020) ...........................19

*NYLAG v. DeVos*, 527 F. Supp. 3d 593 (S.D.N.Y. 2021) ........................................19

*NYLAG v. DeVos,* No. 21-888 (2d Cir.) .................................................................19

*Sweet v. Cardona*, No. 3:19-cv-03674 (N.D. Cal. Feb. 7, 2020) ...........................22

**STATUTES:**

20 U.S.C. § 1087e(h)...............................................................................................5
20 U.S.C. §§ 1087a(b)(2), 1087e(a)(1) .................................................................6

**REGULATIONS:**

34 C.F.R. part 668 ........................................................................ 9, 13, 15, 18
34 C.F.R. § 668.81 *et seq.* ................................................................................ 15
34 C.F.R. § 668.87 ....................................................................................... 14, 15
34 C.F.R. § 668.89 ............................................................................................. 14
34 C.F.R. § 668.125 ........................................................................................... 20
34 C.F.R. § 685.206.................................................................................... *passim*
34 C.F.R. § 685.212................................................................................................ 6
34 C.F.R. § 685.222.................................................................................... *passim*
34 C.F.R. § 685.401................................................................................................ 4
34 C.F.R. § 685.405.............................................................................................. 20
34 C.F.R. § 685.406.............................................................................................. 20
34 C.F.R. § 685.409 ....................................................................................... 15, 20

40 Fed. Reg. 53506 (Nov. 18, 1975) ...................................................................... 7
59 Fed. Reg. 42646 (Aug. 18, 1994) .................................................................. 6, 8
59 Fed. Reg. 61664 (Dec. 1, 1994)............................................................... 4, 6, 7, 8
60 Fed. Reg. 37767 (July 21, 1995) ...................................................................... 8
81 Fed. Reg. 39329 (June 17, 2016)...................................................... 9, 11, 13, 14
81 Fed. Reg. 75926 (Nov. 1, 2016) ...................................................... 4, 6, 10, 11, 16, 21

82 Fed. Reg. 6253 (Jan. 19, 2017).............................................................. 13, 14, 15

84 Fed. Reg. 49788 (Sept. 23, 2019)................................................................. 5, 6

87 Fed. Reg. 41878 (July 13, 2022) ................................................................... 17

87 Fed. Reg. 65904 (Nov. 1, 2022) ...................................................... 4, 19, 20, 22

**OTHER AUTHORITIES:**

Nat'l Consumer Law Ctr., *Federal Deception Law*, § 4 (4th Ed. 2022) ....................7

Nat'l Consumer Law Ctr., *Student Loan Law*, § 10.6 (online edition)
available at https://library.nclc.org/................................................................17

## INTEREST OF AMICUS CURIAE

This brief is submitted by the National Consumer Law Center (NCLC) in support of the Appellees.[1] NCLC is a nonprofit organization specializing in consumer issues on behalf of low-income people. NCLC publishes a widely used treatise on student loan law, Student Loan Law (6th ed. 2019), updated at www.nclc.org/library. NCLC's Student Loan Borrower Assistance Project has nationally recognized expertise in student loan law and provides information about student borrowers' rights, increases public understanding of student lending issues, and identifies policy solutions to promote access to education and lessen student debt burdens. The Project's attorneys provide direct representation to low-income student loan borrowers and consult with civil legal services organizations across the country that represent low-income student loan borrowers. NCLC has routinely participated as a negotiator in the Department of Education's (Department) negotiated rulemaking process amending the Department's federal student aid regulations, including in the 2021 negotiations that gave rise to the 2022 borrower defense rules. In addition, NCLC submitted comments on the proposed borrower defense rules in 2016, 2019, and 2022. NCLC's unique position as subject matter expert allows it to provide the Court with an analysis of how the borrower defense rules operate by law and in practice, and when the rules give rise to school liability.

---

[1] All parties consented to the filing of this brief.

