Nos. 23-15049, 23-15050, 23-15051 (consolidated)

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

THERESA SWEET, et al.,

*Plaintiffs-Appellees*,

&

EVERGLADES COLLEGE, INC., LINCOLN EDUCATIONAL SERVICES CORPORATION, and AMERICAN NATIONAL UNIVERSITY,

*Intervenors-Appellants*,

v.

MIGUEL CARDONA, et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of California
No. 3:19-cv-3674 | Hon. William H. Alsup

## APPELLANTS' JOINT REPLY BRIEF

Jesse Panuccio
Jason Hilborn
BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd., Ste. 1200
Fort Lauderdale, FL 33301
(954) 356-0011
jpanuccio@bsfllp.com

*Counsel for Everglades College, Inc.*

John S. Moran
MCGUIREWOODS LLP
888 16th St. N.W., Suite 500
Black Lives Matter Plaza
Washington, D.C. 20036
(202) 828-2817
jmoran@mcguirewoods.com

*Counsel for American National University*

Lucas C. Townsend
Jeffrey Liu
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
LTownsend@gibsondunn.com

James L. Zelenay, Jr.
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7449

*Counsel for Lincoln Educ. Services Corp.*

***Additional Counsel Listed on Next Page***

Piper A. Waldron
McGuireWoods LLP
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
(310) 315-8250

*Counsel for American National University*

Katherine Worden
Gibson, Dunn & Crutcher LLP
555 Mission Street
San Francisco, CA 94105
(415) 393-8229

*Counsel for Lincoln Educ. Services Corp.*

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................1

ARGUMENT ...........................................................................................................1

I. THE SCHOOLS HAVE APPELLATE STANDING. ....................................................1

II. THE DISTRICT COURT LACKED JURISDICTION TO APPROVE THE
SETTLEMENT. .................................................................................................11

III. THE DEPARTMENT LACKED AUTHORITY TO PROVIDE THE SETTLEMENT
RELIEF. ..........................................................................................................14

    A. The Secretary Lacks Statutory Authority To Cancel Student-
Loan Debt *En Masse*. ...........................................................................14

        1. 20 U.S.C. § 1087e(h) Does Not "Combin[e]" With The
Attorney General's Settlement Authority To Authorize The
Settlement. ...................................................................................15

        2. 20 U.S.C. § 1082(a)(6) Does Not Authorize The Settlement. ......17

        3. The Secretary Ignores The Restrictions On Individualized
Compromises Of Debt. .................................................................20

    B. The Department Fails To Show That The Settlement Accords
With Administrative Law Principles. .....................................................21

IV. THE FINAL APPROVAL VIOLATED RULE 23. .....................................................26

    A. The District Court Violated Rule 23(b)(2). ...........................................27

    B. The Settlement Destroyed Commonality, Typicality, And
Adequate Representation. .......................................................................30

    C. The Inclusion Of Uninjured Class Members Renders The
Certified Class Overbroad. .....................................................................31

    D. The Settlement Binds Individuals Outside The Class. ...........................33

V. THE SETTLEMENT VIOLATES DUE PROCESS. ....................................................34

VI. THE SCHOOLS HAD A RIGHT TO INTERVENE. ..................................................36

CONCLUSION .......................................................................................................38

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ala. Legis. Black Caucus v. Alabama*,
575 U.S. 254 (2015)..........................................................................3

*All. for the Wild Rockies v. U.S. Dep't of Agric.*,
772 F.3d 592 (9th Cir. 2014) .........................................................13

*Allen v. Bedolla*,
787 F.3d 1218 (9th Cir. 2015) .......................................................27

*Am. Hosp. Ass'n v. Price*,
867 F.3d 160 (D.C. Cir. 2017).......................................................20

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997).......................................................................27

*Arizonans for Off. Eng. v. Arizona*,
520 U.S. 43 (1997).........................................................................10

*Azar v. Allina Health Servs.*,
139 S.Ct. 1804 (2019).....................................................................18

*Babamuradova v. Blinken*,
633 F. Supp. 3d 1 (D.D.C. 2022)...................................................32

*Bauer v. Marmara*,
774 F.3d 1026 (D.C. Cir. 2014)......................................................21

*Biden v. Nebraska*,
143 S.Ct. 2355 (2023)................................................................14, 20

*California v. Azar*,
911 F.3d 558 (9th Cir. 2018) ...........................................................7

*In re Cendant Corp. PRIDES Litig.*,
243 F.3d 722 (3d Cir. 2001) ..........................................................27

ii

*Chauffeur's Training Sch., Inc. v. Riley*,
   967 F. Supp. 719 (N.D.N.Y. 1997)........................................................35

*Cholakyan v. Mercedes-Benz, USA, LLC*,
   281 F.R.D. 534 (C.D. Cal. 2012)..........................................................28

*Church v. City of Huntsville*,
   30 F.3d 1332 (11th Cir. 1994) ................................................................3

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
   647 F.3d 893 (9th Cir. 2011) ................................................................37

*City & Cnty. of S.F. v. Garland*,
   42 F.4th 1078 (9th Cir. 2022) ..............................................................11

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)................................................................................7

*Davidson v. O'Reilly Auto Enters., LLC*,
   968 F.3d 955 (9th Cir. 2020) ...............................................................30

*Department of Education v. Brown*,
   143 S.Ct. 2343 (2023)............................................................................9

*Dewey v. Volkswagen Aktiengesellschaft*,
   681 F.3d 170 (3d Cir. 2012) .................................................................31

*Didrickson v. U.S. Dep't of Interior*,
   982 F.2d 1332 (9th Cir. 1992) ...............................................................5

*Doe v. Pub. Citizen*,
   749 F.3d 246 (4th Cir. 2014) ...............................................................10

*Donaldson v. United States*,
   400 U.S. 517 (1971)..............................................................................37

*Dugan v. United States*,
   16 U.S. (3 Wheat.) 172 (1818) .............................................................18

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ...............................................................28

iii

*Ewing v. MED-1 Sols., LLC,*
24 F.4th 1146 (7th Cir. 2022) ...........................................................................2, 3

*Exec. Bus. Media, Inc. v. U.S. Dep't of Def.,*
3 F.3d 759 (4th Cir. 1993) .................................................................................16

*FCC v. Prometheus Radio Project,*
141 S.Ct. 1150 (2021)........................................................................................25

*FEC v. Cruz,*
142 S.Ct. 1638 (2022)..........................................................................................3

*Fowler v. Guerin,*
899 F.3d 1112 (9th Cir. 2018) ...........................................................................28

*Frank v. Gaos,*
139 S.Ct. 1041 (2019).........................................................................................11

*Glens Falls Ins. Co. v. Satree,*
320 F.2d 92 (9th Cir. 1963) ...............................................................................33

*Gould v. Alleco, Inc.,*
883 F.2d 281 (4th Cir. 1989) .............................................................................26

*Hansberry v. Lee,*
311 U.S. 32 (1940).............................................................................................34

*Idaho Farm Bureau Fed'n v. Babbitt,*
58 F.3d 1392 (9th Cir. 1995) ...............................................................................8

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,*
456 U.S. 694 (1982)...........................................................................................19

*Joint Anti-Fascist Refugee Committee v. McGrath,*
341 U.S. 123 (1951).............................................................................................2

*Jones v. Prince George's Cnty.,*
348 F.3d 1014 (D.C. Cir. 2003).........................................................................22

*Kennedy v. Warren,*
66 F.4th 1199 (9th Cir. 2023) ....................................................................1, 8, 9

iv

*Laub v. U.S. Dep't of Interior*,
  342 F.3d 1080 (9th Cir. 2003) ...............................................................21

*California ex rel. Lockyer v. United States*,
  450 F.3d 436 (9th Cir. 2006) ..........................................................22, 37

*Loughlin v. United States*,
  393 F.3d 155 (D.C. Cir. 2004)...............................................................10

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992).................................................................................7

*Meese v. Keene*,
  481 U.S. 465 (1987).................................................................................2

*Merck & Co. v. U.S. Dep't of Health & Hum. Servs.*,
  962 F.3d 531 (D.C. Cir. 2020)...............................................................14

*Navarro v. Eagle Mountain Casino*,
  183 F.App'x 659 (9th Cir. 2006) ...........................................................11

