**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| THERESA SWEET; CHENELLE ARCHIBALD; DANIEL DEEGAN; SAMUEL HOOD; TRESA APODACA; ALICIA DAVIS; JESSICA JACOBSON, on behalf of themselves and all others similarly situated, | No. 23-15049 <br><br> D.C. No. 3:19-cv-03674-WHA |
| *Plaintiffs-Appellees*, | |
| EVERGLADES COLLEGE, INC., | OPINION |
| *Intervenor-Appellant*, | |
| v. | |
| MIGUEL A. CARDONA, Secretary of the United States Department of Education; U.S. DEPARTMENT OF EDUCATION, | |
| *Defendants-Appellees*, | |
| LINCOLN EDUCATIONAL SERVICES CORPORATION; AMERICAN NATIONAL | |

2          SWEET V. EVERGLADES COLLEGE, INC.

UNIVERSITY; CHICAGO SCHOOL
OF PROFESSIONAL
PSYCHOLOGY,

*Intervenors*.

THERESA SWEET; CHENELLE
ARCHIBALD; DANIEL DEEGAN;
SAMUEL HOOD; TRESA
APODACA; ALICIA DAVIS;
JESSICA JACOBSON, on behalf of
themselves and all others similarly
situated,

*Plaintiffs-Appellees*,

v.

LINCOLN EDUCATIONAL
SERVICES CORPORATION,

*Intervenor-Appellant*,

v.

MIGUEL A. CARDONA, Secretary
of the United States Department of
Education; U.S. DEPARTMENT OF
EDUCATION,

*Defendants-Appellees*,

No. 23-15050

D.C. No. 3:19-cv-
03674-WHA

-----------------------------

EVERGLADES COLLEGE, INC.;
AMERICAN NATIONAL
UNIVERSITY; CHICAGO SCHOOL
OF PROFESSIONAL
PSYCHOLOGY,

          *Intervenors*.

THERESA SWEET; CHENELLE
ARCHIBALD; DANIEL DEEGAN;
SAMUEL HOOD; TRESA
APODACA; ALICIA DAVIS;
JESSICA JACOBSON, on behalf of
themselves and all others similarly
situated,

          *Plaintiffs-Appellees*,

  v.

AMERICAN NATIONAL
UNIVERSITY,

          *Intervenor-Appellant*,

  v.

No. 23-15051

D.C. No. 3:19-cv-
    03674-WHA

4  SWEET V. EVERGLADES COLLEGE, INC.

 MIGUEL A. CARDONA, Secretary
of the United States Department of
Education; U.S. DEPARTMENT OF
EDUCATION,

*Defendants-Appellees*,

------------------------------

EVERGLADES COLLEGE, INC.;
LINCOLN EDUCATIONAL
SERVICES CORPORATION;
CHICAGO SCHOOL OF
PROFESSIONAL PSYCHOLOGY,

*Intervenors*.

Appeal from the United States District Court
for the Northern District of California
William Alsup, District Judge, Presiding

Argued and Submitted December 5, 2023
San Francisco, California

Filed November 5, 2024

Before:  Daniel P. Collins, Danielle J. Forrest, and Jennifer
Sung, Circuit Judges.

Opinion by Judge Sung;
Dissent by Judge Collins

# SUMMARY[*]

## Standing / Mootness / Intervention

In an appeal by three intervenor for-profit university organizations ("the Schools") from the district court's final approval of a class action settlement between the United States Department of Education ("the Department") and a class of over 500,000 federal student loan borrowers ("Plaintiffs"), the panel held that (1) the Schools had Article III standing but lacked prudential standing to challenge the final approval of the settlement; (2) the dispute between Plaintiffs and the Department was not moot at the time the district court approved the settlement; and (3) the district court did not err in denying the Schools' motion to intervene as of right.

The settlement resolved Plaintiffs' class action complaint regarding the Department's backlog of hundreds of thousands of unprocessed applications for borrower defense relief. The Schools alleged that the Department's inclusion of the Schools on Exhibit C, a list of schools with strong indicia of substantial misconduct, damaged their reputation.

The panel held that the Schools met their burden to establish Article III standing based on their alleged reputational harm because the Department's statement could cause reputational injury that supports Article III standing and the reputational injury was redressable by a favorable decision. However, because the Schools were not parties to

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the settlement and had not shown that the settlement could cause them formal legal prejudice, the Schools lacked prudential standing to challenge the approval of the final settlement.

The panel held that the dispute between Plaintiffs and the Department was not moot at the time the district court approved the settlement because, even assuming that the Department mooted Plaintiffs' original claims by processing many, but not all, pending applications, that action did not moot Plaintiffs' supplemental claims. And the Department's voluntary cessation of issuing *pro forma* denials of Plaintiffs' supplemental claims did not render the case moot where the Department could easily resume its conduct if the case were dismissed.

The panel held that the district court did not err in denying the Schools' Fed. R. Civ. P. 24(a) motion to intervene as of right because the Schools did not have a significantly protectable interest as required by Rule 24(a), and they failed to explain how they were prejudiced by the district court's denial of intervention as of right.

Dissenting, Judge Collins agreed with the majority that the case was not moot and that the Schools had Article III standing to challenge the settlement. However, he disagreed with the majority's conclusion that the Schools lacked prudential standing, and would hold that the district court did not abuse its discretion in allowing the Schools to permissively intervene for the purpose of objecting to the settlement. Because the district court properly reached the merits of the Schools' objections to the settlement, the Schools have a right to appeal that adverse ruling, and he would hold that the district court erred in approving the settlement.

## COUNSEL

Rebecca C. Ellis (argued), Eileen M. Connor, and Rebecca C. Eisenbrey, Project on Predatory Student Lending, Jamaica Plain, Massachusetts; Joseph Jaramillo, Housing & Economic Rights Advocates, Oakland, California; for Plaintiffs-Appellees.

Sean R. Janda (argued), Mark B. Stern, and Joshua M. Salzman, Appellate Staff Attorneys, Civil Division; Marcia Berman, Assistant Director, Federal Programs Branch; Ismail J. Ramsey, United States Attorney; Sarah E. Harrington and Brian D. Netter, Deputy Assistant Attorneys General; United States Department of Justice, Washington, D.C.; Stuart Robinson, Trial Attorney, Civil Division, Federal Programs Branch; Stephanie Hinds, United States Attorney, Office of the United States Attorney; United States Department of Justice, San Francisco, California; Karen Karas, Attorney; Brian Siegel, Assistant General Counsel for Postsecondary Education; John P. Baily, Senior Counsel; Lisa Brown, General Counsel; United States Department of Education, Washington, D.C.; for Defendants-Appellees.

Jesse Panuccio (argued), Boies Schiller & Flexner LLP, Washington, D.C.; Jason H. Hilborn, Boies Schiller & Flexner LLP, Fort Lauderdale, Florida; John Kucera, Boies Schiller & Flexner LLP, Los Angeles, California; Lucas C. Townsend (argued), and Jeffrey Liu, Gibson Dunn & Crutchner LLP, Washington, D.C.; James L. Zelenay Jr., Gibson Dunn & Crutchner LLP, Los Angeles, California; Katherine Worden, Gibson Dunn & Crutchner LLP, San Francisco, California; John S. Moran, McGuireWoods LLP, Washington, D.C.; Piper A. Waldron, McGuireWoods LLP, Los Angeles, California; for Intervenors-Appellants.

