No. 23-15049

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THERESA SWEET, et al.,

*Plaintiffs-Appellees*,

&

EVERGLADES COLLEGE, INC.,

*Intervenor-Appellant*,

v.

MIGUEL CARDONA, et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of California
No. 3:19-cv-3674 | Hon. William H. Alsup

## PETITION FOR REHEARING EN BANC

Jesse Panuccio
Jason Hilborn
Eric M. Palmer
**BOIES SCHILLER FLEXNER LLP**
401 E. Las Olas Blvd., Ste. 1200
Fort Lauderdale, FL 33301
(954) 356-0011
jpanuccio@bsfllp.com
jhilborn@bsfllp.com
epalmer@bsfllp.com

*Counsel for Everglades College, Inc.*

December 20, 2024

## CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1(a), Intervenor-Appellant Everglades College, Inc., states that it is a nonprofit corporation, that it does not have a parent corporation, and that no publicly traded company owns 10% or more of its stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ......................................................i

FRAP 40 STATEMENT ...........................................................................1

INTRODUCTION ...................................................................................2

BACKGROUND ....................................................................................3

ARGUMENT .......................................................................................7

   I.     The Decision Departs from Precedent...........................................7

   II.    This Case Raises an Exceptionally Important Question ..........................13

       A.    The Secretary Lacked Statutory Authority to Enter the Settlement...................................................................15

       B.    The Settlement Violates Rule 23..........................................16

       C.    The Settlement Violates Administrative Law Requirements.............17

       D.    The Settlement Violates Due Process ....................................19

CONCLUSION ....................................................................................19

# TABLE OF AUTHORITIES

Page(s)

## <u>Cases</u>

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................17

*Arizona v. City & County of San Francisco*,
596 U.S. 763 (2022) ...............................................................11

*Bhatia v. Piedrahita*,
756 F.3d 211 (2d Cir. 2014)..............................................1, 12

*Biden v. Nebraska*,
143 S. Ct. 2355 (2023) ......................................................3, 14

*Candelaria v. Health Care Serv. Corp.*,
2020 WL 3832919 (D.N.M. Jul. 8, 2020)..............................10

*Cent. Laborers' Pension Fund v. Heinz*,
541 U.S. 739 (2004) ...............................................................18

*Chauffeur's Training Sch., Inc. v. Riley*,
967 F. Supp. 719 (N.D.N.Y. 1997).......................................19

*Chrysler Corp. v. Brown*,
441 U.S. 281 (1979) ...............................................................18

*City & County of San Francisco v. USCIS*,
992 F.3d 742 (9th Cir. 2021) .................................................11

*Dewey v. Volkswagen Aktiengesellschaft*,
681 F.3d 170 (3d Cir. 2012)...................................................17

*Doe v. Urohealth Sys., Inc.*,
216 F.3d 157 (1st Cir. 2000)..............................................1, 13

*Eichenholtz v. Brennan*,
52 F.3d 478 (3d Cir. 1995).....................................................11

*FCC v. Prometheus Radio Project*,
141 S.Ct. 1150 (2021) ............................................................18

*Fikre v. FBI*,
    35 F.4th 762 (9th Cir. 2022) ...................................................19

*Franklin v. Kaypro Corp.*,
    884 F.2d 1222 (9th Cir. 1989) ..............................................13

*Gardiner v. A.H. Robins Co.*,
    747 F.2d 1180 (8th Cir. 1984) ..............................................11

*Genuine Parts Co. v. EPA*,
    890 F.3d 304 (D.C. Cir. 2018)...............................................18

*Gould v. Alleco, Inc.*,
    883 F.2d 281 (4th Cir. 1989) ....................................... 1, 9, 10

*In re Sunrise Sec. Litig.*,
    131 F.R.D. 450 (E.D. Pa. 1990)............................................10

*In re Vitamins Antitrust Class Actions*,
    215 F.3d 26 (D.C. Cir. 2000) ..................................................8

*Kamal v. Eden Creamery, LLC*,
    88 F.4th 1268 (9th Cir. 2023) ............................... 7, 12, 13

*Lexmark Int'l, Inc. v. Static Control Components*,
    572 U.S. 118 (2014)......................................................... 1, 8, 9