## RULE 29 COMPLIANCE STATEMENT

This brief was authored in whole by NCLC. No party or party's counsel authored this brief in whole or in part; no party or party's counsel contributed money to fund the preparation or submission of this brief; and no other person except *amicus* contributed money intended to fund the preparation or submission of this brief. All parties have consented to the filing of this brief.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The borrower defense regulations that gave rise to this suit and underlie this settlement agreement are complex and have changed significantly over time, with regulations promulgated in 1994, 2016, 2019, and 2022—the latest of which went into effect on July 1st of this year.[2] However, since the regulations' inception, the Department has made clear that a borrower defense claim is a claim against the government—not a claim directly against a school—and has ensured that pursuing school liability on granted claims proceeds through an entirely separate process. The decision to bifurcate the process for adjudicating individual borrowers' applications for federal loan discharges from assessment of any school liability was motivated by three priorities: first, providing borrowers with timely, final decisions

---

[2] Although the 2022 Rule became effective on July 1, 2023, on August 7, 2023 the Fifth Circuit granted an emergency motion for injunction pending appeal and enjoined the 2022 borrower defense regulations. Order, *Career Colls. and Schs. of Tex. v. U.S. Dept. of Educ.*, No. 23-50491 (5th Cir. Aug. 7, 2023), ECF No. 42.

that would not be drawn out by potential school appeals; second, ensuring that unrepresented, defrauded borrowers would not have to succeed in an adversarial process against schools represented by counsel to attain debt relief from the Department; and third, allowing the Department to provide relief to borrowers even when it would not make sense to seek recovery from a school. As a result, apart from the 2019 Rule (which was not fully implemented before the 2022 Rule took effect), the Department has limited schools' involvement in the individual application adjudication process. Schools have consistently had a separate, formal administrative hearing process in which they can present evidence (including witnesses) to contest any liability for granted borrower defense claims.

While the borrower defense rules have been amended over time, the amended rules did not fully supplant the prior regulations until the most recent regulations took effect this year. *Amicus* writes to explain how the 1994, 2016, and 2019 borrower defense regulations—the rules governing class members' applications when the settlement was entered—operate procedurally. As explained below, the rules limit the role of schools in adjudication of a borrower's right to have their federal student loans discharged, and instead refer to a separate process that allows the Department to seek recoupment of discharged loan amounts from schools, and it is in this separate process that schools have an opportunity to contest any liability.

## ARGUMENT

### A.     The Structure and Procedures of the Borrower Defense Regulations In Effect Prior to July 1, 2023

Prior to the 2022 regulations, the Department's borrower defense eligibility standard and adjudication procedure varied based on when a loan was issued. However, each of the borrower defense rules separated the adjudication of individual borrower defense claims and school liability into two separate processes. In this section, we first explain which rules applied to each claim. We then walk through the differences and similarities regarding the rules' procedures for adjudicating individual applications and processes for potentially recovering amounts discharged on granted claims from schools.

#### 1)     The applicability of the various borrower defense rules varied based on when the borrower's loan was disbursed.

Prior to the promulgation of the 2022 regulations,[3] the borrower defense rule was comprised of three sets of regulations that did not fully supersede each other: the 1994 Rule (34 C.F.R. § 685.206(c)),[4] 2016 Rule (34 C.F.R. § 685.222),[5] and

---

[3] The 2022 Rule provides new substantive eligibility standards and procedural rules that supersede the prior rules and apply both to all applications that have not been decided and to all applications that are submitted in the future. See 34 C.F.R. § 685.401 *et seq.*; 87 Fed. Reg. 65904, 65992-93 (Nov. 1, 2022).

[4] 59 Fed. Reg. 61664, 61671 (Dec. 1, 1994) available at https://www.govinfo.gov/app/collection/fr/1994/12/01 (final rule).

[5] 81 Fed. Reg. 75926 (Nov. 1, 2016) (final rule).

2019 Rule (34 C.F.R. § 685.206(e)).[6] The regulations applied according to when a loan was disbursed, rather than when a claim was filed. The applicability of each of the regulations was as follows:

- Loans issued before July 1, 2017: the 1994 Rule's substantive eligibility standards and procedural rules of the 2016 Rule applied;[7]

- Loans issued between July 1, 2017 and July 1, 2020: the substantive eligibility standards and procedural rules of the 2016 Rule applied;[8]

- Loans issued after July 1, 2020: the substantive eligibility standards and procedural rules of the 2019 Rule applied.[9]

While the statutory language giving rise to a borrower defense to repayment occurs in the Direct Loan portion of the Higher Education Act (HEA),[10] the Department has consistently provided a process for borrowers with Federal Family Education Loans (FFEL) to assert a borrower defense. This is because the HEA requires that Direct Loans be made with the same "terms, conditions, and benefits"

---

[6] 84 Fed. Reg. 49788 (Sept. 23, 2019) (final rule).