*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004)..................................................................................14

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999)................................................................................11

*In re Pet Food Prods. Liab. Litig.*,
  629 F.3d 333 (3d Cir. 2010) ..................................................................27

*Portland General Electric Co. v. Bonneville Power Administration*,
  501 F.3d 1009 (9th Cir. 2007) ...............................................................24

*Randall v. Rolls-Royce Corp.*,
  637 F.3d 818 (7th Cir. 2011) ...........................................................28, 29

*Reed Elsevier, Inc. v. Muchnick*,
  559 U.S. 154 (2010)................................................................................11

*Richards v. Delta Air Lines, Inc.*,
  453 F.3d 525 (D.C. Cir. 2006)...............................................................29

*Rosebrock v. Mathis*,
745 F.3d 963 (9th Cir. 2014) ...................................................................13

*Salimi v. BMW Fin. Servs. NA, LLC*,
2017 WL 4570367 (N.D. Cal. Sept. 29, 2017)......................................33

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*,
65 F.4th 1012 (9th Cir. 2023) ...................................................................7

*Smith v. Arthur Andersen LLP*,
421 F.3d 989 (9th Cir. 2005) ..................................................................27

*Springfield Hospital, Inc. v. Guzman*,
28 F.4th 403 (2d Cir. 2022) ....................................................................19

*Sugar Cane Growers Co-op. of Fla. v. Veneman*,
289 F.3d 89 (D.C. Cir. 2002)...................................................................23

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
445 F.3d 311 (4th Cir. 2006) ..................................................................29

*TransUnion LLC v. Ramirez*,
141 S.Ct. 2190 (2021)......................................................................2, 3, 31

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972)..................................................................................22

*United States v. Carpenter*,
526 F.3d 1237 (9th Cir. 2008) ...........................................................16, 25

*United States v. Students Challenging Regul. Agency Procs.*,
412 U.S. 669 (1973)....................................................................................3

*United States v. Underwood*,
717 F.2d 482 (9th Cir. 1983) (en banc) ..................................................10

*Van v. LLR, Inc.*,
962 F.3d 1160 (9th Cir. 2020) (per curiam) .............................................3

*W. Morgan-E. Lawrence Water & Sewer Auth. v. 3M Co.*,
737 F.App'x 457 (11th Cir. 2018) (per curiam)......................................27

vi

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)....................................................................................27, 28

*Waller v. Fin. Corp. of Am.*,
828 F.2d 579 (9th Cir. 1987) ...............................................................................27

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) .............................................................................13

**Statutes**

5 U.S.C. § 551 ...........................................................................................................23

5 U.S.C. § 702 ...........................................................................................................18

20 U.S.C. § 1082 ..........................................................................................15, 17, 18, 19

20 U.S.C. § 1087e ........................................................................................6, 15, 16, 17, 22

20 U.S.C. § 1099c ........................................................................................................6

**Rules**

Fed. R. Civ. P. 23 .................................................................... 26, 27, 28, 29, 33, 34

Fed. R. Civ. P. 24 ......................................................................................................26

**Regulations**

34 C.F.R. § 30.70 ......................................................................................................21

34 C.F.R. § 668.15 ......................................................................................................6

34 C.F.R. § 668.81 ......................................................................................................6

34 C.F.R. § 668.99 ......................................................................................................6

34 C.F.R. § 668.171 ....................................................................................................6

34 C.F.R. § 685.206 .............................................................................................6, 7, 35

34 C.F.R. § 685.222 ....................................................................................................7

59 Fed. Reg. 42,646 (Aug. 18, 1994) ....................................................................18

81 Fed. Reg. 39,330 (June 16, 2016) ........................................................18

82 Fed. Reg. 6253 (Jan. 19, 2017) ............................................................22

84 Fed. Reg. 49,788 (Sept. 23, 2019) .........................................5, 22, 36

87 Fed. Reg. 65,904 (Nov. 1, 2022).............................................................6

**Other Authorities**

*Authority of the United States to Enter Settlements Limiting the Future Exercise of Executive Branch Discretion*, 23 Op. O.L.C. 126 (1999).....................................................17, 20, 25

Dep't of Educ., Off. of Postsecondary Educ., Public Hearings 13 (July 18, 2023), tinyurl.com/bdz33cf8 .........................................................4

Everglades University, WIKIPEDIA, https://en.wikipedia.org/w/index.php?title=Everglades_University &oldid=1150030080 .............................................................................4

Press Release, *Biden-Harris Administration Approves $72 Million in Borrower Defense Discharges for over 2,300 Borrowers who Attended Ashford University*, Dep't of Educ. (Aug. 30, 2023), https://www.ed.gov/news/press-releases/biden-harris-administration-approves-72-million-borrower-defense-discharges-over-2300-borrowers-who-attended-ashford-university ....................................2

Press Release, *U.S. Department of Education Announces $42 Billion in Approved Public Service Loan Forgiveness for More Than 615,000 Borrowers Since October 2021*, Dep't of Educ. (May 8, 2023), https://www.ed.gov/news/press-releases/us-department-education-announces-42-billion-approved-public-service-loan-forgiveness-more-615000-borrowers-october-2021............................................2

**INTRODUCTION**

The Settlement violates basic principles of justiciability, statutory interpretation, administrative law, class procedure, and fair play. And it institutes a new regulatory scheme directly affecting more than a half-million borrowers and 4,000 schools. Appellees seek to shield this collusive, unprecedented, and unlawful Settlement from review by challenging the Schools' appellate standing. But the Schools have shown that the Settlement maligns them by name and concretely harms them, and that vacatur is necessary to redress that harm. The Court should vacate the judgment.

**ARGUMENT**

**I. THE SCHOOLS HAVE APPELLATE STANDING.**

The settling parties renew their baseless challenge to the Schools' appellate standing, but the Schools have cognizable injuries that will be redressed by vacating the judgment. Appellees' responses are unpersuasive.

**A. Reputational Injury.** As this Court recently confirmed, "[r]eputational harm stemming from an unretracted government action is a sufficiently concrete injury for standing purposes." *Kennedy v. Warren*, 66 F.4th 1199, 1205-06 (9th Cir. 2023). Exhibit C inflicts (1) a publication injury akin to the common-law analogue of defamation, and (2) serious reputational and programmatic harms. AOB.20-22.[1]

---

[1] Briefs are cited as: Appellants' Opening Brief ("AOB.XX"); United States' Brief ("USB.XX"); Plaintiffs' Brief ("PB.XX").

**1.** Exhibit C inflicts direct reputational harm through publication of a false statement to a third party—a "traditionally recognized" legal injury. *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2204 (2021); *Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146, 1153-54 (7th Cir. 2022). The Department could have settled this case without incorporating and publishing a list of schools that supposedly engaged in "institutional misconduct." 3-ER-573-74. Instead, after secretly colluding with the Schools' accusers for more than a year, and providing no process to the Schools, the Department publicly branded the Schools with a scarlet letter. Like the charitable organizations "designated" by the Attorney General "as Communist" in *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 125, 140 (1951), or the candidate challenging the Department of Justice's classification of films "as 'political propaganda'" in *Meese v. Keene*, 481 U.S. 465, 476 (1987), the Schools have "clear" standing to vindicate their "right … to carry on [their] work, free from defamatory statements of the [federal government]," *McGrath*, 341 U.S. at 140-41.[2]

The Department argues that Exhibit C is not "sufficiently injurious" and "de minimis," USB.23-24, but that misunderstands *TransUnion* and basic standing

---

[2] The Department continues to trumpet its relief to "borrowers whose schools were found to have cheated them" (https://www.ed.gov/news/press-releases/us-department-education-announces-42-billion-approved-public-service-loan-forgiveness-more-615000-borrowers-october-2021) and "took advantage of them" (https://www.ed.gov/news/press-releases/biden-harris-administration-approves-72-million-borrower-defense-discharges-over-2300-borrowers-who-attended-ashford-university).

principles. No concrete injury is "too little to support Article III standing." *Van v. LLR, Inc.*, 962 F.3d 1160, 1162 (9th Cir. 2020) (per curiam). Any "identifiable trifle" suffices. *United States v. Students Challenging Regul. Agency Procs.*, 412 U.S. 669, 689 n.14 (1973). And under *TransUnion*, a false, third-party publication *alone* establishes concrete injury based on its relationship to "a close historical or common-law analogue"—defamation. 141 S.Ct. at 2204. If published false "reports of debts not being disputed" suffices for standing, *Ewing*, 24 F.4th at 1152, a regulator's published false list of "institutional misconduct by the schools" certainly does, 3-ER-378, 409.