Mathura Sridharan and Jana M. Bosch, Deputy Solicitors General; Benjamin M. Flowers, Ohio Solicitor General; Dave Yost, Ohio Attorney General; Office of the Ohio Attorney General, Columbus, Ohio; Melissa Holyoak, Utah Solicitor General; Sean D. Reyes, Utah Attorney General; Office of the Utah Attorney General, Salt Lake City, Utah; Steve Marshall, Alabama Attorney General, Office of the Alabama Attorney General, Montgomery, Alabama; Treg Taylor, Alaska Attorney General, Office of the Alaska Attorney General, Anchorage, Alaska; Tim Griffin, Arkansas Attorney General, Office of the Arkansas Attorney General, Little Rock, Arkansas; Ashley Moody, Florida Attorney General, Office of the Florida Attorney General; Tallahassee, Florida; Christopher M. Carr, Georgia Attorney General, Office of the Georgia Attorney General, Atlanta, Georgia; Raúl R. Labrador, Idaho Attorney General, Office of the Idaho Attorney General; Boise, Idaho; Theodore E. Rokita, Indiana Attorney General, Office of the Indiana Attorney General; Indianapolis, Indiana; Kris Kobach, Kansas Attorney General, Office of the Kansas Attorney General, Topeka, Kansas; Daniel Cameron, Kentucky Attorney General, Office of the Kentucky Attorney General, Frankfort, Kentucky; Jeff Landry, Louisiana Attorney General, Office of the Louisiana Attorney General; Baton Rouge, Louisiana; Lynn Fitch, Mississippi Attorney General, Office of the Mississippi Attorney General, Jackson, Mississippi; Austin Knudsen, Montana Attorney General, Office of the Montana Attorney General, Helena, Montana; Drew H. Wrigley, North Dakota Attorney General, Office of the North Dakota Attorney General, Bismarck, North Dakota; Gentner Drummond, Oklahoma Attorney General, Office of the Oklahoma Attorney General, Oklahoma City, Oklahoma; Alan Wilson, South

Carolina Attorney General, Office of the South Carolina Attorney General, Columbia, South Carolina; Ken Paxton, Texas Attorney General, Office of the Texas Attorney General, Austin, Texas; Patrick Morrisey, West Virginia Attorney General, Office of the West Virginia Attorney General, Charleston, West Virginia; Bridget Hill, Wyoming Attorney General, Office of the Wyoming Attorney General, Cheyenne, Wyoming; for Amici Curiae Ohio, Utah, Alabama, Alaska, Arkansas, Florida, Georgia, Idaho, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Montana, North Dakota, Oklahoma, South Carolina, Texas, West Virginia, and Wyoming.

Neville S. Hedley, Hamilton Lincoln Law Institute, Washington, D.C., for Amicus Curiae Hamilton Lincoln Law Institute.

Shennan Kavanagh and Kyra Taylor, National Consumer Law Center, Boston, Massachusetts, for Amicus Curiae National Consumer Law Center.

Donald L. R. Goodson and Max Sarinsky, Institute for Policy Integrity, New York University School of Law, Wilf Hall, New York, New York, for Amicus Curiae Institute for Policy Integrity at NYU School of Law.

## OPINION

SUNG, Circuit Judge:

Three intervenor for-profit university organizations (American National University, Everglades College, Inc., and Lincoln Educational Services Corp.—collectively, "the Schools") appeal from the district court's final approval of a class action settlement between the United States Department of Education ("the Department") and Plaintiffs, who represent a class of over 500,000 federal loan borrowers. The settlement completely resolves Plaintiffs' class action complaint, originally filed in June 2019, regarding the Department's backlog of hundreds of thousands of unprocessed applications for borrower defense ("BD") relief.

For the reasons stated below, we conclude that the Schools have alleged the minimum constitutional requirements for Article III standing. But because the Schools are not parties to the settlement and have not shown that the settlement will cause them formal legal prejudice, they lack standing to challenge the district court's final approval of the settlement on appeal. We also conclude that the dispute between Plaintiffs and the Department was not moot at the time the district court approved the settlement, and we affirm the district court's denial of the Schools' motion to intervene as of right.

## I. Background

The Student Loan Reform Act of 1993 authorized the Secretary of Education to develop a program for discharging federal educational loan debts based on the wrongful acts or omissions of the schools attended by borrowers. 20 U.S.C.

§§ 1070, 1087e(h); Student Loan Reform Act of 1993, Pub. L. No. 103-66, § 455, 107 Stat. 341, 351. Accordingly, the Secretary established the BD program. William D. Ford Federal Direct Loan Program, 59 Fed. Reg. 61,664, 61,696 (Dec. 1, 1994) (to be codified at 34 C.F.R. pt. 685); *see also* Office of Postsecondary Education, 60 Fed. Reg. 37,768, 37,769 (July 21, 1995). Under the program regulations, when a borrower submits a BD application, the Department engages in factfinding and decides whether and to what extent to grant any repayment relief. 34 C.F.R. §§ 685.222(e), 685.206(e).[1] If the Department approves the application and discharges any of the borrower's debt, the Department may, but is not required to, seek recoupment of funds from the school in a separate adjudicatory proceeding. *Id.* §§ 668.125, 685.308(a)(3); *see also id.* §§ 685.206(c)(3)–(4), 685.222(e)(7).

During the first 20 years of the BD program's existence, few borrowers filed applications for relief. *See* Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, William D. Ford Federal Direct Loan Program, and Teacher Education Assistance for College and Higher Education Grant Program, 81 Fed. Reg. 39,330, 39,330 (June 16, 2016) (to be codified in scattered sections of 34 C.F.R.). In May 2015, however, Corinthian Colleges, Inc., a for-profit

---

[1] The Department has amended the regulations governing the adjudication of BD applications several times, including in 2016 and 2019. As a result, two different versions of the adjudication process are relevant in this appeal. *Compare* 34 C.F.R. § 685.206, *with* 34 C.F.R. § 685.222. The date on which a BD applicant's original federal loan was disbursed determines which version applies. 34 C.F.R. § 685.206(c)–(e). The parties agree that either the 2016 or 2019 versions govern the class members' applications, so we consider both.

educational institution with over 70,000 students across more than 100 campuses, filed for bankruptcy, which caused a "flood" of BD applications. *Id.* In response, the Department announced that it would "develop new regulations to establish a more accessible and consistent borrower defense standard and clarify and streamline the borrower defense process to protect borrowers and improve the Department's ability to hold schools accountable for actions and omissions that result in loan discharges." *Id.* at 39,331.

By the end of 2016, more borrowers from a range of schools had begun to use the BD process, and "the Secretary had approved 31,773 applications for discharge and found 245 ineligible, for a 99.2% grant rate." Still, many thousands of applications remained pending. By June 2018, "borrowers had submitted, in total, 165,880 applications" with "105,998 still to be decided." By June 2019, the backlog had grown to more than 210,000 applications, and the Department had stopped adjudicating any BD applications. *In re U.S. Dep't of Educ.*, 25 F.4th 692, 696 (9th Cir. 2022) ("From June 2018 through December 2019, the Department issued no borrower defense decisions.").

Plaintiffs sued the Department in June 2019, alleging that its failure to adjudicate BD applications violated the Administrative Procedure Act ("APA"). In October 2019, the district court certified a class of "[a]ll people who borrowed a Direct Loan or FFEL loan to pay for a program of higher education, who have asserted a borrower defense to repayment to the U.S. Department of Education, whose borrower defense has not been granted or denied on the merits, and who is not a class member in *Calvillo Manriquez v. DeVos*, No. 17-7106 (N.D. Cal.)."

***First settlement agreement.*** In December 2019, Plaintiffs and the Department cross-moved for summary judgment. But before the district court ruled on the motions, the parties executed their first settlement agreement. In this settlement, the Department agreed to decide all pending BD applications within 18 months. The district court preliminarily approved the settlement in May 2020.