*Marathon Oil Co. v. EPA*,
    564 F.2d 1253 (9th Cir. 1977) ..............................................19

*Perez v. Mortg. Bankers Ass'n*,
    575 U.S. 92 (2015)..................................................................18

*Portland Gen. Elec. Co. v. Bonneville Power Admin.*,
    501 F.3d 1009 (9th Cir. 2007) ........................... 1, 10, 17, 18

*Quad/Graphics, Inc. v. Fass*,
    724 F.2d 1230 (7th Cir. 1983) ...........................................7, 8

*Ralpho v. Bell*,
    569 F.2d 607 (D.C. Cir. 1977)...............................................19

iv

*Rowe v. E.I. DuPont de Nemours & Co.*,
2011 WL 3837106 (D.N.J. 2011) ........................................................10

*Sherman Coll. Of Straight Chiropractic v. U.S. Comm'r of Educ.*,
493 F. Supp. 976 (D.D.C. 1980) ..........................................................19

*Smith v. Lenches*,
263 F.3d 972 (9th Cir. 2001) ..........................................................8, 13

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ........................................................................17

*United States ex rel. Accardi v. Shaughnessy*,
347 U.S. 260 (1954) ............................................................................18

*United States v. Carpenter*,
526 F.3d 1237 (9th Cir. 2008) ................................................. 1, 10, 17

*United States v. New York*,
2014 WL 1028982 (E.D.N.Y. Mar. 17, 2014) ....................................10

*Waller v. Financial Corp. of America*,
828 F.2d 579 (9th Cir. 1987) ................................. 1, 7, 8, 9, 11, 12, 13

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ............................................................................16

**Statutes**

5 U.S.C. § 551(4) ........................................................................................18

20 U.S.C. § 1082(a)(6) ...............................................................................15

20 U.S.C. § 1087e(h) .......................................................................... 3, 15, 18

20 U.S.C. § 1087e(a)(1) ..............................................................................15

20 U.S.C. § 1098a(b)(2) ..............................................................................18

**Regulations**

34 C.F.R. § 685.206 ....................................................................................18

34 C.F.R. § 685.206(c)(2) .............................................................................4

34 C.F.R. § 685.206(c)(3)........................................................................4

34 C.F.R. § 685.206(e)(10)......................................................................4

34 C.F.R. § 685.206(e)(11)-(12).............................................................4

34 C.F.R. § 685.206(e)(16)......................................................................4

34 C.F.R. § 685.222...............................................................................18

34 C.F.R. § 685.222(e)(3)(i)....................................................................4

34 C.F.R. § 685.222(e)(3)-(4)..................................................................4

34 C.F.R. § 685.222(e)(7)........................................................................4

**Other Authorities**

4 Newberg & Rubenstein on Class Actions § 13:28 (6th ed.)...................9

## FRAP 40 STATEMENT

The panel decision conflicts with the following cases: *Lexmark Int'l, Inc. v. Static Control Components*, 572 U.S. 118 (2014); *Waller v. Financial Corp. of America*, 828 F.2d 579 (9th Cir. 1987); *United States v. Carpenter*, 526 F.3d 1237 (9th Cir. 2008); *Portland Gen. Elec. Co. v. Bonneville Power Admin.*, 501 F.3d 1009 (9th Cir. 2007); *Bhatia v. Piedrahita*, 756 F.3d 211 (2d Cir. 2014); *Gould v. Alleco, Inc.*, 883 F.2d 281 (4th Cir. 1989); *Doe v. Urohealth Sys., Inc.*, 216 F.3d 157 (1st Cir. 2000).

The proceeding involves a question of exceptional importance: Whether the Secretary of Education has authority to cancel student loans *en masse*.

1

## INTRODUCTION

This appeal arises from a settlement that has few, if any, analogues in American jurisprudence. Through a collusive settlement of a nationwide class action that merely sought to compel the Department of Education ("Department") to restart adjudication of applications for borrower defenses to student-loan repayment, the Department is instead rewriting its governing statutes and regulations, forgoing adjudication altogether, cancelling billions in loans for hundreds of thousands of borrowers, and cutting billions in refund checks from the Treasury without a Congressional appropriation. Specifically, the Department is cancelling the debt and refunding all past payments for individuals who attended any of 151 schools that the Department "determined"—through secret negotiations with Plaintiffs' counsel— engaged in "substantial misconduct." These schools had no opportunity to defend themselves and, in many instances, like Petitioner, never even received notice of the allegations for which they have been convicted.