[7] 34 C.F.R. § 685.206(c)(1), (2); 34 C.F.R. § 685.222(a)(1). Prior to the 2016 Rule, the Department had not formalized a process or procedural standards for reviewing borrower defense claims. This is discussed further *infra* p. 6.

[8] 34 C.F.R. § 685.222(a)(2).

[9] 34 C.F.R. § 685.206(e).

[10] 20 U.S.C. § 1087e(h).

as FFEL loans.[11] Borrowers with FFEL loans may avail themselves of the

borrower defense process by consolidating those loans into a Direct Consolidation

Loan which is then governed by the regulations in effect when the Direct

Consolidation Loan was disbursed.[12]

> 2) **The 1994 Rule had sparse procedural requirements, but stated that different processes would be used to adjudicate individual borrower defense applications and pursue the recovery of amounts discharged on granted claims from schools.**

In 1994, Congress amended the HEA to give borrowers the right to assert

defenses to repayment to discharge their Direct loans. When the Department

promulgated regulations to effectuate that statutory language, it allowed borrowers

to assert as a defense to repayment to the Department "any act or omission of the

school attended by the student that would give rise to a cause of action against the

---

[11] 20 U.S.C. §§ 1087a(b)(2), 1087e(a)(1). *See* 59 Fed. Reg. 42646, 42649 (Aug. 18, 1994) available at https://www.govinfo.gov/app/collection/fr/1994/08/18 (Proposed 1994 Rule) (noting borrower defense provisions would eventually be put in place for both FFEL and Direct Loans); 59 Fed. Reg. 61664, 61671-72 (Dec. 1, 1994) available at https://www.govinfo.gov/app/collection/fr/1994/12/01 (Final 1994 Rule) (same); 81 Fed. Reg. 75926, 75930-31, 75957, 75961 (Nov. 1, 2016) (Final 2016 Rule) (describing the parallel treatment of FFEL and Direct loans required under the HEA and explaining the consolidation process FFEL borrowers could use to submit a borrower defense); 84 Fed. Reg. 49788, 49814-15 (Sept. 23, 2019) (Final 2019 Rule) (discussing the continued ability of FFEL borrowers to use the borrower defense process if they consolidate their loans).

[12] 34 C.F.R. §§ 685.212(k)(2), 685.206(e)(2).

school under applicable State law."[13]  The regulation mirrored the FTC Holder

Rule-type language that was already present in the Master Promissory Notes, or

loan contracts, for FFEL loans.[14] The FTC Holder Rule requires that applicable

lending contracts include language that states that the consumer can defend against

a lender's debt collection activity based on any claims or defenses the consumer

had against the original seller (in this case, the school).[15]

Although the 1994 Rule provided no procedural rules governing how

borrowers could submit a claim or how claims would be adjudicated, it did make

clear that a granted claim alone did not give rise to school liability. The Rule stated

that any effort of the Department to seek recoupment on granted claims was

discretionary, and it separated the individual adjudication process from the school

liability process.[16] In response to commenters concerned that the borrower defense

process would allow frivolous claims to be granted, the Department responded in

---

[13] 34 C.F.R. § 685.206(c)(1) (eff. July 1, 1995); 59 Fed. Reg. at 61696 (Dec. 1, 1994).

[14] *See* 59 Fed. Reg. at 61672 (Dec. 1, 1994).

[15] 40 Fed. Reg. 53506 (Nov. 18, 1975) available at https://archives.federalregister.gov/issue_slice/1975/11/18/53473-53514.pdf#page=34; Nat'l Consumer Law Ctr., *Federal Deception Law*, § 4 (4th Ed. 2022).

[16] 34 C.F.R. § 685.206(c)(3) (The Department may "initiate an appropriate proceeding to require the school whose act or omission resulted in the borrower's successful defense against repayment of a Direct Loan to pay to the Secretary the amount of the loan to which the defense applies.").

the preamble to its final rule that first, borrowers would not submit frivolous claims and second, "schools are further protected from frivolous claims by the requirement that the Secretary initiate a second proceeding to enforce liability against a school."[17]

The 1994 Rule also did not require the Department to provide schools with notice of borrowers' claims.[18] This is notable because while the Department initially intended the 1994 Rule only to govern loans issued in the 1995 and 1996 school year,[19] a subsequent negotiated rulemaking committee of institutions found that no further changes were needed.[20] This implies that institutions were satisfied with the protection provided to them by the separate process the Department would use to hold schools liable for granted borrower defense claims.