The Department quibbles that the Court should not "assume" Exhibit C is defamatory, USB.22, and Plaintiffs assert that Exhibit C is not false, PB.30. But, in this posture, standing is assessed under a pleading standard. *See Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir. 1994); *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 271 (2015). Courts thus *must* "accept as valid the merits of [the] legal claims" in assessing standing. *FEC v. Cruz*, 142 S.Ct. 1638, 1647 (2022). And under any applicable standard, the Schools have *shown* concrete harms flowing from Exhibit C's defamatory publication.

**2.** The Schools' concrete harms are well beyond "de minimis." In January 2023, a teacher cancelled a Lincoln class presentation *because of* Exhibit C. AOB.21; 2-ER-69. Lenders have subjected ECI to additional diligence, and declined

3

to provide credit, *because of* the Settlement.  AOB.14-15.  A United States Senator is using the Settlement to urge high-school administrators not to work with the "151 predatory institutions" listed in the Settlement.  AOB.14.  Plaintiffs' counsel used the Department's "determination" of "strong indicia regarding substantial misconduct" to interfere with a business opportunity for a school named in the Settlement.  Dkt. 17-4, No. 23-15050 (Ex. A).  The federal government used Exhibit C to solicit more claims against named schools for the Post-Class Group.  2-ER-73-74.  And School officials have averred that injury from the Settlement is increasing over time.  2-ER-71 ¶ 7; 2-ER-78 ¶ 14.[3]

Appellees trivialize this evidence and improperly cast it in a biased light. Plaintiffs now question (at 33) whether the teacher who disinvited Lincoln referred to Exhibit C—even though that list had been approved two months earlier and aggressively publicized by Plaintiffs' lawyers at the "Project on Predatory Student Lending."  The teacher's reference to Exhibit C is obvious, and Plaintiffs never

---

[3]  Stigmatic injuries continue to accrue.  In April 2023, ECI's Wikipedia entry was edited to state: "Everglades University was one of 153 institutions included in student loan cancellation due to alleged fraud." https://en.wikipedia.org/w/index.php?title=Everglades_University&oldid=1150030 080.  Parents of a newly enrolled student cancelled his enrollment after reading this article.  And a commenter at a recent hearing on the Department's negotiated rulemaking, *see* Dkt. 45-1, No. 23-15049, urged the Department to "[c]ancel debt incurred … from for-profit institutions involved in the *[S]weet* settlement regardless of a borrower defense application."  Dep't of Educ., Off. of Postsecondary Educ., *Public Hearings* 13 (July 18, 2023), tinyurl.com/bdz33cf8.

questioned it below.[4]  Plaintiffs similarly mischaracterize (at 32) ECI's declaration, but its uncontroverted statements are clear:  Lenders have required additional diligence due to the Settlement, the Settlement has "caus[ed]" ECI to incur additional burdens, and potential lenders have decided "not to provide financing" due to the Settlement.  2-ER-77; *see Didrickson v. U.S. Dep't of Interior*, 982 F.2d 1332, 1340 (9th Cir. 1992) (intervenor standing based on uncontroverted affidavits submitted on appeal).  Objectively viewed, this evidence establishes injury.

**B.  Injuries To Procedural Rights Protecting Concrete Interests.**  The Settlement's denial of the Schools' rights to submit evidence, raise defenses, and receive reasoned decisions on borrower-defense claims independently establishes standing.  Those rights are not procedural rights "*in vacuo*," PB.19; USB.16; they protect schools' concrete interests, including in avoiding recoupment and the "burde[n]" of defending against "unjustified claims," 84 Fed. Reg. 49,788, 49,825 (Sept. 23, 2019).

Plaintiffs (at 27-28), the Department (at 16), and *amicus* National Consumer Law Center ("NCLC") (at 11) argue that schools lack concrete interests in the Step-One adjudication, but they mischaracterize the regulations.  Schools' interests are

---

[4]  Plaintiffs' belated speculation (at 33) that the email referred to the Department's 2017 gainful-employment scorecard (which listed academic programs, not schools) is implausible.  Anyway, another recent teacher email to Lincoln *did* expressly refer to the Settlement.

inextricably tied to Step One—from the statutory predicate of "acts or omissions of an institution of higher education," 20 U.S.C. § 1087e(h), to the regulations' focus on "any act or omission of the school," 34 C.F.R. § 685.206(c)(1), to the current rules' intended "deterrent effect dissuading institutions from engaging in conduct that would give rise to" a borrower defense, 87 Fed. Reg. 65,904, 65,908 (Nov. 1, 2022).

Step-One findings can also trigger significant consequences for schools aside from recoupment, including fines and limitations, suspensions, or terminations of a school's participation in federal aid programs. *See* 34 C.F.R. §§ 668.81–.99; 20 U.S.C. § 1099c(c); 34 C.F.R. §§ 668.15, .171 (factors affecting school's "Financial Responsibility Composite Score," which affects participation in federal aid). Further, the Department recently announced guidance making the Settlement a factor in determining whether the Department will pursue *personal* liability against school leaders. AOB.13-14. Appellees ignore these concrete interests.

The borrower-defense regulations protect these interests. Plaintiffs (at 26) and NCLC (at 8) note that the requirement of "notice of BD claims" was not introduced until the 2016 regulations. But the 2016 regulations apply to *all* loans disbursed before July 1, 2020 (and therefore require notice), and the 2019 regulations' more stringent notice-and-response protections apply to loans disbursed after July 1, 2020.

6

34 C.F.R. §§ 685.206(c)(2), (e)(10), .222(e)(3)(i). The Settlement eliminates those rights.

That the Department need not "accept the school's version of events" in the Step-One process, PB.27, does not mean schools are uninjured if they cannot even *present* their version of events. A party "need not prove that the substantive result would have been different had he received proper procedure; all that is necessary is to show that proper procedure *could* have done so." *California v. Azar*, 911 F.3d 558, 571 (9th Cir. 2018).

The Department contends that recoupment is not "certainly impending." USB.21 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)). That argument ignores the other concrete interests threatened by the Settlement, *see supra* 6, but more fundamentally, *Clapper*'s imminence standard is inapplicable. A person accorded "a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573 n.7 (1992); *see San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1024-25 (9th Cir. 2023) (*Clapper* "applied an 'especially rigorous' analysis" due to "separation-of-powers considerations inherent in a national security case"). That relaxed standard is satisfied. AOB.63.

**C.    Causation and Redressability.**    Causation and redressability are undisputed for the Schools' procedural injuries, AOB.20, and Appellees' arguments for reputational injuries are unavailing.

Appellees speculate that the Schools' reputational injuries were caused by other state-regulatory actions, PB.34-35, USB.26, but lenders and community partners have cited *the Settlement* in requesting additional diligence and forgoing business relations, AOB.22-23.  The Schools have demonstrated the necessary "threat of injury stemming from the order" they "seek to reverse." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1399 (9th Cir. 1995).

Appellees suggest that a favorable judgment on appeal would not affect public perception.  USB.26; PB.39.  But Appellees' actions to promote the Settlement and Exhibit C show that they recognize its practical importance.  AOB.13-15, 22.  And vacatur would render the Settlement a meaningless piece of paper, mitigating existing reputational harms and preventing new ones.  AOB.22-23 (collecting cases).

This Court's *Kennedy* decision forecloses the Department's redressability arguments.  *Kennedy* upheld standing based on a disparaging letter published by a Senator claiming the authors of a book were "perpetuat[ing] dangerous falsehoods" and engaged in "potentially unlawful" conduct.  66 F.4th at 1206.  The Court held that enjoining the Senator to remove the letter from her website would "redress" the attendant reputational harm "in two ways": by "likely limit[ing] [the letter's] reach

8

and thereby mitigat[ing] the damage," and by "remov[ing] the unique stigma associated with having a government official label someone a law breaker." *Id.* This Court underscored that judicial relief need not "prohibit all forms of criticism to provide effective relief" to a disparaged party; it was sufficient that judicial relief could stop "the particular form of disparagement at issue," namely, the Senator's "posting the letter on her website." *Id*. That analysis controls here. *See* AOB.22-23; Dkt. 21 at 11, No. 23-15050 (collecting cases).