Before final approval, however, the Department began issuing *pro forma* denial notices to a large number of class members, instead of adjudicating the applications on the merits. When Plaintiffs learned about the *pro forma* denials, they notified the district court that the Department was breaching the settlement agreement. The district court conducted an inquiry, and the Department admitted that it had used four templates to deny 89.8% of the 131,800 applications reviewed. At the fairness hearing, several class members expressed "serious concern" with the settlement "in light of the Secretary's recent string of form denials." Because of Plaintiffs' concerns and the class members' objections, the district court denied final approval of the first settlement and ordered discovery to resume. A few months later, Plaintiffs filed a supplemental complaint adding claims that the Department had illegally adopted a "presumption of denial" policy in violation of the APA and the Due Process Clause of the Fifth Amendment.

***Second settlement agreement.*** In June 2022, Plaintiffs again moved for summary judgment. While that motion was pending, the parties requested preliminary approval of a second settlement agreement—the one at issue in this appeal. The settlement divides the class into three groups, described below, for the purposes of relief.

Borrowers in Group One (approximately 196,000 borrowers) get automatic debt forgiveness. Group One consists of borrowers who have pending BD applications associated with any of 151 schools on a list attached as Exhibit C to the settlement. The settlement agreement does not explain how Exhibit C was developed. But the parties' joint motion for preliminary approval of the settlement states: "The Department has determined that attendance at one [of the schools listed in Exhibit C] justifies presumptive relief, for purposes of this settlement, based on strong indicia regarding substantial misconduct by [the] listed schools, whether credibly alleged or in some instances proven, and the high rate of class members with applications related to the listed schools."

Group Two (approximately 100,000 borrowers) consists of borrowers with pending BD applications associated with schools that are not listed in Exhibit C. The Department agreed to resolve Group Two borrowers' claims in a streamlined adjudication process. If the Department does not meet specified deadlines, Group Two borrowers will receive automatic debt relief.

Group Three (approximately 206,000 borrowers) covers borrowers who submitted a BD application after the settlement's execution date but before the date of final approval. The Department may adjudicate Group Three borrowers' applications under the regulations applicable to loans between 2017 and 2020, but it must resolve them within three years. If the Department fails to meet the deadline, Group Three borrowers will receive full relief.

***Intervention by Schools.*** Three weeks after the parties moved for preliminary approval of the second settlement, four schools listed in Exhibit C (including the three Schools

bringing the present appeal) moved to intervene. Plaintiffs and the Department opposed intervention. The district court conducted a hearing where it heard from the prospective intervenors regarding their asserted interests in the litigation and heard from the parties regarding the settlement. At the close of the hearing, the district court preliminarily approved the settlement in a bench ruling. A few weeks later, the district court denied the intervenors' motions to intervene as of right but allowed them to permissively intervene for the sole purpose of objecting to the class action settlement at the final approval fairness hearing.

The Schools submitted written objections to the settlement and were given an opportunity to be heard at the final fairness hearing. The district court rejected the Schools' objections and granted final approval of the settlement.

The Schools timely appealed and moved to stay the judgment pending appeal. The district court, our court, and the Supreme Court all denied the Schools' applications for a stay.

## II. Standing

The Department[2] argues that this appeal should be dismissed because the Schools do not have Article III standing. Additionally, the Department argues that, because the Schools are not parties to the settlement, they have no "cause of action" to challenge the settlement.

Standing analysis "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490,

[2] We have considered both Plaintiffs' and the Department's arguments, but because they are so similar, we refer to "the Department" for simplicity.

498 (1975). "The constitutional requirements are derived from Article III, Section 2, Clause 1 of the United States Constitution, and the prudential limitations are rules of judicial self-governance." *United States v. Mindel*, 80 F.3d 394, 396 (9th Cir. 1996).

"Apart from th[e] minimum constitutional mandate, [the Supreme] Court has recognized other limits on the class of persons who may invoke the courts' decisional and remedial powers." *Warth*, 422 U.S. at 499 (explaining prohibitions on generalized grievances and third-party standing); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (describing the development of a "'prudential' branch of standing, a doctrine not derived from Article III" (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004))); *United States ex rel. Alexander Volkhoff, LLC v. Janssen Pharmaceutica N.V.*, 945 F.3d 1237, 1241 (9th Cir. 2020) ("'The rule that only parties to a lawsuit . . . may appeal an adverse judgment' . . . is sometimes described as 'standing to appeal,' [but] it is distinct from the requirements of constitutional standing." (citation omitted)).

One of these additional limits prevents an entity who is not a party to a settlement from objecting to court approval of the settlement, either before the district court or on appeal. *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 582 (9th Cir. 1987) ("[A] non-settling defendant, in general, lacks standing to object to a partial settlement."). There is only one exception to this general rule: A non-settling entity may challenge a settlement when it "demonstrate[s] that it will sustain some formal legal prejudice as a result of the settlement." *Id.* at 583.

Article III injury does not equal formal legal prejudice. *See United States v. Kovall*, 857 F.3d 1060, 1068 (9th Cir. 2017) ("The fact that a would-be litigant has Article III standing does not guarantee the right to take an appeal."); *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) ("Mere allegations of injury in fact . . . as a result of a settlement simply do not rise to the level of plain legal prejudice."). Thus, a non-settling entity may have Article III standing but nonetheless lack prudential standing to challenge a settlement.**[3]**

## A.

To establish Article III standing, the Schools must show that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and

---

[3] We recognize that it might be better to ask whether a non-settling entity has a "cause of action" to object to the settlement, instead of asking whether the non-settling party has "standing" to object the settlement, as we did in *Waller*. The term "standing" "is a word of many, too many, meanings." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998) (quoting *United States v. Vanness*, 85 F.3d 661, 663 n.2 (D.C. Cir. 1996)). And federal courts use many different terms to refer to a litigant's eligibility to bring a particular claim or appeal when the eligibility requirements stem from a statute or legal doctrine other than Article III. *See, e.g.*, *Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 197 (2017) (pointing out that the terms "prudential standing," "statutory standing," and "cause of action" have all been used to describe the "zone of interests" requirement); *Lexmark*, 572 U.S. at 128 n.4 (explaining that the nomenclature of "statutory standing," "prudential standing," and a "cause of action" have all been used interchangeably to refer to non-Article III limits on standing). Still, because we, and our sister circuits, have predominantly referred to the *Waller* formal-legal-prejudice requirement as a "standing" requirement, we continue to do so here. *See, e.g.*, *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 91 (2d Cir. 2019); *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 31 (D.C. Cir. 2000); *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 998–99 (9th Cir. 2005).

(3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

The Schools allege that their inclusion on Exhibit C has caused them reputational harm. We must first determine whether the alleged reputational harm is concrete enough to constitute "injury in fact." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

"Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including (as relevant here) reputational harm." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021).

The Department argues that, because Exhibit C is not false, misleading, or defamatory, it cannot cause injury that is concrete enough to support Article III standing without other proof of concrete harm. Nothing in the settlement agreement states that the schools listed in Exhibit C engaged in any wrongdoing or that the Department made a finding to that effect. However, the Department and Plaintiffs' joint motion for settlement approval states, "The Department has determined that attendance at one [of the schools listed in Exhibit C] justifies presumptive relief, for purposes of this settlement, based on strong indicia regarding substantial misconduct by [the] listed schools, whether credibly alleged or in some instances proven, and the high rate of class members with applications related to the listed schools." The Schools argue that, because the "speaker" of this statement is the Department, and the Department is their "primary federal regulator," the reputational harm caused by the

statement is sufficiently concrete to constitute Article III injury.