To explain this unprecedented settlement is to detail its brazen illegality. It is based on a specious claim of statutory authority, under the Higher Education Act ("HEA"), that supposedly permits the Secretary of Education ("Secretary") to cancel, *en masse*, every student loan in the country. It has stripped hundreds of institutions of substantive and procedural rights. And the Department did all this in a class action that it says (1) is moot and (2) cannot maintain a certified class.

2

All members of the Panel agreed that, because the settlement directly harms Petitioner, the school has constitutional standing to challenge the settlement. And Judge Collins, the lone Panel member to reach the merits, agreed that "key features of the settlement were invalid" and it should be vacated. Dissenting Op. 45. But the Majority concluded that, despite the recognized harm to Petitioner, the Court would not reach the merits because Petitioner did not satisfy so-called "prudential standing." That holding departs from precedent and permits federal agencies to inflict serious harm on regulated parties—indeed change the entire regulatory regime that applies to regulated parties—without ever facing a challenge from those parties. Moreover, by refusing to address the merits, the Panel Opinion leaves in place a settlement that—through sweeping illegality—reaches the exceptionally important question of mass cancellation of student loans. Indeed, the Department has used this illegal settlement to flout the Supreme Court's holding in *Biden v. Nebraska*, 143 S. Ct. 2355 (2023). This case deserves the en banc Court's review.

## BACKGROUND

The Secretary must "specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment" of Direct Loans. 20 U.S.C. § 1087e(h). These regulations establish a "borrower-defense" ("BD") program allowing borrowers to obtain debt cancellation if they prove their school engaged in certain misconduct.

3

The borrower-defense process entails two steps.  In Step One, the Department must notify the school of a claim.  34 C.F.R. §§ 685.206(c)(2) & (e)(10), 685.222(e)(3)(i).  For loans issued before July 1, 2020, the Department must "consider[]… [a]ny response or submissions from the school." *Id.* § 685.222(e)(3)(i).  A Department official then adjudicates the applications "through a fact-finding process" and issues a written decision.  *Id.* § 685.222(e)(3)-(4).  For loans issued after July 1, 2020, the Department must "provide a copy" of the application to the school, "invite the school to respond and to submit evidence" in its defense, *id.* § 685.206(e)(10), and "consider[] the school's response," *id.* § 685.206(e)(11)-(12).  The Department then must issue a reasoned written decision. *Id*.  Step Two occurs only if—after a Step-One adjudication—the Department finds a school engaged in misconduct, grants a BD application, and discharges debt.  The Department may then initiate proceedings to recover the discharged amount from the school.  *See id.* §§ 685.206(c)(3) & (e)(16), 685.222(e)(7).

In 2019, borrowers sued the Department, seeking *only* "an order compelling the Department to start granting or denying their borrower defenses and vacating the Department's [alleged] policy of withholding resolution."  4-ER-836-37 ¶10.  Plaintiffs did "not ask th[e] Court to adjudicate their borrower defenses" or to "dictate how the Department should prioritize their pending borrower defenses." *Id.*  Plaintiffs supplemented their complaint to allege an unlawful "presumption of

4

denial" policy for BD Applications, 4-ER-695-97 ¶¶ 436-55, and sought an order compelling the Department "to lawfully adjudicate each and every borrower defense application." 4-ER-698-99. The district court certified a Rule 23(b)(2) injunctive-relief class of "[a]ll people who borrowed a Direct Loan or FFEL loan to pay for a program of higher education … whose borrower defense has not been granted or denied on the merits." 4-ER-815, 821.

In June 2022, the Department moved for summary judgment, arguing the case was moot and no longer warranted class-wide relief. 3-ER-509-10. Simultaneously, the parties filed a settlement agreement (the "Settlement"). 3-ER-554-616. The Settlement creates three subclasses and provides differentiated injunctive and monetary relief to each.