> ### 3) The 2016 Rule similarly bifurcated the individual application adjudication process from the school recoupment process.

The Department promulgated the 2016 Rule to create a new "streamlined" federal standard for borrower defense eligibility for loans issued after July 1, 2017

---

[17] 59 Fed. Reg. at 61671 (Dec. 1, 1994).

[18] *See* 34 C.F.R. § 685.206.

[19] 59 Fed. Reg. 42646, 42649 (Aug 18, 1994) available at
https://www.govinfo.gov/app/collection/fr/1994/08/16/Education%20Department.

[20] 60 Fed. Reg. 37767, 37768 (July 21, 1995)
https://www.govinfo.gov/content/pkg/FR-1995-07-21/pdf/FR-1995-07-21.pdf.

and to create new procedural rules governing the adjudication of all applications.[21] The impetus to create new procedural rules arose from the onslaught of individual borrower defense claims the Department had received from borrowers attending Corinthian Colleges and ITT Tech, two large for-profit school chains that precipitously closed.[22] More broadly, the Department was motivated to amend the regulations because it was concerned that more students—particularly students from for-profit colleges—would soon assert their right to a borrower defense.[23]

The 2016 Rule created an individual adjudication process, 34 C.F.R. § 685.222(e), and a process by which the Department could discharge groups of debts owed by borrowers that have common facts or claims without requiring all borrowers within the group to submit an application, 34 C.F.R. § 685.222(f)–(h). Under the 2016 Rule, only the Department had discretion to initiate a group claim. In a subsequent rulemaking that followed a few months after the 2016 Rule was published, the Department amended its regulations regarding certain proceedings for taking action against institutions participating in the federal student aid program, 34 C.F.R. part 668 subpart G, to include procedures the Department could use to initiate recoupment proceedings on granted borrower defense claims.

---

[21] 81 Fed. Reg. 39330, 39330-31 (June 17, 2016).

[22] *Id.* at 39335.

[23] *See id.* at 39335–36.

a) **The 2016 Rule's individual process only notified schools of borrowers' claims, treated schools like potentially relevant witnesses, and limited when the Department could exercise its discretion to initiate a school recoupment proceeding for granted claims.**

Like the 1994 Rule, the 2016 Rule similarly ensured that borrowers were not in an adversarial posture with their school when submitting an individual application; instead, borrowers' claims were understood as claims against the government.[24] When a borrower submitted an individual application, the regulations required that the Department official designated to review the application only "notif[y] the school of the borrower defense application"—not provide the school with a complete copy of the borrower's application.[25] The Department official would then engage in factfinding, wherein it would "consider any evidence or argument presented by the borrower and also any additional information, including—(A) Department records, (B) Any response or submissions from the school, and (C) Any additional information or argument that may be obtained by the Department official."[26] A school's failure to respond to notice that a borrower defense had been filed did not stop the Department from issuing a

---

[24] 81 Fed. Reg. 75926, 75928–29 (Nov. 1, 2016).

[25] Similarly, the regulations do not require that schools be provided with a copy the Department's written decision on adjudicated individual claims. *See* 34 C.F.R. § 685.222(e).

[26] 34 C.F.R. § 685.222(e)(3)(i).

decision. Additionally, the school had no right to appeal a granted individual claim or request that that decision be reconsidered.[27]

Although the 2016 Rule provided schools an opportunity to submit information during the individual adjudication process, the school's role in the process was generally limited to that of a potentially relevant witness, rather than that of a party to the proceeding with due process interests at stake.[28] And, much like witness testimony would be treated in a trial, the Department was not required to adopt schools' perspectives or facts. Instead, a school's interests came into play, and were protected, if the Department exercised its discretion to initiate a separate proceeding to seek recoupment for a granted claim. The Department explained that it was unnecessary to share all information in the individual adjudication with the school for two reasons: first, the adjudication of the individual's claim would not determine the school's liability,[29] and second, the school could review that information if the Department did grant the claim and initiate a recoupment

---

[27] *See* 34 C.F.R. § 685.222(e)(5), 81 Fed. Reg. at 75963 (Nov. 1, 2016).

[28] *See* 34 C.F.R. § 685.222(e)(7); 81 Fed. Reg. 39330, 39347 (June 16, 2016) (In the preamble to the proposed rule, the Department states it "intend[ed] that the proposed fact-finding process used for an individual borrower defense claim **would be separate and distinct** from the Department's efforts to recover from schools any losses arising from a borrower defense. . . . [It] would not condition borrower relief awarded . . . on whether the Secretary has the actual ability to recover those losses from the school." (emphasis added)).