Causation and redressability are equally straightforward for the Schools' participation rights. Plaintiffs invoke (at 28) *Department of Education v. Brown*, 143 S.Ct. 2343 (2023), but *Brown*'s standing analysis is irrelevant. *Brown* held that borrowers who did not qualify for relief under the Department's other blanket loan cancellation program could not challenge it based on speculation that, had the Administration followed proper procedures, the borrowers might have qualified for relief under some hypothetical new plan. *Id.* at 2352. That theory failed because it was uncertain whether the substantive decisions the Department made under one source of statutory authority "have a causal relationship with other *substantive* decisions" the plaintiffs *wanted* the Department to make under a different source of authority. *Id.* at 2354. No such causal uncertainty exists here.

Finally, Plaintiffs suggest (at 39-40) the Schools' request to vacate the judgment is "overbroad," but that is a quibble about remedial scope, not Article III

9

standing. And it is wrong. The Schools sought to be struck from the Settlement—and remain open to that narrower relief—but Appellees refused, insisting the Settlement was all-or-nothing. *See* 3-ER-426.

**D. Inherent Jurisdiction To Find Mootness.** This Court has inherent jurisdiction to "correc[t] the error of the lower court in entertaining the suit" after it became moot—even if it harbors "grave" doubts about appellate standing. *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 66, 73 (1997).

Appellees urge this Court to treat *Arizonans* as "*sui generis*," PB.41; USB.29, but "unless the Supreme Court expressly limits its opinion to the facts before it, it is the principle which controls and not the specific facts upon which the principle was decided," *United States v. Underwood*, 717 F.2d 482, 486 (9th Cir. 1983) (en banc). And *Arizonans* is not *sui generis*: Notwithstanding any challenge to "standing to appeal," "an appellate court may act *sua sponte* to vacate a trial court decision if it determines that the lower court lacked jurisdiction due to mootness." *Loughlin v. United States*, 393 F.3d 155, 169-70 (D.C. Cir. 2004). *Contra* PB.42. Appellate courts routinely vacate lower-court decisions for lack of jurisdiction before considering barriers to their own jurisdiction. *E.g.*, *Doe v. Pub. Citizen*, 749 F.3d 246, 258-59 (4th Cir. 2014); *Navarro v. Eagle Mountain Casino*, 183 F.App'x 659, 660-61 (9th Cir. 2006).

## II. THE DISTRICT COURT LACKED JURISDICTION TO APPROVE THE SETTLEMENT.

Appellees do not dispute that a "court is powerless to approve a proposed class settlement" absent jurisdiction. *Frank v. Gaos*, 139 S.Ct. 1041, 1046 (2019). This case was moot long before the parties lodged the Settlement, AOB.24-25, and Appellees' responses fail.

1.      The Department never disavows its position that this case was moot before judgment, 3-ER-516-17, but argues "[t]here is no jurisdictional defect" if one party contends the district court has jurisdiction, USB.46-48. That is incorrect: a federal court must "be sure of its own jurisdiction before getting to the merits" of a "settlement." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999). Regardless of whether a settlement is a merits decision, USB.47, approval is an exercise of "a court's adjudicatory authority," *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160 (2010), which requires jurisdiction, *Frank*, 139 S.Ct. at 1046.

The Department also argues that the Schools have no "cause of action" to raise mootness, USB.45, but the Department forfeited that argument below, *infra* 21-22, and it is wrong. Courts have an "independent obligation" to consider mootness. *City & Cnty. of S.F. v. Garland*, 42 F.4th 1078, 1084 (9th Cir. 2022). Anyway, mootness is a defense, not a claim, and the Schools did not intervene as plaintiffs.

2.      Plaintiffs distort the record by asserting (at 42-43) the Department "did not change its overall posture toward pending BD claims." The head of Federal

Student Aid, Richard Cordray, unequivocally attested that the Department *did* change its posture by terminating the "policy of inaction," rescinding all "form denial" notices, and "prioritiz[ing] … adjudication of borrower defense applications." 3-ER-541-43 ¶¶ 7-9. Nothing supports Plaintiffs' insinuation (at 43) that Cordray was lying. Indeed, Plaintiffs ultimately concede (at 43 n.20) that Cordray's declaration established "some of the BD policies challenged by Plaintiffs were not being followed at the time," and Plaintiffs cannot identify any challenged policy that was still being followed when the Settlement was lodged.

Plaintiffs argue (at 43) the case was not moot because the Department had not yet adjudicated *every* BD application, but Plaintiffs explicitly did "*not* ask th[e] Court to adjudicate their borrower defenses," 4-ER-836-37 (emphasis added). They sought only "an order compelling the Department to *start* granting or denying their borrower defenses." *Id.* (emphasis added). Even here, Plaintiffs concede (at 56) that their "alleged … harm" is redressed by a "restarted … BD process." The "precise relief sought" was achieved long before the Settlement was lodged, so the case was moot. *All. for the Wild Rockies v. U.S. Dep't of Agric.*, 772 F.3d 592, 601 (9th Cir. 2014).[5]

---

[5] In a footnote, Plaintiffs claim that Cordray did not establish that the challenged policy "will not recur" because the change was "'not reflected in statutory changes … or regulations.'" PB.43 n.20 (quoting *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014)). But *Rosebrock* explained that a case is moot if the policy change

Plaintiffs also claim (at 43) the case was still live because their Supplemental Complaint alleged a "presumption of denial" policy. But the Plaintiffs' requested relief was to vacate the form denials and to enjoin the Department's alleged policy of "deny[ing] all or almost all" BD applications. 4-ER-698-99. Cordray attested that "[a]ll … form denial notice[s] will be reconsidered," none has issued "since October 21, 2020," and the Department *has* issued *tens of thousands* of approvals. 3-ER-541-42, 544-55 ¶¶ 8, 14-15.

Plaintiffs' show-cause request (PB.9; USB.47)—made *after* announcing a settlement in principle—did not keep the case alive. Their belated ask did not legitimately put that relief at issue. A live case exists only if the court can grant effectual relief, and the district court had "no power" to require the Department to *grant* all pending borrower-defense claims on Plaintiffs' APA unlawful-delay claims. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 65 (2004).

---

is "unequivocal in tone," "addresses all of the objectionable measures," the case in question was the "catalyst" for change, and "the policy has been in place for a long time." 745 F.3d at 971-72. Cordray's declaration and the Department's actions satisfy these factors. *See White v. Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000) (case moot where agency memorandum "represent[ed] a permanent change in the way HUD conducts FHA investigations").

**III.** **THE DEPARTMENT LACKED AUTHORITY TO PROVIDE THE SETTLEMENT RELIEF.**

    **A.** **The Secretary Lacks Statutory Authority To Cancel Student-Loan Debt *En Masse*.**

The government must show that Congress has granted it sweeping authority to cancel student loans *en masse* and to establish an extra-regulatory adjudicatory framework. In *Biden v. Nebraska*, the Supreme Court recently rejected the same claim to this all-encompassing power over student loans.[6] There, the Secretary claimed the HEROES Act provided him "virtually unlimited power" to make the "consequential tradeoffs inherent in a mass debt cancellation." 143 S.Ct. 2355, 2373, 2375 (2023) (quotation marks omitted). Despite the Court's conclusion—backed by the major-questions doctrine—that Congress "would likely have intended" to reserve this power for itself, *id.* at 2375, the government now claims the Attorney General's settlement authority and the HEA—enacted before the HEROES Act—granted it this power all along. Neither theory succeeds.

---

[6] The Department absurdly claims that the "settlement does not reflect any *en masse* cancellation," USB.37, but provides no reasonable alternative definition for cancelling hundreds of thousands of loans at once. Nor does the Department offer any principle limiting the Secretary's claimed power. *Cf. Merck & Co. v. U.S. Dep't of Health & Hum. Servs.*, 962 F.3d 531, 540-41 (D.C. Cir. 2020) (major-questions doctrine's applicability is determined "not only by the specific application at issue, but also by the implications of the authority claimed"). Indeed, to replace the blanket debt cancellation invalidated by *Nebraska*, the Department has announced a rulemaking under the same HEA provisions cited here. Dkt. 45-1, No. 23-15049.