We agree with the Schools that the Department's statement could cause reputational injury that supports Article III standing, even if the statement is not false, misleading, or defamatory. "In looking to whether a plaintiff's asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts, we do not require an exact duplicate." *TransUnion*, 594 U.S. at 433. A non-defamatory statement may cause reputational harm that is concrete enough to confer standing if it is "disparag[ing]" or "impugns the professional integrity" of its subject, *Kennedy v. Warren*, 66 F.4th 1199, 1206 (9th Cir. 2023), or if it "would subject [a person] to hatred, contempt, or ridicule," *TransUnion*, 594 U.S. at 432 (citation omitted). Such statements cause more concrete harm when the government is the speaker, because there is a "unique stigma associated with having a government official label someone a law breaker." *Kennedy*, 66 F.4th at 1206. Thus, even when "we are unsure" that an unretracted government statement actually implies that a person or entity engaged in unlawful conduct, if "any reader . . . might come away with this impression," the resulting reputational injury "is a sufficiently concrete injury for standing purposes." *Id.* Here, an individual who reads the Department's statement about Exhibit C might come away with the impression that schools listed in Exhibit C have engaged in unlawful conduct. Consequently, the Schools' alleged reputational harm is concrete enough to support Article III standing.

The Department also contends that the alleged reputational injury is not redressable by a favorable decision. Reputational injury, however, is redressable if the relief

sought "would remove the unique stigma associated with having a government official label someone a law breaker and thereby cast a shadow over their activities and affiliates." *Id.*; *see also Foretich v. United States*, 351 F.3d 1198, 1213–14 (D.C. Cir. 2003) (explaining that "[c]ase law is clear that where reputational injury derives directly from an unexpired and unretracted government action, that injury satisfies the requirements of Article III standing to challenge that action," but "the 'lingering effects' on reputation of a retracted or repealed government action normally do not furnish a basis for Article III standing"). A reputational injury is redressable by retraction even if retraction would not prevent other public criticism. *Kennedy*, 66 F.4th at 1206; *see also Meese v. Keene*, 481 U.S. 465, 476–77 (1987).

In this case, the alleged reputational harm was caused by the Department's inclusion of the Schools on Exhibit C coupled with its unretracted statement regarding Exhibit C in the joint motion for settlement approval. Because the reputational harm was not caused by the district court's final approval of the settlement, the relief sought by the Schools—reversal or vacatur of that approval—would not necessarily require the Department to redress the Schools' claimed injury. Still, where "a favorable judicial decision would not require the defendant to redress the plaintiff's claimed injury," the plaintiff can demonstrate redressability by "show[ing] that the defendant or a third party are nonetheless likely to provide redress as a result of the decision." *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) (internal citations and quotation marks omitted). Further, there is redressability if the relief sought would "at least partially redress the reputational injury." *Meese*, 481 U.S. at 476. Applying these standards here, we find redressability

because reversal or vacatur would enable and likely cause the Department to retract the statement and file a new motion for settlement approval. Therefore, the Schools have met their burden to establish Article III standing based on their alleged reputational harm.[4]

**B.**

As noted above, a non-settling entity generally lacks prudential standing to object to a settlement—or to challenge on appeal a district court's approval of a settlement, unless the non-settling entity demonstrates that it will "sustain some formal legal prejudice as a result of the settlement." *Waller*, 828 F.2d at 583. "This rule advances the policy of encouraging the voluntary settlement of lawsuits." *Id.* "[T]he interest in encouraging settlements" is particularly strong "in class actions, which are often complex, drawn out proceedings demanding a large share of finite judicial resources." *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993).

Courts have applied this rule to both parties and non-parties, including non-settling defendants, *Smith*, 421 F.3d at 998; *Waller*, 828 F.2d at 582; non-settling third-party defendants, *Melito*, 923 F.3d at 91; opted-out class members, *Mayfield*, 985 F.2d at 1092; and non-class members, *Gould v. Alleco, Inc.*, 883 F.2d at 281, 285 (4th Cir. 1989).

The Department argues that the Schools, as non-settling permissive intervenors, lack standing to challenge the settlement approval on appeal. The Schools argue that the parties have forfeited this issue. Alternatively, the Schools

---

[4] Because we conclude that the Schools have Article III standing based on their alleged reputational injury, we do not reach whether they have standing based on their alleged financial and procedural injuries.

argue that they have demonstrated that the settlement will cause them formal legal prejudice.

**1.**

We first address the Schools' argument that the Department and Plaintiffs forfeited the argument that the Schools lack standing to challenge the district court's final approval of the settlement. We have never decided whether or how a settling party must preserve this issue, and we do not need to do so here, because the parties adequately raised the issue below and on appeal.

Below, the Schools moved to intervene for the purpose of objecting to the parties' proposed settlement agreement. Plaintiffs opposed the intervention motions, arguing that the Schools did not have "standing to block" the settlement's approval. Plaintiffs also repeatedly argued that the Schools should not be permitted to intervene because they do not have "any claims or defenses" at issue in the settlement. The Department similarly opposed the Schools' motions to intervene on the ground that the Schools "lack any concrete interest" in the discretionary settlement, and cited *Gould*, 883 F.2d at 285, for the proposition that "courts usually reject outsiders' attempts to enter the litigation during the settlement phase."[5]

The Department has not abandoned its challenge to the Schools' standing to object to the settlement on appeal. Specifically, the Department argues in its answering brief

---

[5] In *Gould*, the Fourth Circuit held that "non-class members have no standing to object . . . to a proposed class settlement" under Rule 23(e), and it affirmed the district court's denial of the non-class members' motion to intervene as of right under Rule 24 because they lacked sufficient interest in the settlement. 883 F.2d at 284–85.

that the Schools, as intervenors, "fail to identify any cause of action that would permit them to challenge the district court's approval of the settlement." As noted above, courts use the terms "standing" and "cause of action" interchangeably to refer to a particular litigant's eligibility to bring a particular claim or appeal. *See supra* note 3. Although the Department did not cite *Waller*, a party does not have to cite a particular case to adequately raise an issue. *See Nelson v. Adams USA, Inc.*, 529 U.S. 460, 469 (2000) ("[T]his principle [of preserving an issue] does not demand the incantation of particular words; rather, it requires that the lower court be fairly put on notice as to the substance of the issue."); *see also United States v. Williams*, 846 F.3d 303, 311 (9th Cir. 2017) (explaining that a party does not waive or forfeit arguments relating to claims it properly presents to the district court); *Thompson v. Runnells*, 705 F.3d 1089, 1098 (9th Cir. 2013) ("[W]e may consider new legal arguments raised by the parties relating to claims previously raised in the litigation."). And in any event, the Schools apparently understood that the Department's cause-of-action argument invoked the *Waller* rule because they countered in their reply brief, "[U]nder a 'recognized exception,' non-settling defendants may object if, as here, they will suffer 'formal legal prejudice as a result of the settlement,'" quoting *Waller* and citing *Smith*. *See Thompson*, 705 F.3d at 1100 (noting the court did not abuse its discretion in considering a new legal argument that was "fully addressed by both parties" on appeal).

Under these circumstances, the parties have not forfeited their challenge to the Schools' standing to object to the settlement.

**2.**

The Schools, as non-settling intervenors, lack standing to object to the district court's settlement approval unless they demonstrate formal legal prejudice.[6]

Formal legal prejudice "exists only in those rare circumstances when, for example, the settlement agreement *formally* strips a non-settling party of a legal claim or cause of action, such as a cross-claim for contribution or indemnification, invalidates a non-settling party's contract rights, or the right to present relevant evidence at a trial." *Bhatia v. Piedrahita*, 756 F.3d 211, 218 (2d Cir. 2014); *accord Waller*, 828 F.2d at 582–83. It is not enough for a non-settling entity to allege that the settlement "*effectively* strips them of defenses" or claims if nothing in the settlement agreement precludes the non-settling entity "from asserting in the district court or in other litigation any claims or defenses that may be available to them." *Bhatia*, 756 F.3d at 218.