**Subclass 1:** For approximately 200,000 class members with debt associated with 150 schools listed in Exhibit C to the Settlement, the Department will automatically: (i) "discharge" the debt, (ii) refund "all amounts … previously paid to the Department," and (iii) delete the associated credit tradeline. 3-ER-580, 582-83. The Settlement is silent on why any school is listed, but the preliminary-approval motion stated:

> [B]ecause the Department has identified common evidence of institutional misconduct by the schools …, it has determined that every Class Member whose Relevant Loan Debt is associated with those schools should be provided presumptive relief under the settlement due to strong indicia regarding substantial misconduct by the listed schools,

5

whether credibly alleged or in some instances proven, and the high rate
of class members with applications related to the listed schools.

3-ER-573-74.

**Subclass 2:** For the remaining 100,000 class members, the Settlement
establishes a new "review" process—not found in any BD rule—requiring a series
of presumptions that guarantee a finding of wrongdoing by any accused school and,
thereafter, debt cancellation and refunds. Under these presumptions, a borrower's
claim cannot be denied for (1) false allegations, (2) insufficient evidence, (3) lack of
reliance, or (4) untimeliness. 3-ER-583-85.

**Subclass 3:** For borrowers who first filed applications *after* settlement
execution but before final approval ("Post-Class Applicants"), the Department must
evaluate their applications under the standards in the 2016 BD Rule, even though the
BD regulations require different standards for many class members. 3-ER-587. If
the Department does not complete the "review" within thirty-six months, it must
cancel the borrower's debt and refund prior payments, regardless of the application's
merit. *Id.*

Four Exhibit C schools, including Petitioner, were granted permissive
intervention to object to the Settlement. 1-ER-54-55. The district court overruled
the objections and approved the Settlement. 1-ER-29-53.

6

# ARGUMENT

## I. THE DECISION DEPARTS FROM PRECEDENT

**A.** The Majority held that *Waller v. Financial Corp. of America*, 828 F.2d 579 (9th Cir. 1987), adopted a judge-made rule of "prudential standing" barring non-parties from intervening to object to a settlement that names them and inflicts harm upon them sufficient to satisfy constitutional standing. This counterintuitive rule has no basis in the law of this or any other Circuit.

Before this case, Ninth Circuit precedent held a non-settling defendant must show "formal legal prejudice" to object to a settlement among other parties. *Waller* derived this requirement from Rule 41(a)(2)'s standard for voluntary dismissal. *See Waller*, 828 F.2d at 583; *Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1279 (9th Cir. 2023) (courts "should grant a motion for voluntary dismissal under Rule 41(a)(2) unless a defendant can show that it will suffer some plain legal prejudice as a result"). *Waller* followed caselaw holding that the same standard applies when a non-settling defendant challenges a settlement because "Rule 41(a)(2) is usually the mechanism by which the settling defendants are eliminated from the case." *Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1232 (7th Cir. 1983). As this Court explained, it would "be incongruous for a non-settling defendant to have any less of a burden in attempting to prevent such a voluntary

7

dismissal than he would if he were the party being dismissed." *Waller*, 828 F.2d at 583 (citing *Quad/Graphics*).

Subsequent cases have thus characterized *Waller* as addressing when non-settling defendants may challenge voluntary dismissal under Rule 41(a)(2), not as establishing "prudential standing" to bar intervention and negate Rule 24. *E.g.*, *Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001) (characterizing *Waller* as holding that a "district court should grant a motion for voluntary dismissal under Rule 41(a)(2) unless a defendant can show that it will suffer some plain legal prejudice as a result."); *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 31-32 (D.C. Cir. 2000) (legal-prejudice standard derives from "cases interpreting" Rule 41(a)(2)).