[29] 81 Fed. Reg. at 75964 (Nov. 1, 2016).

proceeding.[30] Further, sharing such evidence would cause "unnecessary administrative delay" in adjudicating the individual's claim.[31]

The 2016 Rule also limited when the Department could seek recoupment from schools on granted individual claims.[32] The regulations specified that the Department could initiate recoupment proceedings only if:

1) the borrower filed a borrower defense based on a breach of contract or misrepresentation claim within 6 years of when they became aware or when they should have become aware of the breach or misrepresentation;

2) the borrower's claim was based on litigation that resulted in a favorable adverse judgment; or

3) within the 6 year period when the borrower became aware or when they should have become aware of the breach or misrepresentation, the school received notice of the claim from the borrower or the Department, received notice of a class action complaint that included the borrower and that asserted the underlying facts that formed the basis of the borrower's claim,

---

[30] *Id.* ("The school will have the right and opportunity to obtain such evidence, and present evidence and arguments, in a separate proceeding initiated by the Secretary under § 685.222(e)(7) to collect the amount of relief resulting from the individually filed borrower defense claim.").

[31] *Id.*

[32] 34 C.F.R. § 685.222(e)(7).

or the school received written notice or a civil investigative demand from a

federal or state agency for facts that gave rise to borrower's claim.

As a result, only a portion of granted claims could result in a school recoupment

proceeding if the Department chose to exercise its discretion to recoup the amounts

discharged via a granted claim. Even if these circumstances were met, the rules did

not mandate that the Department seek recoupment. In addition, the Department

clarified that its ability to recoup granted claims would not affect how it would

decide individual claims.[33]

> **b)** **The regulations governing how the Department engages in enforcement proceedings against schools, 34 C.F.R. § 668.81 *et seq.*—which include administrative hearings—encompass the procedures used when the Department exercises its discretion to collect amounts discharged on granted claims.**

Two months after the Department published the final 2016 Rule, it published

a final rule amending 34 C.F.R. part 668 subpart G, to provide a process through

which the Secretary, in his discretion, may seek to recoup amounts associated with

granted borrower defense claims from schools.[34] Like the preambles that

---

[33] 81 Fed. Reg. at 39347 (June 16, 2016) (The Department "would not condition borrower relief awarded in this proceeding on whether the Secretary has the actual ability to recover those losses from the school. Rather, the Department will provide relief to the borrower according to the final decision of this process, and the Department's action to recover losses from the school will follow in a separate proceeding.").

[34] 82 Fed. Reg. 6253 (Jan. 19, 2017).

accompanied the 2016 proposed and final Rule, the preamble reiterated that the administrative hearing process to determine school liability for granted claims would not affect any relief the Department awarded to borrowers.[35] The determination of a borrower's eligibility for discharge from the Department was separate and distinct from the determination of a school's liability to pay the Department for such discharge.

The Department added 34 C.F.R. § 668.87 to specify that if the Department were to initiate a recoupment proceeding to collect amounts discharged due to a granted borrower defense claim, it would provide the school with "a statement of facts and law sufficient to show that the Department is entitled to grant any borrower defense relief [and to] recover the amount of losses the Secretary caused by the granting of such relief."[36] The notice includes the opportunity for the school to request a hearing and the opportunity to respond, and to present its case as to why the Secretary should not recover.[37] If the school requests a hearing, it will proceed in accordance with 34 C.F.R. § 668.89, in which both parties may submit evidence and call witnesses.[38] This regulation remained in effect during the 2019

---

[35] 34 C.F.R. § 668.87(d) (eff. Jan. 19, 2017); 82 Fed. Reg. at 6255 (Jan. 19, 2017); 81 Fed. Reg. at 39347 (June 16, 2016); 81 Fed. Reg. at 75964 (Nov. 1, 2016).

[36] 34 C.F.R. § 668.87(a)(1)(ii) (eff. Jan. 19, 2017).

[37] 34 C.F.R. § 668.87(a)(1)(iii) (eff. Jan. 19, 2017).

[38] 34 C.F.R. § 668.87 (eff. Jan. 19, 2017).