14

### 1. *20 U.S.C. § 1087e(h) Does Not "Combin[e]" With The Attorney General's Settlement Authority To Authorize The Settlement.*

Implicitly recognizing that its theory below cannot succeed—*i.e.*, that the HEA alone authorizes this Settlement—the Department now surfaces (at 31-34) the theory that the Attorney General's settlement authority "combine[s]" with the Secretary's "substantive authority" under 20 U.S.C. § 1087e(h) to justify the Settlement. For starters, the Department's new theory is waived. *See Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1087 n.6 (9th Cir. 2003); 2-ER-276-77 (citing only 20 U.S.C. § 1082(a)(6) as the "explicit authority" for the Settlement and failing to invoke section 1087e(h)); 2-ER-327 (similar). Plaintiffs likewise have never invoked section 1087e(h). *See, e.g.*, 2-ER-325-26.

The argument also fails on the merits. In the government's apparent view, USB.32-34, the Attorney General's settlement authority permits him to discard binding "administrative procedures" if the Secretary has "substantive authority to grant borrower-defense applications." But the "substantive authority" here is not to award "discharges and refunds" at the Secretary's whim. USB.31. It is to specify "in regulations which acts or omissions" of a school may trigger relief. 20 U.S.C. § 1087e(h). Here, the Secretary failed to do so. Instead, for Exhibit C schools, he used a secret settlement process (not "regulations") to specify that unproven *allegations* (not "acts or omissions") constitute a "defense to repayment" that

15

triggers discharges and refunds. For Subclasses 2 and 3, the Secretary established—outside of "regulations"—two new adjudicatory schemes that expressly and substantively alter the "acts or omissions" that qualify for borrower defense. The Department's brief nowhere quotes section 1087e(h)'s text, and its theory requires describing the authority section 1087e(h) grants at a level of generality that renders that text meaningless. The government's concession (at 31) that the Attorney General's "settlement authority may not be used to require an agency to take substantive action that exceeds its statutory power" therefore resolves this case.

Regardless, the government is wrong to suggest that the Attorney General's settlement authority is "bounded" only by "the Secretary's *substantive* authority." USB.32-33 (emphasis added). The Fourth Circuit squarely rejected this argument, holding that "procedures" applicable to a settling agency also constrain the Attorney General's settlement authority. *Exec. Bus. Media, Inc. v. U.S. Dep't of Def.*, 3 F.3d 759, 764 (4th Cir. 1993). This Court has "adopt[ed] the reasoning of the Fourth Circuit in *Executive Business*." *United States v. Carpenter*, 526 F.3d 1237, 1242 (9th Cir. 2008). The Department of Justice's Office of Legal Counsel, too, has explained that "notice and comment requirements" constrain the Attorney General's settlement authority. *Authority of the United States to Enter Settlements Limiting the Future Exercise of Executive Branch Discretion* ("*Authority of the United States*"), 23 Op. O.L.C. 126, 167 (1999); *see id.* at 136 (approvingly citing *Executive*

16

*Business*). Just so here: The Secretary may authorize borrower-defense relief only through regulations, and the Department must follow those regulations once promulgated.

### 2. *20 U.S.C. § 1082(a)(6) Does Not Authorize The Settlement.*

The Department next invokes (at 34) the Secretary's "separate authority to compromise claims pursuant to 20 U.S.C. § 1082(a)(6)." That theory fares no better. AOB.25-37.

*First*, by its terms section 1082(a)(6) reaches only FFEL Loans, while the Settlement largely covers Direct Loans. AOB.27. The Department argues (at 32, 34-35) that section 1087(e)(1) saves the Settlement because it specifies Direct Loans "shall have the same terms, conditions, and benefits" as FFEL loans, and the "Secretary's authority … is naturally construed as both a 'term[]' and 'condition[]' … because it necessarily affects the terms and conditions governing repayment." But that is nonsense. If the Secretary's authority "affects" the terms and conditions of a loan, it is not itself a term and condition; it stands outside the loan. There is nothing "natural[]" about conflating the "functions, powers, and duties" of a Cabinet Secretary, 20 U.S.C. § 1082(a)(6), with the "terms" and "conditions" of a loan. The Department nods (at 35) to the "plain meaning" of these terms but then fails entirely to analyze their common definitions. AOB.28; States' Br. 7.

17

The Department also contends (at 35) that without incorporation of section 1082(a)(6), the Secretary lacks "functions, powers, or duties" over Direct Loans, such as the "power to sue or be sued." But Part D provides the Secretary with many powers and duties related to Direct Loans, AOB.36, the United States does not need specific statutory authority to sue in contract cases, *Dugan v. United States*, 16 U.S. (3 Wheat.) 172 (1818), and the APA authorizes suit against the Department, 5 U.S.C. § 702.

The Department invokes "congressional intent" that Direct Loans would "eventually replace" FFEL Loans. USB.35. Even if "intent" could control over text, *but see Azar v. Allina Health Servs.*, 139 S.Ct. 1804, 1814 (2019), the Department cites no evidence of *congressional* intent. It merely quotes the district court opinion, which in turn cites the Department's notices of proposed rulemaking, none of which supports the supposed "congressional intent." *See* USB.35 (citing 1-ER-36, which cites 59 Fed. Reg. 42,646, 42,649 (Aug. 18, 1994); 81 Fed. Reg. 39,330, 39,368, 39,379 (June 16, 2016)).

*Second*, if section 1082(a)'s provisions are interpreted (wrongly) as "terms, conditions, and benefits" of Direct Loans, then section 1082(a)(2) barred the Final Judgment's injunctive relief. AOB.30. The Department relegates this dispositive issue to a footnote, contending that section 1082(a)(2) merely "protect[s] the agency" and can be waived. USB.32 n.3. On the contrary, section 1082(a)(2) grants

"jurisdiction," while providing that "no … injunction … or other similar process … shall be issued against the Secretary." The statute thus limits courts' jurisdiction to entertain injunctive relief, and an agency's purported waiver cannot "confer subject-matter jurisdiction upon a federal court," *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).[7]

*Third*, even if section 1082(a)(6) applies to Direct Loans, it cannot be read to grant the Secretary *en masse* cancellation authority. AOB.31-36. The Department claims (at 36) that the Schools fail "to explain how the authority to 'compromise … any … claim' does not at least encompass the power" of mass cancellation. But the explanation is simple, AOB.32: the "General powers" listed in section 1082(a)(6) are linked to the Secretary's "performance of … the functions, powers, and duties, vested in him by … part [B of the HEA]," and Part B carefully delimits the power and circumstances for loan cancellation. It is the Department that ignores the statute's full text, failing to address both the phrase "[i]n the performance of" and the HEA's finely wrought provisions specifying the Secretary's powers, functions,

---

[7] *Springfield Hospital, Inc. v. Guzman*, 28 F.4th 403 (2d Cir. 2022), did not hold that a court can ignore the statutory bar and proceed to grant substantive relief. *Springfield* held only that when a statute strips jurisdiction, no "strict order of operations" dictates a jurisdictional or merits-based dismissal. *Id.* at 416.

19

and duties.[8]  In short, the HEA "authorizes the Secretary to cancel or reduce loans,

*but only in certain limited circumstances and to a particular extent*," and authorizing

*en masse* cancellation would require "rewrit[ing] that statute from the ground up."

*Nebraska*, 143 S.Ct. at 2363, 2368 (emphasis added).  Appellees argue that *Nebraska*

did not reach the HEA, USB.36; PB.46-47, but cannot explain away these clear

statements.

### 3. *The Secretary Ignores The Restrictions On Individualized Compromises Of Debt.*

Without supportive statutory text, Appellees hit the slippery slope, theorizing

that if the Department cannot enter *this* Settlement, it cannot settle individual cases.