Thus, for example, we held that a non-settling party demonstrated formal legal prejudice where the settlement approval order explicitly stated, "The non-settling parties are permanently barred and enjoined from asserting or

---

[6] For purposes of the *Waller* rule, an intervenor who is not a party to a settlement is like any other non-settling entity. *See, e.g.*, *Waller*, 828 F.2d at 584 (holding that non-settling entity should have been granted intervention as of right but lacked standing to object to settlement); *United States v. Gila Valley Irrigation Dist.*, 345 F. App'x 281, 283 (9th Cir. 2009) (applying *Waller* and holding that a tribal intervenor lacked standing to challenge a district court's order approving a settlement agreement); *Ball ex rel. Burba v. Dewine*, No. 20-3927, 2021 WL 4047032, at *3 (6th Cir. June 30, 2021) (holding that entities that had been granted intervention nonetheless did "not have standing to challenge the settlement agreement on appeal").

continuing to prosecute, either directly or in any other capacity, any and all Claims (as defined in the Settlement Agreement) . . . ." *Smith*, 421 F.3d at 1000. But we held that a non-settling defendant did not demonstrate formal legal prejudice where a settlement bound a settling party to "cooperate" with other settling parties in prosecuting claims against the intervenor but did not require the disclosure of privileged communications. *Waller*, 828 F.2d at 584. "At most," we said, "the settlement puts [the intervenor] at something of a tactical disadvantage in the continuing litigation. Such an injury does not constitute plain legal prejudice." *Id.*[7]

The Schools do not identify any provision in the settlement agreement or settlement approval order that formally strips them of any legal claim or defense, or any contractual right. The settlement does not compromise any of the Schools' rights or impose any obligations or liabilities on them. For class members' BD applications associated with Exhibit C schools, the settlement only requires the Department to fully discharge the amount that those borrowers owe the federal government. The settlement does not entitle the Department to recoup any funds from the schools.

Normally, when the Department approves a BD application, the Department has the discretion to initiate a separate proceeding against the school for recoupment. 34 C.F.R. § 668.125. But even when the Department initiates a

---

[7] Because the *Waller* rule and its exception are closely related to Federal Rule of Civil Procedure 41(a)(2) governing voluntary dismissals, federal courts often use the terms "formal legal prejudice" and "plain legal prejudice" interchangeably—as we did in *Waller* itself. *See* 828 F.2d at 583, 584.

recoupment proceeding, the school is free to contest the issue, and the school retains due process rights. *See id.* §§ 668.125, 685.308(a)(3); *see also id.* §§ 685.206(c)(3)–(4), 685.222(e)(7). Moreover, as the district court explained, a Group One BD application that is resolved pursuant to the settlement is not "a successful or approved borrower-defense claim" as a matter of law, and consequently, the Department cannot initiate recoupment proceedings against any Exhibit C schools as a result of the settlement.[8]

Although the alleged reputational harm to the Schools is concrete enough to support Article III standing, it does "not rise to the level of plain legal prejudice." *Agretti*, 982 F.2d at 247; *see also Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1233 (7th Cir. 1983) (even when a settlement causes "factual injury to a non-settling party," "the court should not intercede in the plaintiff's decision to settle with certain parties, unless a remaining party can demonstrate plain legal prejudice"). Even if the Schools must file a second lawsuit to remedy the alleged reputational harm, that does not mean the Schools have standing to object to the district court's approval of the settlement in this case. *See Agretti*, 982 F.2d at 247 (noting courts have repeatedly held that a settlement

---

[8] The Department has repeatedly represented on the record that it cannot and will not seek recoupment from any schools for BD applications covered by the settlement, and it will not use a school's inclusion in Exhibit C as evidence against them in any future BD proceedings. The district court explicitly noted this in its order approving the settlement, stating, "The Department has also represented in the sworn declaration of [Deputy Under Secretary] Benjamin Miller that it does not consider inclusion on Exhibit C a finding of misconduct and that inclusion does not constitute evidence that could or would be considered in an action by the Department against a school. The Court relied upon, and the Court expects the government to stand behind, the statements made in the Miller Declaration."

does not cause formal legal prejudice to a non-settling party even if it "may force a second lawsuit" against settling parties); *Waller*, 828 F.2d at 584 (concluding non-settling party lacked standing to object to settlement when it could "seek injunctive relief" or other remedies to address the alleged harm). Neither the settlement, nor the district court's order approving the settlement, bars the Schools from bringing claims to remedy the alleged reputational harm in a separate lawsuit.[9]

Because the Schools do not have prudential standing to object to the settlement, "we cannot review the settlement approved by the district court." *Agretti*, 982 F.2d at 248.[10]

### III. Mootness

"To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997) (internal quotation marks omitted) (citation omitted). When Plaintiffs originally filed their complaint, they requested that the district court declare that the Department's "policy of inaction" on BD applications was unlawful. Under the parties' first settlement agreement, the Department agreed to process all pending BD applications within 18 months. *See*

---

[9] The Schools could have moved to seal the settlement or for a protective order, but, apparently, they did not.

[10] Our conclusion that we lack jurisdiction to review the district court's order approving the settlement does not affect our jurisdiction to review the district court's separate order denying the Schools' motion to intervene as of right. *See Waller*, 828 F.2d at 584 (holding non-settling defendant lacked standing to object to settlement but district court erred in denying the entity's motion to intervene as of right). We address the Schools' appeal of that order below, in Part IV.

*supra* Part I. But, because the Department began issuing *pro forma* denial notices to the vast majority of class members, the district court denied final approval of the first settlement, and Plaintiffs filed a supplemental complaint which added claims and related allegations contending that the Department had unlawfully transformed its "policy of inaction" into a policy of "presumption of denial."

Before the Department and Plaintiffs received preliminary approval of their second settlement agreement, the Department moved for summary judgment and argued, among other things, that its actions had mooted the case. On appeal, only the Schools argue that the case was moot before the district court approved the settlement. Although we have concluded that the Schools lack standing to object to the settlement, we address mootness because we have an independent obligation to confirm jurisdiction.

Below, the Department contended that it had mooted Plaintiffs' original claims by processing thousands of BD applications. But under Rule 15(d), Plaintiffs' supplemental complaint merged with their then-operative complaint. *See* Fed. R. Civ. P. 15(d); *Keith v. Volpe*, 858 F.2d 467, 473–76 (9th Cir. 1988). Thus, even assuming that the Department mooted Plaintiffs' original claims by processing many (but not all) pending applications, that action did not moot Plaintiffs' supplemental claims.

The Department also argued below that Plaintiffs' supplemental claims were moot because it had stopped issuing *pro forma* denials. But the Department's voluntary cessation of the challenged practice did not render this case moot. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("It is well settled that 'a defendant's voluntary cessation of a challenged practice

does not deprive a federal court of its power to determine the legality of the practice.'" (citation omitted)); *Rosebrock v. Mathis*, 745 F.3d 963, 971–72 (9th Cir. 2014). The Department could easily resume its conduct if the case were dismissed. *See Rosebrock*, 745 F.3d at 971–72.

## IV. Intervention as of Right

To qualify for intervention as of right under Rule 24(a)(2), a prospective intervenor must "show that: (1) its motion is timely; (2) it has a significantly protectable interest relating to the subject of the action; (3) it is so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) its interest is inadequately represented by the parties to the action." *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 822 (9th Cir. 2021) (cleaned up). "[A] proposed intervenor 'has a significant protectable interest in an action if (1) it asserts an interest that is protected under some law, and (2) there is a relationship between its legally protected interest and the plaintiff's claims.'" *Id.* at 827 (citation omitted).

We review de novo the district court's decision under Rule 24(a) to deny the Schools intervention as a matter of right. *See Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 620 (9th Cir. 2020). However, the harmless error doctrine applies to intervention rulings, which means that we will reverse only if any error affected the substantial rights of the parties. *Prete v. Bradbury*, 438 F.3d 949, 959–60 (9th Cir. 2006).