This is unsurprising because prudential-standing doctrines conflict with "the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging," and must be restricted to the two limited categories of cases recognized by Supreme Court precedent. *Lexmark Int'l, Inc. v. Static Control Components*, 572 U.S. 118, 126 (2014). Prudential standing was once thought to encompass "three broad principles: the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances …, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Id.* at 126. *Lexmark* held that "prudential

8

standing is a misnomer as applied to the zone-of-interests analysis, which asks whether" there is "a right to sue under [a] substantive statute." *Id.* at 127. The Majority's "formal prejudice" rule has nothing to do with the remaining third-party standing or generalized-grievance requirements of prudential standing. Instead, the Majority suggested its rule might be "better" framed as asking "whether a non-settling entity has a 'cause of action' to object to the settlement," Op. 17 n.3—i.e., the very prudential-standing principle *Lexmark* eliminated. Worse, if the Majority meant to hold Petitioner lacks a cause of action to challenge the Settlement, this holding is contradicted by its conclusion that Petitioner could "bring[] claims to remedy the alleged reputational harm in a separate lawsuit." *Id.* at 27.

Because formal prejudice is just a way of showing that dismissing the settling parties is improper under Rule 41(a)(2), that doctrine does not constrain a court's discretion to permit intervention—under Rule 24—to challenge a settlement. As Judge Collins explained, *Waller* does not impose an "artificial constraint on a district court's exercise of its authority to allow permissive intervention for the limited purpose of objecting to a settlement." Dissenting Op. 37. Indeed, the Fourth Circuit and other courts have held that when a party has "no standing to object," "[i]nterjection of the opposing views of non-class members should proceed via intervention under Rule 24." *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989); *see also* 4 Newberg & Rubenstein on Class Actions § 13:28 (6th ed.) (party

with "standing to object" under "'plain legal prejudice'" standard need not "file a formal motion to intervene under Rule 24 to bring their objections").[1]

In other words, objection and intervention are distinct paths to challenge a settlement. When, as here, (i) the court properly applies the requirements of Rule 24 to grant permissive intervention (no Panel member found otherwise) for the purpose of challenging a settlement, and (ii) the intervenor has constitutional standing (as the Panel found), nothing more is required to challenge the settlement. *See United States v. Carpenter*, 526 F.3d 1237, 1240-41 (9th Cir. 2008) (allowing intervenors to challenge settlement with no showing of formal prejudice); *Portland Gen. Elec. Co. v. Bonneville Power Admin.*, 501 F.3d 1009, 1026-32, 37 (9th Cir. 2007) (same). Regardless of whether Petitioner suffered "formal legal prejudice" (as narrowly defined by the Majority), the district court permitted Petitioner to permissively intervene to challenge the Settlement. No party cross-appealed or raised an appellate argument challenging permissive intervention, and thus the issue was forfeited.

---

[1] Following *Gould*, courts routinely hold that parties permitted to intervene to challenge a settlement are entitled to consideration of their challenges regardless of formal legal prejudice. *E.g.*, *Candelaria v. Health Care Serv. Corp.*, 2020 WL 3832919, at *2 (D.N.M. Jul. 8, 2020); *United States v. New York*, 2014 WL 1028982, at *9 (E.D.N.Y. Mar. 17, 2014); *Rowe v. E.I. DuPont de Nemours & Co.*, 2011 WL 3837106, at *10 (D.N.J. 2011); *In re Sunrise Sec. Litig.*, 131 F.R.D. 450, 459 (E.D. Pa. 1990).

10

Finally, even if extending *Waller* is warranted, it should never apply to settlements that purport to alter federal-regulatory programs. The *Waller* doctrine derives from the notion that, in "ordinary litigation, that is, lawsuits between private parties … settlement of the dispute is solely in the hands of the parties." *Gardiner v. A.H. Robins Co.*, 747 F.2d 1180, 1189 (8th Cir. 1984). But a settlement requiring a federal agency to alter a regulatory program implicates the interests of regulated parties in ways that private settlements do not. *Cf. Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995) ("Where the rights of third parties are affected, it is not enough to evaluate the fairness of the settlement to the settling parties; the interests of such third parties must also be considered."). Imposing "formal legal prejudice" as an additional barrier to bringing such challenges would allow the Government to rely on the improper "tactic of 'rulemaking-by-collective-acquiescence.'" *Arizona v. City & County of San Francisco*, 596 U.S. 763, 766 (2022) (Roberts, C.J., concurring) (quoting *City & County of San Francisco v. USCIS*, 992 F.3d 742, 744 (9th Cir. 2021) (VanDyke, J., dissenting)); *see also* Br. of *Amici Curiae* Ohio *et al.*, *Sweet v. Cardona*, No. 23-154049 (May 9, 2023), ECF No. 24.