Rule. Schools are still afforded a formal administrative hearing process to contest

their liability on granted borrower defense claims today.[39]

> **c)** **The 2016 Rule's group discharge regulations, which do not apply to the applications at issue in the *Sweet* class, required that the Department proceed through a hearing process to determine whether or not to provide relief to the class.**

Unlike the prior rule, the 2016 Rule created a separate and distinct process

for the Department to discharge the debts of groups of borrowers without requiring

the borrowers to apply.[40] The process laid out in the regulations required that once

the Department chose to form a group, it would assign a Department official to

engage in fact finding and present the group's claims, provide borrowers within the

group with an opt-out process, and, unlike the individual application process,

submit the claim to be adjudicated in administrative proceedings before a hearing

official.[41] The group discharge adjudication process would proceed through the

administrative hearing processes described in 34 C.F.R. § 668.81 *et seq*.[42]  Unlike

---

[39] The 2022 Rule minorly altered the process the Department would use when exercising its discretion to recoup amounts discharged on granted claims by using the processes in 34 C.F.R. part 668 subpart H—the administrative process governing audit appeals and program reviews—instead of having the process proceed under 34 C.F.R. part 668 subpart G. 87 Fed. Reg. 65904, 65948-50 (Nov. 1, 2022); 34 C.F.R. § 685.409. Schools can still contest their liabilities through a formal administrative process where they can present evidence.

[40] 34 C.F.R. § 685.222(f)–(h).

[41] 34 C.F.R. §§ 685.222(h)(1), 685.222(g)(1).

[42] 34 C.F.R. § 668.87 (eff. Jan. 19, 2017); 82 Fed. Reg. at 6254-55 (Jan 19. 2017).

the individual adjudication process, once the Department chose to initiate a group discharge process, it would "[n]otif[y] the school of the basis of the group's borrower defense . . . and of any procedure by which the school may request records and respond."[43] At the conclusion of the adjudication of the group claim, the Department would provide a copy of the hearing official's decision to the school.[44] This is again distinct from the individual adjudication process, which did not require the Department to provide the school with a copy of its decision letter.[45]

If the Department's group discharge claim were granted against an open school and met other criteria specified in the regulation, the Department would recover the amount discharged from the school.[46] The Department could do so only if it met the limitations criteria that applied to the recoupment of granted individual claims listed above,[47] unless the school received notice of the borrower defense claim within the limitations period.

The group process did not apply to the applications that were the basis of the *Sweet* class. The Department has never purported to resolve the *Sweet* classmates'

---

[43] 34 C.F.R. § 685.222(f)(2)(iv).

[44] 34 C.F.R. § 685.222(g)(1)(iii); 34 C.F.R. § 685.222(h)(1)(iii).

[45] *See* 34 CFR § 685.222(e).

[46] 34 C.F.R. § 685.222(5). *See* 81 Fed. Reg. at 75966 (Nov. 1, 2016).

[47] *Supra* p. 12.

claims as a part of the group process. Further, the class only includes borrowers who asserted borrower defenses.

> **4)** **Like both prior rules, the 2019 Rule similarly made recoupment for granted claims discretionary but allowed more back and forth between borrowers and schools during the individual application adjudication process—procedures which created insurmountable logistical problems.**

In 2019, the Department promulgated another iteration of borrower defense rules that would govern the adjudication of borrower defense applications submitted on loans that were disbursed after July 1, 2020.[48] The 2019 Rule provided new eligibility standards and procedural rules that were much more difficult for borrowers to satisfy than the prior borrower defense rules and did not provide a group discharge process.[49] Once an application covered by the 2019 Rule was submitted, the Department would provide the school with a copy of the borrower's application and any other relevant evidence pertaining to the claim as well as a waiver signed by the student allowing the school to provide the

---

[48] 34 C.F.R. § 685.206(e).

[49] For example, the 2019 Rule included a three-year statute of limitations to submit both affirmative and defense claims, required that borrowers provide documentary evidence of a school's misrepresentation, and quantify the amount of financial harm they suffered as a result of their school's misconduct (without relying on the debt they took on to attend the school), among other difficult criteria. *See* Nat'l Consumer Law Ctr., *Student Loan Law*, § 10.6 (online edition) available at https://library.nclc.org/; 87 Fed. Reg. 41878, 41883 (July 13, 2022).

Department with relevant materials from the student's education record.[50] The Department would "invite the school to respond" to the claim for a period that would be no less than 60 days.[51] The Department would share the school's response and any evidence it held pertaining to the claim with the borrower, who would then have no less than 60 days to respond.[52] The Department would provide a copy of the borrower's response to the school.[53] However, like under the prior rules, a school response was not required for the Department to adjudicate the borrower's claim and the Department was not required to accept the school's version of facts as true.