USB.33-34; PB.23-24.  Not so.  Settlement of an individual case raises none of the

major-questions concerns presented here.  *See* AOB.26-27.  Unlike case-by-case

settlement, *en masse* cancellation via settlement raises the specter that "the exercise

of the Attorney General's settlement authority" could "become a dispensing power"

inconsistent with "the President's constitutional obligation to 'take Care that the

Laws be faithfully executed.'"  *Authority of the United States*, 23 Op. O.L.C. at 137-

---

[8]  The Department suggests that the specific loan-cancellation authorizations merely mean that the Secretary cannot use his blanket cancellation authority to cancel loans for borrowers addressed in those provisions.  USB.37.  If that were how the statute worked, one would expect the specific authorizations to read as exceptions to the general power—and they do not.  Even on that reading, the Secretary must exclude borrowers addressed by the specific HEA provisions from the Settlement—something he has not done.

38. Thus, the government itself has conceded it cannot engage in "mass settlements … 'regardless of the merit of those claims'" if the law requires case-by-case adjudication. *Am. Hosp. Ass'n v. Price*, 867 F.3d 160, 167 (D.C. Cir. 2017). Here, the borrower-defense regulations require precisely that.

Moreover, the Department tellingly avoids citing its own regulation barring the Secretary from "compromis[ing], or suspend[ing] or terminat[ing] collection of, a debt … [i]nvolving fraud." 34 C.F.R. § 30.70(h)(2). Borrower-defense cases often involve allegations of fraud, and such cases are thus ineligible for compromise. The regulation also requires the Secretary to first determine if there has been a "presentation of a false claim, or misrepresentation on the part of the debtor." *Id.* Thus, if the Secretary has the authority to compromise a specific borrower-defense claim, he must first make an individualized determination that the debtor has not presented a false claim or made a misrepresentation in his borrower-defense application. The Settlement violates that requirement by granting relief to Subclass 1 based only on "alleged" misconduct, 3-ER-573-74, and to Subclass 2 even if the debtor's allegations are, in fact, false, 3-ER-585.

> **B.      The Department Fails To Show That The Settlement Accords With Administrative Law Principles.**

The Settlement violates administrative law principles and the APA.

**1.**      The Department contends (at 18, 29-30) the Schools lack a "cause of action" to assert "APA [c]laims" and fall outside the statutory "zone of interests."

21

But the issue "whether a federal statute creates a claim for relief" "can be forfeited," *Bauer v. Marmara*, 774 F.3d 1026, 1029 (D.C. Cir. 2014), as can a "zone of interests" argument, *Laub*, 342 F.3d at 1087 n.6. Here, the Department forfeited those arguments by failing to raise them below.

Regardless, the Department's new argument rests on the false premise that the Schools have filed "APA [c]laims." USB.29-30. The Schools *objected* to the Settlement, and they need not have "enforceable rights" to object. *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006); *see Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 530-34, 539 (1972) (allowing union members to intervene in suit to set aside union election even though Secretary of Labor had exclusive authority to maintain suit). "[W]hether the applicable law assigns the prospective intervenor a cause of action" is irrelevant. *Jones v. Prince George's Cnty.*, 348 F.3d 1014, 1017-18 (D.C. Cir. 2003).

The Schools are also in the HEA's "zone of interests." It is the *Schools'* alleged "acts or omissions" that give rise to borrower-defense claims, 20 U.S.C. § 1087e(h), and the regulations address both borrowers and schools in a reticulated scheme. The regulations help *schools* avoid the "burde[n]" of defending "unjustified claims," 84 Fed. Reg. at 49,825, and "ensure that institutions are afforded a full and fair opportunity to defend themselves," 82 Fed. Reg. 6253, 6254 (Jan. 19, 2017). If the Department promulgated a borrower-defense rule that replicated the Settlement,

22

schools could challenge that rule under the APA. Nothing changes merely because the Department acted via settlement.

**2.**     The Settlement is unlawful because the Department failed to undertake notice-and-comment procedures and because its terms are arbitrary and capricious. Appellees offer no convincing response.

**a.**     Appellees argue the Settlement is "not a rule," USB.38; PB.24-25, but that is wrong. A rule is any "agency statement of general or particular applicability and future effect." 5 U.S.C. § 551(4). The Department concedes the Settlement is a "framework for comprehensively" resolving borrower-defense claims, USB.9, covering more than a half-million borrowers and 4,000 schools. General (and certainly, particular) applicability is beyond dispute.

As for "prospective effect," the Department admits the Settlement changes the "regulatory procedures" "applicable" to the claims of more than 200,000 borrowers "who submitted borrower-defense applications *after* the settlement's execution." USB.10 (emphasis added). The Decision Group also has prospective effect because it specifies standards for the exercise of agency discretion in future adjudications. *See Sugar Cane Growers Co-op. of Fla. v. Veneman*, 289 F.3d 89, 95-96 (D.C. Cir. 2002) (agency action had future effect because it "set forth … procedures" that affected participants in "*future* years").

23

Appellees offer no meaningful response to *Portland General Electric Co. v. Bonneville Power Administration*, 501 F.3d 1009, 1032 (9th Cir. 2007), which confirms that an agency cannot avoid rulemaking requirements merely by "calling its actions" a "'settlement.'" AOB.38-43. The Department addresses *Portland General* by renewing its substance-procedure distinction. USB.40. But *Portland General rejected* that distinction, holding that an agency could not discard a procedure for determining subsidy eligibility through a settlement and outside of rulemaking. 501 F.3d at 1035-36. Nevertheless, this Settlement *does* achieve an unauthorized substantive result by cancelling debt under new standards. *See supra* 15-16; AOB.9-12.

Plaintiffs argue (at 24-25) that *Portland General* "involved an explicit statutory restriction on an agency's authority to enter into and settle certain types of contracts," but the HEA also contains explicit restrictions on the Secretary's authority to compromise loans and cancel debt, *see supra* 17-21; AOB.31-36. Indeed, the Department's recent negotiated rulemaking amounts to a concession that the very same authority exercised in this case "*must* go through a negotiated rulemaking process." Dkt. 45-1, No. 23-15049. The Department ignores this point, and contrary to Plaintiffs' assertion (at 24 n.6), the rulemaking clearly "bear[s] on this case": It confirms that, at most, the Secretary can achieve the Settlement's promised relief only through rulemaking.

**b.** The Department also fails to rebut the Schools' showing that the Settlement is arbitrary and capricious. AOB.44-46.

The Department (at 40) contends that arbitrary-and-capricious challenges to the Settlement are not cognizable. But Attorney General "settlements are not inherently immune from APA review," and they "must conform" not only to "substantive" law but also the "*procedural* requirements that the APA imposes upon agency action outside the settlement context." *Authority of the United States*, 23 Op. O.L.C. at 164 (emphasis added). The APA's directive that agency action "be reasonable and reasonably explained" is such a requirement. *FCC v. Prometheus Radio Project*, 141 S.Ct. 1150, 1158 (2021).[9]

Here, the government hardly defends Exhibit C on its own terms. The government instead asks for heightened deference, but judged under even the most deferential standard the government's explanation is inadequate. The government cited *no* evidence to support its inclusion of 151 institutions on Exhibit C. The government falls back (at 41-42) on its broad assertion of "credibly alleged" or "proven" misconduct, but merely restating a disputed and unsupported conclusion is

---

[9] *Carpenter* did not purport to enumerate exhaustively the grounds on which courts may invalidate government settlements. 526 F.3d at 1241. The Department offers no reason to treat APA arbitrary-and-capricious challenges differently than challenges based on any other statutory directive.

not an explanation; it is *ipse dixit*. Tellingly, even now the government musters no response to the ample evidence cutting against its determinations. *See* AOB.45-46.

Whether the government wisely settled this litigation "as a general matter," USB.41, is not the issue here. The agency action under review is the Settlement, so *the Settlement itself* must be reasonable and reasonably explained. The government has never justified the Schools' inclusion on Exhibit C. And the Settlement is a strikingly poor way to advance the only "general" objective the government has acknowledged—the need to clear a claims backlog. The Settlement *added* far more borrower-defense claims than it cleared: 250,000 Post-Class claims, 2-ER-58, versus 160,000 pending claims when this case began, 4-ER-835.