Here, the district court did not err in denying the Schools' motion for intervention as of right. The Schools do not have a significantly protectable interest as required by Rule 24(a), and they fail to explain how they were prejudiced by the district court's denial of intervention as of right.

The Schools claim that they have significantly protectable financial interests. But the Schools do not—and cannot—face exposure to financial recoupment for two reasons: First, the Schools do not have an independent financial interest in a borrower's BD relief because the Department alone bears the cost of discharging that debt, which is solely money owed by the student to the federal government. *See* 20 U.S.C. § 1087e(h); 34 C.F.R. § 685.222(d)(1). As the district court summarized, the schools have "already gotten the money and [they] don't have to pay it back" under the terms of the Department's settlement with the borrowers. Second, because a settled BD application under this settlement does not constitute a successful BD adjudication, the Department cannot use the settled applications as a predicate for pursuing recoupment from the Schools under its own regulations. *See* 34 C.F.R. § 685.222(e)(7). And, as noted above, the Department has sworn not to pursue any recoupment proceedings against any Exhibit C school for any of the loans discharged through the settlement, and the district court further conditioned the settlement on that promise. Recoupment of funds implicated by the settlement from any of the Schools is thus a virtual impossibility.

The Schools also claim that the settlement interferes with their rights under Department regulations. As noted above, the Department first decides whether to grant a student's application for repayment relief in a BD proceeding. *Supra* Part I. If the Department grants the student relief, the Department may (but is not required to) try to recoup money from the school by initiating a second, separate proceeding. 34 C.F.R. §§ 668.125, 685.308(a)(3); *see also id.* §§ 685.206(c)(3)–(4), 685.222(e)(7). In the recoupment

proceeding, the school may contest the basis on which the Department granted the student relief. *See* § 668.125.

In the settlement, the Department and Plaintiffs agreed to summarily grant BD applications for Group One borrowers (who attended schools listed in Exhibit C) without further adjudication. *Supra* Part I. The Schools argue that, by doing so, the settlement interfered with their procedural right to participate in the BD proceeding that the Department would normally conduct to adjudicate a student's application for relief. In a BD proceeding, a school has, at most, the right to receive notice that an application was filed and an opportunity to submit a response to information that was provided by the student. 34 C.F.R. §§ 685.206(e)(10)–(12)(i), 685.222(e)(3)(i). The regulations do not prohibit the Department from resolving a BD application through settlement instead of an adjudication on the merits. The Department cannot seek recoupment from schools for applications resolved by the settlement, and, in any event, the settlement has no effect on the Schools' rights in recoupment proceedings. Under these circumstances, the Schools' interest in participating in a BD proceeding (as opposed to a recoupment proceeding) is not a sufficiently "significant protectable interest" to support intervention as of right. *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (citation omitted).

But even if we agreed that the district court erred by denying the Schools intervention as of right, we would decline to reverse because any error was harmless. The district court allowed the Schools to intervene permissively and carefully considered their objections to the settlement. The Schools only discuss prejudice in their reply brief, and even then, they only conclusorily assert that intervention as of right would allow them to "file claims or assert defenses,

take discovery, move to decertify the class, or participate in settlement negotiations, among other party actions." That broad assertion, standing alone, does not show that the denial of intervention as of right prejudiced the Schools' "substantial rights." *Prete*, 438 F.3d at 960.

**\* \* \***

For the foregoing reasons, this appeal is **DISMISSED in part**, and the district court's denial of intervention as of right is **AFFIRMED.**

COLLINS, Circuit Judge, dissenting:

I agree with the majority that this case is not moot and that Intervenors Everglades College, Inc.; Lincoln Educational Services Corp.; and American National University ("the Schools") have Article III standing to challenge the settlement in this case. But I disagree with the majority's further conclusion that the Schools lack so-called "prudential standing" to challenge the settlement. And although the majority thus does not directly address the merits of the Schools' objections, I would do so and would reverse the district court's approval of the settlement. I therefore respectfully dissent.

**I**

In holding that the Schools lack prudential standing to object to the settlement, the majority relies on *Waller v. Financial Corp. of America*, 828 F.2d 579 (9th Cir. 1987), which held that "a non-settling defendant, in general, lacks standing to object to a partial settlement," unless "it can demonstrate that it will sustain some formal legal prejudice

as a result of the settlement." *Id*. at 582–83.  Because *Waller* is not a special rule about *appellate* standing, but is instead a rule that governs the ability to make objections to a settlement both in the district court and on appeal, *see* Opin. at 21–22, the majority's *Waller*-based ruling necessarily rests on the premise that the district court should not have allowed the Schools to be heard in objection to the settlement and should not have addressed those objections on the merits.  In effect, then, the majority holds that the district court erred when it granted permissive intervention to the Schools "for the sole and express purpose of objecting to and opposing the class action settlement."   In my view, the district court did not abuse its discretion in allowing the Schools to permissively intervene for the purpose of objecting to the settlement.  *See Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1352 (9th Cir. 2013) ("We review a decision whether to grant permissive intervention under an abuse of discretion standard." (citation omitted)).[1]   And because the district court thus properly *reached* the merits of the intervenor Schools' objections, the Schools have a right to appeal that adverse ruling, and we must resolve those merits.

**A**

"We have often stated that permissive intervention 'requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main

---

[1] I agree with the majority that the Plaintiffs and the Government adequately preserved their objections on this score.   Both have consistently argued, in the district court and on appeal, that the Schools lack a sufficient interest in the settlement to warrant their being heard in objection.

action.'" *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011) (citation omitted); *see also* FED. R. CIV. P. 24(b)(1)(B). The district court correctly held that all of these requirements were satisfied here. With respect to the first requirement, we have "clarif[ied] that the independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims," including when the proposed intervenor is "an intervening defendant." *Freedom from Religion Found., Inc.*, 644 F.3d at 844 (citation omitted). More specifically, we held that the jurisdictional component of the permissive-intervention test "prevents the enlargement of federal jurisdiction in such cases only where a proposed intervenor seeks to bring new *state-law* claims." *Id*. (emphasis added). Because the Schools did not seek to assert "new state-law claims" on the merits, but merely sought to raise federal legal objections to the settlement, the statutory "jurisdictional concern drops away." *Id*. The Schools' motions were plainly timely, because they were filed within weeks of the filing of the amended settlement agreement. And whether the settlement was lawful and should be approved obviously involved "common question[s] of law or fact" with "the main action." FED. R. CIV. P. 24(b)(1)(B).

But "[e]ven if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). We have recognized a wide variety of non-exhaustive factors that may be relevant to a district court's exercise of such discretion:

> These relevant factors include the nature and extent of the intervenors' interest, their

SWEET V. EVERGLADES COLLEGE, INC.               35

> standing to raise relevant legal issues, the
> legal position they seek to advance, and its
> probable relation to the merits of the case.
> The court may also consider whether changes
> have occurred in the litigation so that
> intervention that was once denied should be
> reexamined, whether the intervenors'
> interests are adequately represented by other
> parties, whether intervention will prolong or
> unduly delay the litigation, and whether
> parties seeking intervention will significantly
> contribute to full development of the
> underlying factual issues in the suit and to the
> just and equitable adjudication of the legal
> questions presented.

*Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326,
1329 (9th Cir. 1977) (footnotes omitted).    The record
confirms that the district court adequately considered the
factors that were relevant here, and its weighing of those
factors does not reflect any abuse of discretion. In granting
permissive intervention, the court noted that the Schools had
asserted that the settlement would implicate their
"procedural rights" under the applicable regulations and that
the settlement would also "cause reputational harm"
(internal quotation marks omitted).    The order also noted that
the Schools had "explicitly disclaimed" any pursuit of
additional discovery, which confirmed that intervention
would not result in undue delay.    At the hearing on the
motion, the court also added that allowing permissive
intervention would "keep the system honest" and thereby
contribute to the full development of the issues and their just
resolution.    The district court thus acted well within its

discretion by allowing the Schools to permissively intervene for purposes of objecting to the settlement.

The majority nonetheless holds that, in the absence of a showing of "formal legal prejudice," the Schools should not have been allowed to intervene for purposes of objecting to the settlement. *See* Opin. at 24 (citing *Waller*, 828 F.2d at 582–83). The majority notes that, absent such a showing, we have generally not allowed non-settling *codefendants* in a suit to be heard in objection to another defendant's settlement with the plaintiffs, *see Waller*, 828 F.2d at 582–83, and the majority concludes that the same rule should apply to "an intervenor who is not a party to a settlement." Opin. at 24 n.6. The majority asserts that *Waller* itself supports extending that rule to permissive intervenors, but an examination of *Waller* confirms that that is wrong.

In *Waller*, a codefendant in consolidated securities class actions settled separately with the plaintiffs, but the settlement required an "expansion of the classes." 828 F.2d at 580. After a non-settling codefendant (the accounting firm that had audited the challenged financial statements) objected to changing the classes, the plaintiffs sought to expedite matters by filing (with the district court's approval) duplicative actions on behalf of the expanded classes, but omitting the non-settling codefendants. *Id*. The accounting firm then sought to be heard in the duplicative suits for the purpose of objecting to the settlement, but the district court denied that motion. *Id*. at 581. On appeal, we construed that order as having denied intervention "as of right" and as having held that the objector lacked "standing as a non-settling party to offer objections to the settlement." *Id*. at 581–82. In holding that the district court erred in denying intervention as of right, we did *not* rely on the codefendant's asserted interests in objecting to the settlement. Rather, we

noted that the *underlying* allegations of false financial statements in the complaint confirmed that the accounting firm had an "obvious interest in defending against such allegations" on the merits. *Id*. at 582. In effect, we held that the accounting firm should have been added as a defendant *with respect to the merits* of the duplicative action. The intervention-as-of-right issue was thus independent of, and did not rest on, the accounting firm's objections to the settlement.     Although we did not discuss permissive intervention, it seems obvious from the district court's ruling that, had it been presented with a motion seeking only permissive intervention for the limited purpose of objecting to the settlement, that court would have exercised its discretion to *deny* permissive intervention. *Waller* thus had no occasion to address the specific question that confronts us here, namely, whether a district court *has discretion to allow* permissive intervention for the limited purpose of objecting to a settlement, even in the absence of "formal legal prejudice."     Apart from its inapposite reliance on *Waller*, the majority cites no published precedent that it claims addresses this specific issue, and I have found none either.

In resolving this open question, I discern no reason for imposing *Waller*'s "formal legal prejudice" standard as an artificial constraint on a district court's exercise of its authority to allow permissive intervention for the limited purpose of objecting to a settlement. Indeed, requiring a showing of formal legal prejudice in order to obtain permissive intervention would effectively require the putative intervenor to establish that it qualifies for intervention *as of right*. The sort of "formal legal prejudice" discussed in *Waller*—*e.g.*, a codefendant's loss of a "legal claim or cause of action" due to a settlement, the invalidation

of its "contract rights," or the loss of the "right to assert an
*in pari delicto* defense," *see Waller*, 828 F.2d at 583—would
surely suffice to establish an "interest relating to the property
or transaction that is the subject of the action" that is
"impair[ed]" by the proposed disposition of the action,
which is the standard for intervention as of right. *See* FED.
R. CIV. P. 24(a)(2). Applying the "formal legal prejudice"
standard as a rigid requirement for obtaining permissive
intervention to challenge a settlement would thus effectively
*eliminate* such "permissive" intervention altogether.[2]

---

[2] The "formal legal prejudice" standard is also stricter than the zone-of-
interests test that the Government argues on appeal that the Schools must
satisfy before they may assert that the settlement violates administrative
law principles or the Administrative Procedure Act ("APA").    *See
Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
567 U.S. 209, 224 (2012) (stating that the zone-of-interests test requires
a plaintiff to show that its asserted injury is "'arguably within the zone
of interests to be protected or regulated by the statute' that [it] says was
violated" (citation omitted)); *see also Clarke v. Securities Indus. Ass'n*,
479 U.S. 388, 399 (1987) (noting that this test "is not meant to be
especially demanding"). Even assuming *arguendo* that the Schools had
to satisfy the zone-of-interests test here even though they did not
intervene to assert affirmative claims for relief under the APA and
instead only sought to defend against the affirmative relief being granted
to Plaintiffs under the settlement, I think that the Schools have satisfied
that test here. The Government argues that, because the Schools are the
*regulated parties* whose alleged wrongdoing is the subject of the
borrower-defense provisions, the "statutory and regulatory provisions"
governing borrower defense and discharge of student loans "are not
designed to benefit" them, and the Schools therefore "do not fall within
the zone of interests" of those provisions. But the relevant zone of
interests is not defined by the "overarching purpose" of the applicable
statute, "but by reference to the particular provisions of law" at issue.
*Bennett v. Spear*, 520 U.S. 154, 175–76 (1997) (unanimously rejecting
the view that a party impacted by implementation of the Endangered

Moreover, I do not think that the underlying *Waller* rule is quite as rigid as the majority seems to think. *Waller* adopted the "general" rule that a non-settling defendant "lacks standing to object to a partial settlement," as well as an "exception to th[is] general principle" where the non-settling defendant "can demonstrate that it will sustain some formal legal prejudice as a result of the settlement." 828 F.2d at 582–83. We said that the resulting "standard strikes a balance between the desire to promote settlements and the interests of justice." *Id*. at 583. But we did not say that there are no other conceivable circumstances in which the "interests of justice" might permit a district court to exercise discretion to consider objections from a non-settling party. Again, *Waller* involved an effort, on appeal, to *force* the district court to consider the non-settling defendant's objections, and it may be that, under *Waller*, a district court is never *required* to consider such objections absent a showing of formal legal prejudice. However, it is another matter to say that a district court is *forbidden* from considering objections from a non-settling party who is already in the case or that it is forbidden from granting

---

Species Act fell outside the zone of interests of that statute simply because it did not seek to "vindicate [that statute's] overarching purpose of species preservation"). It follows that a regulated party whose underlying conduct is at issue in a regulatory legal regime will generally fall within the zone of interests of the relevant provisions of law that *limit* the Government's power to take action based on such alleged conduct. *See*, *e.g.*, *Hazardous Waste Treatment Council v. Thomas*, 885 F.2d 918, 922 (D.C. Cir. 1989) (noting that "those whom the agency regulates have the incentive to guard against any administrative attempt to impose a greater burden than that contemplated by Congress" and that such entities therefore fall within the zone of interests of the relevant laws under which that regulation is accomplished). The Schools therefore satisfy the zone-of-interests test here, even if one assumes that they cannot establish formal legal prejudice.

permissive intervention to allow objections from particular non-settling entities that otherwise meet the requirements of Rule 24(b) and Article III.

Accordingly, I would hold that the district court did not abuse its discretion in allowing the Schools to permissively intervene for the limited purpose of objecting to the settlement. And, having done so, the district court therefore properly reached the merits of the Schools' objections to the settlement in this case.

**B**

Having been properly granted intervention to object to the settlement, and having obtained a merits ruling from the district court concerning those objections, the Schools are entitled to appeal that adverse decision, and we must decide the merits of that appeal.