**B.** Even if Petitioner must show "formal legal prejudice," it did. In holding otherwise, the Majority created intra- and inter-circuit conflict.

First, the Settlement undisputedly eliminates procedural and substantive defenses under the BD regulations, including resurrecting time-barred BD claims

11

and deeming true unproven allegations. 3-ER-582-87; Appellants' Opening Brief ("AOB") 9-11; Op. 14. Precedent holds that a settlement that abrogates such defenses causes formal legal prejudice. *See Kamal*, 88 F.4th at 1283 (defendant who would "lose a statute of limitations defense, or a jury trial, or a federal forum" suffers formal legal prejudice); *Waller*, 828 F.2d at 583 ("non-settling defendant has standing to object where the proposed settlement would eliminate its right to assert an *in pari delicto* defense"); *Bhatia v. Piedrahita*, 756 F.3d 211, 218 (2d Cir. 2014) (stripping non-settling party of "the right to present relevant evidence at a trial" constitutes formal prejudice). By holding that Petitioner suffered no legal prejudice, despite the Settlement's eliminating defenses and legal rights, the Majority departed from binding precedent.[2]

Second, the Majority restricted "formal legal prejudice" to "only … rare circumstances," Op. 24, and held that Petitioner's reputational injury, which is sufficient for constitutional standing, is insufficient for "prudential standing." But *Waller* said the opposite, holding that formal legal prejudice can arise "in a variety of situations," without restricting the inquiry to the "rare" forms of prejudice the Panel Majority endorsed. 828 F.2d at 583. The formal-legal-prejudice standard

---

[2] Moreover, the Majority refused to consider Petitioner's other "financial and procedural injuries," Op. 21 n.4, such as the potential use of the Settlement's "determination" of "substantial misconduct" in the process of certification for participation in federal financial aid programs. AOB.13.

requires only "prejudice to some legal interest, some legal claim, [or] some legal argument." *Smith*, 263 F.3d at 975 (9th Cir. 2001); *see also Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1223 (9th Cir. 1989) (non-settling defendants had standing under *Waller* because settlement affected their "substantial legal rights"); *Doe v. Urohealth Sys., Inc.*, 216 F.3d 157, 163 (1st Cir. 2000) ("Although the courts talk about 'legal prejudice,' the governing Federal Rule of Civil Procedure lays down no specific test … and the precedents could be read as saying that … a range of factors could be taken into account"). And although "[l]egal prejudice requires something more" than a "threat of future litigation" or the loss of a "tactical advantage," *Kamal*, 88 F.4th at 1282, a reputational injury is neither; it is a real-world, ongoing injury. Indeed, it is hard to imagine greater "formal" prejudice than the "determination" of a federal regulator that a regulated entity has committed misconduct.

## II.  THIS CASE RAISES AN EXCEPTIONALLY IMPORTANT QUESTION

The Settlement establishes a sweeping administrative program to eliminate billions in student debt—and pay refunds—without Congressional authorization. It directly affects hundreds of thousands of class members, 151 schools on Exhibit C, and at least 4,000 other educational institutions subjected to the new borrower-defense procedures it promulgates. And it does so in violation of basic principles of statutory interpretation, class-action law, administrative law, and due process.

13

In 2023, the Supreme Court addressed blanket loan cancellation by the executive branch, holding that it implicates one of "Congress's most important authorities"—"control of the purse." *Biden v. Nebraska*, 143 S. Ct. 2355, 2375 (2023); *see also id.* at 2381 (Barrett, J., concurring) (student-loan cancellation is an "important subject"). Having been blocked from cancelling student debt through the unlawful scheme enjoined by *Nebraska*, the Secretary shifted to other attempts, including the unprecedented Settlement here. That device—a collusive settlement to achieve policy and regulatory ends that would otherwise be unlawful—makes the case doubly important, because it is perhaps now the leading example of the executive branch abusing its settlement authority. *See* Br. of *Amici Curiae* Ohio *et al.* at 2 ("For years now, the executive branch has collusively settled cases to make policy without having to satisfy constitutionally and congressionally imposed strictures."). Judge Collins—the only Panel member to reach the merits— recognized that, on the merits, the Settlement is indefensible and must be vacated. Dissenting Op. 41-45. The en banc Court should hear the case so the critical merits issues, with nationwide ramifications, will be decided by an appellate court and not a lone district judge. While the full scope of the merits issues are detailed in the Panel briefing, the following summary highlights the Settlement's glaring illegality.