Like all of the prior rules, the Department bifurcated school liability proceedings from the adjudication of individual applications. If the Department granted some or all of a borrower's claim, it had discretion to choose to initiate a recoupment proceeding. That proceeding, like under the prior rules, would follow the process laid out in 34 C.F.R. part 668 subpart G.[54]

The 2019 Rule faced legal challenges and had implementation problems. The New York Legal Assistance Group (NYLAG) challenged the rule in federal

---

[50] 34 C.F.R. § 685.206(e)(10).

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] 34 C.F.R. § 685.206(e)(16).

court, alleging that the rule violated the Administrative Procedure Act both procedurally and substantively.[55] In March of 2021, the district court ruled on the parties' cross motions for summary judgment and partially granted NYLAG's motion, striking aspects of the rule but upholding the remainder.[56] NYLAG appealed, but it ultimately withdrew its appeal without prejudice to reinstatement in light of the 2022 Rule superseding the prior rule when it took effect on July 1, 2023.[57]

In addition, when promulgating the 2022 Rule, the Department noted that the record sharing requirements of the 2019 Rule were nearly impossible to administer.[58] Although the Department was unable to fully adjudicate any applications subject to the 2019 Rule when promulgating the 2022 Rule,[59] it noted it "did not have a mechanism for transmitting such large amounts of information" associated with many claims, and that it did not have the means to appropriately

---

[55] Complaint, *NYLAG v. DeVos*, No. 1:20-cv-01414 (S.D.N.Y. Feb. 19, 2020).

[56] *NYLAG v. DeVos*, 527 F. Supp. 3d 593 (S.D.N.Y. 2021).

[57] *NYLAG v. DeVos,* No. 21-888 (2d Cir.), ECF Nos. 186, 192, 195, 204.

[58] 87 Fed. Reg. 65904, 65912 (Nov. 1, 2022).

[59] The Department explained that the lack of 2019 Rule adjudications was due to two events. First, the 2019 Rule took effect shortly before the COVID-19 payment pause was in effect, thereby preventing many borrowers from appreciating the effects of enrolling in a school that engaged in misrepresentation. Second, the stipulation in this case prohibited the Department from denying claims while litigation was pending. 87 Fed. Reg. at 65911-12 (Nov. 1, 2022).

redact confidential information within the record of evidence that would impact the Department's decision on a claim.[60] As a result, in the 2022 Rule, the Department opted to give schools notice of borrowers' claims and request responses from the schools, without providing them with a copy of the application or the Department's underlying information regarding the claim.[61] Instead, the 2022 Rule permits schools to see the evidence against them and contest a granted claim only if the Department pursues a separate recoupment proceeding against the school, much like the 2016 Rule.[62]

Considering these difficulties, it is unclear whether the processes laid out in the 2019 Rule would have occurred at all had this settlement not resolved these borrowers' applications.

### B) The Department has consistently determined it needs to bifurcate the school recoupment and individual adjudication processes to ensure that the rights of borrowers and institutions are balanced and that the adjudication of individual claims is timely.

In each of the borrower defense rules, the Department has separated the process necessary to adjudicate individual claims from the process necessary to recover from schools the amounts discharged on granted claims. The Department sees the processes as distinct because "[t]he rights adjudicated in borrower defense

---

[60] 87 Fed. Reg. at 65912 (Nov. 1, 2022).

[61] 34 C.F.R. § 685.405.

[62] *See* 34 C.F.R. §§ 668.125, 685.405-406, 685.409.

proceedings are rights of the Direct Loan borrower against the government

regarding the borrower's obligation to repay a loan made by the government,"

whereas recoupment proceedings to recover amounts discharged in granted claims

involve the "rights of the government to recover from the school for losses

incurred as a result of the act or omission of the school in participating in the

Federal loan program."[63] The Department has consistently intended that the

individual application be a "simple process" accessible to borrowers without legal

representation.[64] The two processes must be bifurcated to avoid a David and

Goliath scenario for borrowers facing schools with ample legal representation.[65]

Additionally, limiting a school's involvement in the adjudication of

individual claims is necessary to ensure that the adjudication process is timely.