## IV. THE FINAL APPROVAL VIOLATED RULE 23.

For the first time on appeal, Appellees argue that because the Schools are not class members, they cannot challenge the Settlement under Rule 23. USB.46; PB.49. Even if Appellees had not forfeited this argument, it is wrong. Rule 23 "contemplates allowing only class members to object to settlement proposals," but that means only that "[i]nterjection of the opposing views of non-class members should proceed via intervention under Rule 24." *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989). That is what occurred here. Moreover, under a "recognized exception," non-settling defendants may object if, as here, they will suffer "formal legal prejudice as a result of the settlement," as when a settlement "would eliminate

26

its right to assert a[] … defense." *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 583 (9th Cir. 1987); *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 999-1001 (9th Cir. 2005). Additionally, courts have a "duty to look after the interests of … absent class members," *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015), so this Court may *sua sponte* enforce Rule 23 requirements that protect absentees. *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 729-30 (3d Cir. 2001) ("[I]t would be preposterous to hold that … we would have no power to review … an inappropriate and outrageous award in the absence of an objector"); *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 358 (3d Cir. 2010) (Weis, J., concurring and dissenting) (collecting cases).

### A. The District Court Violated Rule 23(b)(2).

Rule 23(b)(2) permits certification "only when a single injunction or declaratory judgment would provide relief to each member of the class" and "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360-61 (2011). Plaintiffs do not dispute there is "no basis for exempting settlements from the rule announced in *Dukes*." *W. Morgan-E. Lawrence Water & Sewer Auth. v. 3M Co.*, 737 F.App'x 457, 468 (11th Cir. 2018) (per curiam).[10] The

---

[10] Plaintiffs suggest that settlements can provide broader relief than trials, PB.52 n.23, but "Rule 23's requirements 'demand undiluted, even heightened, attention in the settlement context,'" AOB.49 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

Settlement violates this rule by: (1) awarding individualized monetary relief to each subclass; (2) releasing class members' monetary claims; and (3) providing multivariate relief that could not be realized through a single class-wide injunction. Plaintiffs fail to rebut these points.

*First*, Plaintiffs deem the Settlement's monetary relief "incidental." PB.50-51. But the *whole point* of a borrower-defense claim is monetary relief, in the form of cancelled debt, refunds, or both. Regardless, the notion that "incidental" monetary relief is available in a 23(b)(2) action "has been called into doubt by the Supreme Court." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986-87 (9th Cir. 2011). If Rule 23(b)(2) "authorize[s] the class certification of monetary claims at all," *Dukes*, 564 U.S. at 360, the "relevant inquiry is what procedural safeguards are required by the Due Process Clause," which turns on whether the relief requires individualized determinations, *Ellis*, 657 F.3d at 986-87. Accordingly, some cases have approved non-individualized monetary relief in a Rule 23(b)(2) action if the relief "requir[es] only a mechanical computation." *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 825 (7th Cir. 2011); *see Fowler v. Guerin*, 899 F.3d 1112, 1120 (9th Cir. 2018) (single "injunction" ordering state officials "to apply a single formula"). But this case presents no such "mechanical computation." The Settlement creates a triad of complex adjudicative systems—each benefitting only a subclass—and goes far beyond a single "'indivisible injunction benefitting all … members [of the class]

28

at once.'" *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 559 (C.D. Cal. 2012) (quoting *Dukes*, 564 U.S. at 362).

Even for the "Automatic Relief Group," there is no prospect of mechanically calculating amounts due using a single formula. The Settlement establishes a system in which the damages depend on individual facts about borrowers' payment histories and whether their debts qualify as "Relevant Loan Debt." 3-ER-581. Such case-specific determinations are impermissible under Rule 23(b)(2). *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 330 (4th Cir. 2006). And for Subclasses 2 and 3, the Settlement creates intricate adjudicatory processes that distribute individualized monetary awards based on each application's merits. This system of mini-trials "would merely lay an evidentiary foundation for subsequent determinations of liability," rendering the case "unsuitable for Rule 23(b)(2) treatment." *Randall*, 637 F.3d at 825-26; *see Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 530-31 (D.C. Cir. 2006). This is a textbook "case in which 'the relief sought would merely initiate a process through which highly individualized determinations of liability and remedy are made.'" PB.51.[11]

---

[11] Plaintiffs argue the Settlement relief is permissible because they requested a show-cause order. PB.52-53. But the Settlement does not obligate the Department to show cause on each class member's borrower-defense application—it requires the Department to establish new extra-legal programs to adjudicate borrower-defense claims.

*Second*, Plaintiffs defend the waiver and release in the Settlement by contending it bars only non-monetary claims asserted in this litigation. PB.53. But, as explained, the claims morphed into claims for individualized monetary damages—which is why Plaintiffs are getting monetary relief. By releasing "any and all claims" for "monetary relief, including but not limited to damages" and "debt relief," 3-ER-597, the Settlement violates due process and the Seventh Amendment. AOB.49, 52.

### B. The Settlement Destroyed Commonality, Typicality, And Adequate Representation.

Plaintiffs cannot show they still satisfy Rule 23's commonality, typicality, and adequacy-of-representation requirements.

*First*, Plaintiffs repeat the district court's assertion that commonality exists because "'[a]ll class members remain subject to the same delay and allegedly unlawful policies.'" PB.54 (quoting 1-ER-48). But the uncontradicted record establishes the Department has ended the alleged "policy of delay" and rescinded all "form denial" notices. 3-ER-541-43 ¶¶ 7-9. Plaintiffs argue it is irrelevant that the Department has processed thousands of claims because "[t]hose individuals whose applications were lawfully adjudicated" are "not class members." PB.54. This misses the point. Even if individuals with adjudicated claims dropped from the class, everyone still *in* the class was no longer subject to those policies. And "[i]f there is no evidence that the entire class was subject to the same [unlawful] practice, there is

no question common to the class." *Davidson v. O'Reilly Auto Enters., LLC*, 968 F.3d 955, 967 (9th Cir. 2020) (second alteration in original).

*Second*, Plaintiffs note that typicality can exist when the representatives' claims did not arise from the same "specific facts" as the absentees. PB.55. Again, Plaintiffs miss the point: at the time of Settlement, no named Plaintiff was subject to the policy of delay, and three were forced to rely on an entirely different claim—that their alleged "form denials" were arbitrary and capricious. AOB.54.

*Third*, on adequacy of representation, Plaintiffs claim the Settlement did not require a "tradeoff between relief for the automatic discharge group and the decision group" because the Department was "only able to provide relief to the decision group because of the relief provided to the automatic discharge group." PB.55 (quotation marks omitted). But that is just another way of saying there were tradeoffs among subclasses. Thus, the court needed to "do away with the distinction between the reimbursement group and the residual group[s]" or "divide the groups into subclasses that would be certified separately." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 189 (3d Cir. 2012).

### C. The Inclusion Of Uninjured Class Members Renders The Certified Class Overbroad.

"Every class member must have Article III standing in order to recover individual damages." *TransUnion*, 141 S.Ct. at 2208. The Settlement violates this rule because it grants relief to individuals (1) who filed a borrower-defense

31

application *after* borrower-defense adjudications had resumed, and (2) who, *by definition*, are ineligible for borrower-defense relief. AOB.55-57.

Plaintiffs attempt to solve the first problem by claiming the alleged policy of non-adjudication created a "backlog" that affects applicants who applied even after adjudications resume. PB.56. But Plaintiffs cite no evidence that such applicants will suffer delay because of those policies. *See Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 10-11 (D.D.C. 2022) (visa applicants lacked standing because they failed to show that interview priority "policy actually has had any impact on consulates' scheduling or availability of interviews"). At the time of the Settlement, the Department was rapidly resolving tens of thousands of applications. 3-ER-543 ¶ 12. Moreover, the Settlement caused the number of applications to balloon, 2-ER-58; 4-ER-835, so any recent delays could stem from *the Settlement itself*, not the challenged policies.

As to the second problem, Plaintiffs argue it does not matter that "some class members might ultimately be found ineligible." PB.56. But this is not a question of "ultimate[]" eligibility; the Settlement's Subclass definitions provide that these applicants are ineligible for BD relief from the outset, AOB.56-57—and therefore were uninjured and lack standing.