"An intervenor, whether by right or by permission, normally has the right to appeal an adverse final judgment by a trial court." *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 375–76 (1987). Where, as here, intervention was granted for a limited purpose, an intervenor may raise on appeal only those issues that affect the interests of the intervenor that formed the basis for that limited intervention. *See Shaff v. United States*, 695 F.2d 1138, 1140 n.1 (9th Cir. 1983); *see also* 7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1923 at pp. 643–44 (3d ed. 2007) (noting that, although "[o]ne who has been allowed to intervene in an action may appeal from subsequent orders in the action," an appeal by the intervenor will be allowed "only if the subsequent orders affect the intervenor and only to the extent of the interest that made it possible for intervention" (footnote omitted)). And because,

as the majority correctly concludes, the Schools have Article III standing and the case is not moot, the Schools are entitled to appeal the district court's rejection of their arguments against approving the settlement. *See Organized Vill. of Kake v. USDA*, 795 F.3d 956, 963 (9th Cir. 2015) (noting that intervenors must have Article III standing to pursue an appeal). We are therefore obligated to decide whether the district court properly rejected the Schools' objections.

## II

Because the majority (erroneously) declines to reach the merits of the Schools' appeal, I will not exhaustively address the Schools' objections and will only briefly summarize why I would conclude that the Schools are correct in contending that the settlement should be set aside. In particular, at least two of the objections raised by the Schools require that the settlement be vacated.

First, the Government lacks the necessary statutory authority to grant the relief contained in the settlement. The Government concedes, for purposes of this appeal, that the Department of Justice's general authority to settle litigation "may not be used to require an agency to take substantive action that exceeds its statutory power." *See* Brief for Defendants-Appellees at 31 (citing *Authority of the U.S. to Enter Settlements Limiting the Future Exercise of Executive Branch Discretion*, 23 Op. O.L.C. 126, 136–38 (1999)). The Government proffers two sources of the Education Department's statutory authority to justify the settlement's loan forgiveness, but neither suffices.

The Government cites the borrower-defense authority granted under § 455(h) of the Higher Education Act of 1965 ("HEA"), but that provision requires that any such defense to repayment must be "specif[ied] in regulations." *See* HEA

§ 455(h), 20 U.S.C. § 1087e(h).[3]    However, the loan forgiveness contained in the settlement—particularly the portion relating to the schools on "Exhibit C" to the settlement agreement—is not being done pursuant to, or in accordance with, the applicable borrower-defense regulations.  Indeed, in upholding the settlement, both the district court and the majority have placed great weight on the fact that the monetary relief afforded to a borrower attending an "Exhibit C" school "is not 'a successful or approved borrower-defense claim.'"    *See* Opin. at 26 (quoting district court order); *see also id*. at 31 (similar).  But if *full* loan relief is being given to an entire subclass of Plaintiffs *outside* the strictures and limitations of the borrower-defense statute and regulations, then that statute and those regulations cannot be invoked as the authority for that action, which effectively replaces the statutory borrower-defense system with something entirely different. *Cf. Portland Gen. Elec. Co. v. Bonneville Power Admin.*, 501 F.3d 1009, 1031 (9th Cir. 2007) ("A settlement agreement cannot be a means of bypassing congressionally mandated requirements.").  Indeed, the settlement here presumably eschewed reliance on the borrower-defense provisions precisely because invoking them would have implicated the procedural and substantive rights of the Schools in a way that would likely have allowed them to establish formal legal prejudice and a basis for intervention as of right.

---

[3] Because title 20 of the U.S. Code has not been enacted as positive law, I will cite the underlying text of the HEA, together with a citation to the section of title 20 to which the relevant provision has been classified. The current text of the HEA is available on the website of the Government Publishing Office at https://www.govinfo.gov/content/pkg/COMPS-765/pdf/COMPS-765.pdf.

The Government also notes that, under § 432 of the HEA, the Secretary may, in connection with the exercise of his authority under "this part"—*i.e.*, Part B of Title IV of the HEA (which governs the "Federal Family Education Loan Program" or "FFEL Program")—"enforce, pay, compromise, waive, or release any right, title, claim, lien, or demand, however acquired, including any equity or any right of redemption." *See* HEA § 432(a)(6), 20 U.S.C. § 1082(a)(6). But even assuming *arguendo* that this general grant of administrative authority includes the power to forgive loans on the scale involved here—a question on which I express no view—it is undisputed that the vast majority of the loans covered by this settlement were issued under *Part D* of Title IV (governing the "William D. Ford Federal Direct Loan Program" or "Direct Loan Program"), not Part B. The Government's only response to this obvious textual problem is to note that, under § 455(a)(1) of the HEA, direct loans under Part D "shall have the same terms, conditions, and benefits, and be available in the same amounts," as loans issued under four specified sections of Part B. HEA § 455(a)(1), 20 U.S.C. § 1087e(a)(1). But a general administrative *power* granted to an *agency* does not fall within the ordinary understanding of the "terms, conditions, and benefits" of a "*loan[]*" issued by a *third party* under the federal guarantees afforded under the FFEL Program. *Id*. (emphasis added). Accordingly, nothing in the text of § 455(a)(1) carries over, into the Direct Loan Program, administrative authorities applicable only under the FFEL Program. Given that the relief granted by the Department in the settlement exceeds its statutory authority, the settlement is unlawful and should not have been approved.

Second, the settlement unlawfully grants individualized
monetary relief in a class action that was certified only as an
injunctive-relief class under Federal Rule of Civil Procedure
23(b)(2). *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,
360–61 (2011) (stating that Rule 23(b)(2) "does not
authorize class certification when each class member would
be entitled to an individualized award of monetary
damages"). The settlement recognizes that individualized
determinations will be required to decide whether a
particular borrower's loans are "associated with a program,
school, or School Group listed in Exhibit C" as well as to
determine the individualized monetary refunds to be made
to each such borrower. The district court held that the
individualized restitution awards fell within the scope of the
equitable relief permitted in a Rule 23(b)(2) class action, but
that is wrong. *See id*. at 365 (holding that equitable
restitutionary awards of "backpay" are not authorized in "a
(b)(2) class action," because Rule 23(b)(2) "does not speak
of 'equitable' remedies generally but of injunctions and
declaratory judgments"); *see also Richards v. Delta Air
Lines, Inc.*, 453 F.3d 525, 530–31 (D.C. Cir. 2006) (holding
that Rule 23(b)(2) did not authorize certification of a class
action seeking an injunction requiring Delta to process and
pay class members' monetary claims for lost or damaged
baggage). Plaintiffs argue that the settlement is comparable
to the sort of injunctive relief that we allowed to be pursued
on a classwide basis in *Fowler v. Guerin*, 899 F.3d 1112 (9th
Cir. 2018), but that is incorrect. At issue in *Fowler* was an
"*indivisible* injunction benefitting all [class] members at
once" by merely mandating the defendant's use of a "single
formula" in calculating interest in retirement accounts. *Id*.
at 1120 (emphasis added) (quoting *Dukes*, 564 U.S. at 362).
In contrast to *Fowler*, the settlement here bears no

resemblance to a simple, indivisible injunction that merely has indirect collateral monetary consequences.

Because these key features of the settlement were invalid, the district court erred in approving the settlement. I would therefore vacate the approval of the settlement and remand for further proceedings.[4]

I respectfully dissent.

---

[4] Because I would vacate the settlement as unlawful, I have no occasion to address whether the district court erred in denying the Schools' request for intervention as of right. The Schools' arguments in favor of intervention as of right (including their arguments that their motions for such intervention were timely) were all predicated on the specific features of the parties' proposed settlement agreement. A vacatur of that settlement agreement as unlawful suffices to vitiate the Schools' asserted grounds for intervention as of right, thereby rendering it unnecessary for me to reach that issue.