14

### A.      The Secretary Lacked Statutory Authority to Enter the Settlement

The Department concedes it may not enter a settlement requiring it to act "beyond its statutory authority."  U.S. Stay Opp. 28; *see also* 1-ER-35.  It offered two supposed sources of statutory authority here, but neither suffices.

First, the Department relied on 20 U.S.C. § 1087e(h), but that provision requires the Secretary to "specify" the "acts or omissions" for borrower defenses "in regulations."  *Id.*  As Judge Collins explained, the Department conceded "the monetary relief afforded" under the Settlement "is not 'a successful or approved borrower-defense claim.'"  Dissenting Op. 42.  Thus, "full loan relief is being given to an entire subclass of Plaintiffs outside the strictures and limitations of the borrower-defense statute and regulations" so "that statute and those regulations cannot be invoked as the authority for" the Settlement.  *Id.*

Second, the Department invoked its "General powers" under 20 U.S.C. § 1082(a)(6).  That section does not vest blanket loan-discharge authority, AOB.31-37, but regardless it reaches only FFEL Loans, while the Settlement largely covers Direct Loans.  AOB.27.  Facing this "obvious textual problem," Dissenting Op. 43, the Department cites section 1087e(a)(1), which says Direct Loans "shall have the same terms, conditions, and benefits" as FFEL loans.  But a "general administrative *power* granted to an *agency* does not fall within the ordinary understanding of the 'terms, conditions, and benefits' of a '*loan[]*' issued by a *third party* under the federal

15

guarantees afforded under the FFEL Program." Dissenting Op. 43. The HEA specifically defines the "terms and conditions" of FFEL loans in Part B. AOB.28-29. These are the "terms and conditions" incorporated into Part D, not the Secretary's "General powers."

### B. The Settlement Violates Rule 23

The Settlement approval also flagrantly disregarded basic principles of class-action procedure. Rule 23(b)(2) permits certification "only when a single injunction or declaratory judgment would provide relief to each member of the class" and "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360-61 (2011). Here, the Court certified a 23(b)(2) class, yet the Settlement awards individualized monetary relief to each subclass, releases class members' monetary claims, and provides multivariate relief unattainable through a single, class-wide injunction. AOB.47-52. As Judge Collins observed, this "bears no resemblance to a simple, indivisible injunction." Dissenting Op. 44-45.

The problems do not end there. As explained in Petitioner's Opening Brief, the Settlement classes were not affected by any uniform policy of the Department, so commonality and typicality were nonexistent. AOB.54. The Settlement features tradeoffs in the relief afforded to each subclass, but none of those subclasses had their own representatives, supporting "the inference that the representative plaintiffs

16

are inadequate." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 187 (3d Cir. 2012); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 627 (1997). The Settlement grants monetary relief to individuals never injured by the policies Plaintiffs challenged or the alleged conduct in their BD application, in contravention of the principle that "[e]very class member must have Article III standing" for "individual damages." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). And the Settlement provides relief to—and binds as "Plaintiffs"—"Post-Class Applicants" who submitted BD applications after Settlement execution but before final approval. AOB.57-59. By compromising claims of absentees who were never even certified as a class, the Settlement violates Rule 23 and due process.

## C.    The Settlement Violates Administrative Law Requirements

"A settlement agreement cannot" bypass "congressionally mandated requirements," *Portland*, 501 F.3d at 1030-31, so the "decision to enter into [a] settlement" must follow the APA, *Carpenter*, 526 F.3d at 1241. Among other things, the Settlement violates the APA by establishing what the Government calls new "regulatory procedures" for "adjudicat[ing] [borrower-defense] applications," U.S. Stay Opp. 3-4, 10, and a new "framework" for "resolving BD claims" without proceeding through rulemaking, ECF No. 14, at 19.