Throughout the 2016 Rule, the Department discussed its intent that individual

claims be adjudicated in a timely way.[66] As discussed above, the 2019 document

sharing process created significant challenges for the Department. Even if it had

been able to implement the 2019 Rule, individual adjudications would have taken

even longer than they would have under the prior rules, as the Department would

---

[63] 81 Fed. Reg. at 75928-29 (Nov. 1, 2016).

[64] *See* 81 Fed. Reg. at 75928 (Nov. 1, 2016).

[65] *See* 81 Fed. Reg. at 75975 (Nov. 1, 2016) ("[U]nder the individual application process, a borrower will not be involved in an adversarial process against a school.").

[66] 81 Fed. Reg. at 75964 (Nov. 1, 2016).

need to allow for back and forth between the borrower and the school before deciding a claim.

### C) Virtually all of the applications submitted by class members were covered by the procedural rules laid out in the 2016 Rule at the time the settlement was entered.

While different regulations governed applications pertaining to loans disbursed at different times, nearly all of the applications at issue in this case were subject to the procedural rules set forth in the 2016 Rule that limit a school's involvement in the adjudication of borrower relief to that of a potential witness rather than a party. According to the Department's 2022 Final Rule, loans issued after July 1, 2020 that are subject to the 2019 Rule make up only 3% of borrower defense applications submitted from July 1, 2020 to November 1, 2022.[67] However, the *Sweet* class encompasses claims that were submitted from 2015 onward.[68]

Thus, it is highly likely that far fewer than 3% of applications submitted by class members would be subject to the 2019 Rule, which is the only rule that provided schools with an opportunity to see and respond to borrowers' applications or see what relevant evidence the Department had regarding those applications

---

[67] 87 Fed. Reg. at 65911 (Nov. 1, 2022).

[68] 4-ER-811; *Sweet v. Cardona*, No. 3:19-cv-03674 (N.D. Cal. Feb. 7, 2020), ECF No. 90.

before the Department rendered a decision. Indeed, it is unclear from the record in this case whether **any** of the applications pertaining to the intervenor schools would be subject to the 2019 Rule. And, as noted above, given that the Department promulgated new rules and that the Department faced legal and logistical implementation challenges, it is unclear whether any applications theoretically subject to the 2019 Rule would or could have in fact been adjudicated using the 2019 Rule's procedures for sharing information between the borrower, the school, and the Department.

Further, it is unclear how many of the applications submitted by class members would satisfy the criteria listed in the 2016 Rule[69] necessary for the Department to initiate a recoupment proceeding on granted claims, if their claims had been granted through the borrower defense process. In our experience working with low-income borrowers and coordinating with other legal aid attorneys who serve this population, borrowers are often unaware of their ability to file a borrower defense claim for years, meaning that when they do file, the Department is often time-barred from initiating a process to seek school recoupment. As a result, the rules do not contemplate a process for the schools to contest the borrower's evidence or their liability in these cases. Regardless, the Department would not be able to attempt to recoup the amounts discharged via this settlement

---

[69] *Supra* p. 12.

because, as Department official Benjamin Miller stated, "Full Settlement Relief under the Settlement Agreement does not constitute the granting or adjudication of a borrower defense pursuant to the Borrower Defense Regulations, and therefore provides no basis to the Department for initiating a borrower defense recoupment proceeding against any institution identified on Exhibit C to the Settlement Agreement."[70]

## CONCLUSION

The borrower defense rules applicable to nearly all of the applications submitted by the class members in this case do not require that schools participate in the adjudication of individual claims and generally limit their involvement. Instead, schools are afforded the opportunity to contest borrowers' claims if the Department grants those claims and chooses to initiate recoupment proceedings to collect the amounts discharged, proceedings which involve a formal administrative hearing process. Thus, the borrower defense rules do not provide the intervenor schools with "administrative rights" when the Department is adjudicating claims. The Court should affirm the judgment below.

---

[70] 3-ER-399, ¶ 9.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## COMPLIANCE STATEMENT

9th Cir. Case Number(s): <u>23-15049, 23-15050, 23-15051</u>

I am the attorney or self-represented party.

**This brief contains <u>5584</u> words, including <u>0</u> words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).**

I certify that this brief (select only one):

**[x]** complies with the word limit of Cir. R. 32-1.

☐ is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

**[x]** is an amicus brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a death penalty case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b)

Signature: <u>/s/ Shennan Kavanagh</u>          Date: <u>August 9, 2023</u>

25

## STATEMENT OF RELATED CASES

There are no related cases currently pending in this Court.

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2023, the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Shennan Kavanagh