32

**D.    The Settlement Binds Individuals Outside The Class.**

The Settlement provides relief to—and binds as "Plaintiffs"—approximately 206,000 "Post-Class Applicants" who submitted BD applications after the Execution Date but before the Final Approval Date.  AOB.57-59.  By compromising claims of absentees who were never certified as a class, the Settlement violates Rule 23 and due process.  Plaintiffs now argue that these individuals are not "post-class" after all because the original certification order had no cut-off date for class membership.  PB.57.  But their counsel told the district court the opposite—that "post-class applicant[s]" "are *not* includ[ed] … in the settlement class."  Dkt. 15-2, Supp.A.185:16-19, No. 23-15049 (emphasis added).  Plaintiffs were right before: The Settlement *did* set a cut-off date and *that* was the class definition approved in the Final Judgment.  AOB.58 n.10; 3-ER-582 § III.D ("The Class is closed as of the Execution Date.").  The class definition that controls is the one the district court adopted in the Order Granting Final Settlement Approval and the Final Judgment, which superseded the original class certification order's definition.  *See Glens Falls Ins. Co. v. Satree*, 320 F.2d 92, 95 (9th Cir. 1963); *Salimi v. BMW Fin. Servs. NA, LLC*, 2017 WL 4570367, at *7 (N.D. Cal. Sept. 29, 2017) (holding that class definition in settlement supersedes prior definition).

Moreover, if the original class certification order's definition *were* controlling, the class would exclude borrowers who were issued "form denials."  The

original definition was restricted to applicants "whose borrower defense has not been granted or denied on the merits." 4-ER-812. The Settlement amended this definition to include borrowers who were issued form denials. 3-ER-581-82 § III.B. Accordingly, even judged by the original certification order, the Settlement violates Rule 23 and due process by awarding relief to—and binding—persons not in any certified class. *See Hansberry v. Lee*, 311 U.S. 32, 43-44 (1940); Fed. R. Civ. P. 23(a)(4), (e)(2).

## V. THE SETTLEMENT VIOLATES DUE PROCESS.

The Settlement violates constitutional due process by impairing the Schools' reputational liberty interests and property rights in Title IV funds without *any* process. AOB.59-66. Appellees' responses fail.

**A. Deprivation Of Liberty Interests.** Plaintiffs (at 29-36) and the Department (at 21-28) assert that the Schools have not suffered "stigma," but as explained they are wrong, *supra* 3-5. Exhibit C attaches (to use Plaintiffs' words) the "stigma" of the "industry's bad behavior" to the Schools. 4-ER-850. Exhibit C was *designed* to stigmatize listed schools.

The Department argues (at 43) that the "plus" factor needed for a liberty interest is missing because the Settlement does not actually "resolve borrower-defense claims against [the Schools]." That is an empty distinction. The Settlement grants full, automatic relief for every borrower-defense claim pending against the

34

Schools—even for borrowers who requested relief only "in part." 34 C.F.R. § 685.206(c)(1)(i). Had the Department actually adjudicated these claims, the Schools could have created a decisional record, received a reasoned decision, and rebutted unmeritorious claims before facing a recoupment proceeding or other regulatory consequences. And the Department never denies that it may now consider the Settlement "when determining whether to pursue personal liability" against school officials, AOB.13-14, impairing schools' efforts to recruit and retain officers and directors.

**B. Deprivation Of Property Interests.** Appellees never dispute (USB.44; PB.37) that the Schools have "a property interest in retaining the [Title IV] funds in [their] accounts." *Chauffeur's Training Sch., Inc. v. Riley*, 967 F. Supp. 719, 729 (N.D.N.Y. 1997). Nor do Appellees dispute that the Settlement revives time-barred claims, rendering vested property interests contingent. AOB.64.

Although the Department insists the Settlement is not a "predicate" to recoupment, the Department refuses to rule out "future remedial action" against Schools for the settled borrower-defense claims. USB.44. In other litigation, the Department stated that "[a]ny recoupment proceedings against the schools that intervened in *Sweet*" could "be based on separate decisions that the standard for borrower defense is met." Reply ISO Mot. to Dismiss at 10 n.4, *DeVry Univ., Inc. v. U.S. Dep't of Educ.*, No. 22-cv-5549 (N.D. Ill. Mar. 3, 2023), Dkt. 25. Thus, the

Department threatens to "adjudicate" no-longer-pending borrower-defense claims to justify relief already awarded based on a "determination" of misconduct already announced. The prejudice to Schools is clear.

**C. Lack Of Constitutionally Adequate Process.** Given the Schools' protected interests, the Settlement violates due process: Exhibit C publicly brands the Schools wrongdoers without any process. AOB.64-66. At minimum, the Schools should be removed from the Settlement.

Appellees suggest the Schools will receive due process in future recoupment proceedings. PB.37; USB.44. But given the Secretary's announcement of "substantial misconduct," it is fanciful to suggest that a subsequent proceeding would provide the Schools a full and fair process. Moreover, the fact that the Settlement purportedly preserves due process in Step Two does not cure the elimination of the Schools' due process in Step One. *See* AOB.65-66. In adopting the 2019 borrower-defense rules, the Department repeatedly acknowledged schools' due process rights in Step One. *See* 84 Fed. Reg. at 49,805, 49,812, 49,827.[12]

## VI. THE SCHOOLS HAD A RIGHT TO INTERVENE.

The Schools have "significant protectable" interests justifying intervention of right. The interest required for intervention is merely one "protectable under some

---

[12] NCLC speculates (at 22) that the 2019 rules do not apply to most class members, but denying the Schools due process for even part of the class would be unlawful.

36

law," *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011), and the law under which an intervenor claims an interest need not even "give the proposed intervenors any enforceable rights," *Lockyer*, 450 F.3d at 441. The Schools' interests under the borrower-defense regulations and the Due Process Clause meet that standard. *Cf. Donaldson v. United States*, 400 U.S. 517, 530 (1971) (prospective intervenor had "no proprietary interest of any kind" in the "routine business records" of his former employer).

Appellees contend that permissive intervention gave the Schools "everything they purported to seek." PB.45; *see* USB.50. Not so. The Schools could not file claims or assert defenses, take discovery, move to decertify the class, or participate in settlement negotiations, among other party actions. The Department argues that the denial of intervention was harmless because settlement negotiations were already concluded, USB.50, but if the Settlement is rejected—as it should be—and the parties resume negotiations, the Schools once again would be shut out while their property interests are negotiated away.

The Schools represented they could *object* to the Settlement without discovery, given the district court's ultimatum that it would not otherwise entertain objections at all. *See* USB.50. But the Schools made no representation about their roles in the case if the Settlement were rejected. If this case is remanded for litigation, the Schools reserve the right to participate as parties.

37

## CONCLUSION

The judgment should be reversed, and the case dismissed.

Dated: September 22, 2023

Respectfully submitted,

/s/ Jesse Panuccio
Jesse Panuccio
Jason Hilborn
BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd., Ste. 1200
Fort Lauderdale, FL 33301
(954) 356-0011
jpanuccio@bsfllp.com

*Counsel for Everglades College, Inc.*

/s/ John S. Moran
John S. Moran
MCGUIREWOODS LLP
888 16th St. N.W., Suite 500
Black Lives Matter Plaza
Washington, D.C. 20006
(202) 828-2817
jmoran@mcguirewoods.com

Piper A. Waldron
MCGUIREWOODS LLP
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
(310) 315-8250

*Counsel for American National University*

/s/ Lucas C. Townsend
Lucas C. Townsend
Jeffrey Liu
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 887-3731
LTownsend@gibsondunn.com

James L. Zelenay, Jr.
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7449

Katherine Worden
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105
(415) 393-8229

*Counsel for Lincoln Educational Services Corp.*

## CERTIFICATE OF COMPLIANCE

I certify that under Federal Rule of Appellate Procedure 32(a)(7)(B) and Ninth Circuit Rule 32-2(b), this joint brief submitted by separately represented parties is proportionately spaced, has a typeface of 14 points, and contains 8,400 words, excluding the portions excepted by Federal Rule of Appellate Procedure 32(f), according to the word-count feature of Microsoft Word used to generate this brief.

Date: September 22, 2023

/s/     *Lucas C. Townsend*
Lucas C. Townsend

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of September 2023, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the Court's CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Date: September 22, 2023                                   */s/     Lucas C. Townsend*
                                                                                Lucas C. Townsend