Agencies may not avoid rulemaking by calling their actions settlements, and here, rulemaking was required thrice over. *Portland*, 501 F.3d at 1032. <u>First</u>, the

17

HEA requires the Secretary to "specify in regulations" the process for BD claims. 20 U.S.C. § 1087e(h). <u>Second</u>, under the HEA, negotiated rulemaking was required because the new "framework" is a regulation that "pertain[s]" to Title IV, the student-loan subchapter. *Id.* § 1098a(b)(2). <u>Third</u>, under the APA, notice-and-comment rulemaking was required because the new "framework" is a legislative "rule." 5 U.S.C. § 551(4). It has the "'force' of law. *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015). And it affects "individual rights and obligations'" to repay debts. *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 (1979).

The Settlement also violates the Department's own regulations and lacks evidentiary support. Agencies must follow their regulations. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954); *Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 748 (2004). Having promulgated BD regulations, 34 C.F.R. §§ 685.206, 685.222, the Department must follow them—or amend them by rulemaking. *Portland*, 501 F.3d at 1030-35.

Agency action must also be "reasonably explained." *FCC v. Prometheus Radio Project*, 141 S.Ct. 1150, 1158 (2021). But the Department never explained the "indicia" it relied on and ignored exculpatory "evidence" undercutting "its judgment." *Genuine Parts Co. v. EPA*, 890 F.3d 304, 312 (D.C. Cir. 2018).

**D.      The Settlement Violates Due Process**

The Settlement impairs Petitioner's liberty and property interests without any process.  "[S]tigma from governmental action plus alteration or extinguishment of" a "previously recognized" right interferes with a liberty interest protected by due process. *Fikre v. FBI*, 35 F.4th 762, 776 (9th Cir. 2022).  The "stigma" of inclusion on a wrongdoer list "bearing the imprimatur of the [Department]" affects schools' relationship with students and can cause schools to lose "students" and "donations" and suffer other consequences.  *Sherman Coll. Of Straight Chiropractic v. U.S. Comm'r of Educ.*, 493 F. Supp. 976, 978–79 (D.D.C. 1980).  Plus, by labeling schools wrongdoers, Exhibit C extinguishes the procedural rights guaranteed by BD regulations and impairs their right to defend themselves in any future recoupment proceedings, which endangers Petitioners' "property interest in retaining the funds in [their] accounts" from Title IV loans received.  *Chauffeur's Training Sch., Inc. v. Riley*, 967 F. Supp. 719, 729 (N.D.N.Y. 1997).  AOB.60.

Despite these interests, Petitioner received no process.  The Department gave no notice of Exhibit C, conducted no official proceedings, and gave no rebuttal opportunity.  That is unconstitutional. *See Marathon Oil Co. v. EPA*, 564 F.2d 1253, 1261 (9th Cir. 1977); *Ralpho v. Bell*, 569 F.2d 607, 628 (D.C. Cir. 1977).

**CONCLUSION**

The Court should grant rehearing en banc.

19

Dated: December 20, 2024

Respectfully submitted,

*/s/ Jesse Panuccio*

Jesse Panuccio
Jason Hilborn
Eric M. Palmer
**BOIES SCHILLER FLEXNER LLP**
401 E. Las Olas Blvd., Ste. 1200
Fort Lauderdale, FL  33301
(954) 356-0011
jpanuccio@bsfllp.com
jhilborn@bsfllp.com
epalmer@bsfllp.com

*Counsel for Everglades College, Inc.*

## CERTIFICATE OF COMPLIANCE

1. This petition complies with the type-volume limitation of Circuit Rule 40-1 because it contains 4,176 words, excluding the parts of the petition exempted by Federal Rule of Appellate Procedure 32(f).

2. This petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman type.

Date: December 20, 2024                    /s/   *Jesse Panuccio*
                                           Jesse Panuccio

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2024, I electronically filed the foregoing petition with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Court's CM/ECF system. I certify that all participants in this case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

Date: December 20, 2024                    /s/    *Jesse Panuccio*
                                                 Jesse Panuccio