**No. 23-15049**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

THERESA SWEET et al.,
*Plaintiffs-Appellees*,

v.

EVERGLADES COLLEGE, INC.,
*Intervenor-Appellant*,

v.

U.S. DEPARTMENT OF EDUCATION, MIGUEL A. CARDONA, in his official
capacity as Secretary of the U.S. Department of Education,
*Defendants-Appellees*

**On Appeal from the United States District Court for the
Northern District of California
Case No. 3:21-mc-80075-WHA, Hon. William Alsup**

---

**PLAINTIFF-APPELLEES' OPPOSITION TO PETITION FOR
REHEARING EN BANC**

Rebecca C. Ellis
Rebecca C. Eisenbrey
Eileen M. Connor
PROJECT ON PREDATORY STUDENT
LENDING
769 Centre Street
Jamaica Plain, MA 02130
rellis@ppsl.org
reisenbrey@ppsl.org
econnor@ppsl.org
Tel.: (617) 390-2669

*Attorneys for Plaintiff-Appellees
Theresa Sweet, Chenelle
Archibald, Daniel Deegan,
Samuel Hood, Tresa Apodaca,
Alicia Davis, Jessica Jacobson,
and all others similarly situated*

# TABLE OF CONTENTS

INTRODUCTION ................................................................. 1

BACKGROUND ................................................................. 2

STANDARD OF REVIEW ................................................... 6

ARGUMENT ...................................................................... 7

    I.    The Panel Decision Does Not Present an Intra- or Inter-Circuit Split ...................................................................... 7

        A.    *Waller* Applies Straightforwardly to ECI's Situation ............... 7

        B.    ECI Mischaracterizes *Waller* to Manufacture a Split of Authority ................................................................10

    II.    There Is No "Question of Exceptional Importance" in This Case......14

CONCLUSION .................................................................17

# TABLE OF AUTHORITIES

## Cases

*Agretti v. ANR Freight System, Inc.*, 982 F.2d 242 (7th Cir. 1992) .................10, 14

*Alumax Mill Products, Inc. v. Congress Financial Corp.*, 912 F.2d 996 (8th Cir. 1990) ...................................................................................................10

*Atonio v. Wards Cove Packing Co.*, 810 F.2d 1477 (9th Cir. 1987) ....................... 6

*Ball ex rel. Burba v. DeWine*, No. 20-3927, 2021 WL 4047032 (6th Cir. June 30, 2021) ...............................................................................................12

*Bhatia v. Piedrahita*, 756 F.3d 211 (2d Cir. 2014) .........................................10, 14

*Biden v. Nebraska*, 143 S. Ct. 2355 (2023) ........................................................15

*Department of Education v. Brown*, 143 S. Ct. 2343 (2023) ................................16

*Diamond v. Charles*, 476 U.S. 54 (1986) ...........................................................15

*Didrickson v. U.S. Dep't of Interior*, 982 F.2d 1332 (9th Cir. 1992) ....................12

*Gould v. Alleco*, 883 F.2d 281 (4th Cir. 1989) ...................................................14

*In re Commercial Money Ctr., Inc.*, 254 F. App'x 584 (9th Cir. 2007) .................11

*In re Integra Realty Resources, Inc.*, 262 F.3d 1089 (10th Cir. 2001) ..................10

*In re School Asbestos Litig.*, 921 F.2d 1330 (3d Cir. 1990) .................................10

*In re Vitamins Antitrust Class Actions*, 215 F.3d 26 (D.C. Cir. 2000) ..................10

*Laird v. Tatum*, 408 U.S. 1 (1972) .....................................................................17

*LeBlanc v. Texas Brine Company, L.L.C.*, 989 F.3d 359 (5th Cir. 2021) ...............10

*Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) .........................................................................................................13

*Local 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. Cleveland*, 478 U.S. 501 (1986) ...................................................................................................... 9

*Mayfield v. Barr*, 985 F.2d 1090 (D.C. Cir. 1993) ..............................................11

*Melito v. Experian Marketing Solutions, Inc.*, 923 F.3d 85 (2d Cir. 2019) ...........11

ii

*Portland General Electric Co. v. Bonneville Power Administration*, 501 F.3d 1009 (9th Cir. 2007) ...........................................................................12

*Rahman v. Vilsack*, 673 F. Supp. 2d 15 (D.D.C. 2009) .........................................14

*Smith v. Arthur Andersen LLP*, 421 F.3d 989 (9th Cir. 2005)................................ 9

*Smith v. Lenches*, 263 F.3d 972 (9th Cir. 2001)....................................................11

*Sweet v. Cardona*, 121 F.4th 32 (9th Cir. 2024) .........................................*passim*

*Sweet v. Cardona*, 641 F. Supp. 3d 814 (N.D. Cal. 2022) ..............................2, 4, 5

*Sweet v. Cardona*, 657 F. Supp. 3d 1260 (N.D. Cal. 2023) ................................5, 6

*Sweet v. DeVos*, 495 F. Supp. 3d 835 (N.D. Cal. 2020).......................................... 3

*U.S. v. Gila Valley Irrigation Dist.*, 345 Fed. App'x 281 (9th Cir. 2009) ..............12

*United States v. Carpenter*, 526 F.3d 1237 (9th Cir. 2008) ..................................12

*Waller v. Financial Corp. of America*, 828 F.2d 579 (9th Cir. 1987) ............*passim*

**Statutes**

20 U.S.C. § 1087e ................................................................................................... 2

**Other Authorities**

Transcript of Sept. 26, 2024, Hearing, *Sweet v. Cardona*, No. 3:19-cv-03674 (N.D. Cal. Sept. 26, 2024), ECF No. 438........................................................6, 16

**Rules**

Fed. R. App. P. 40.............................................................................................6, 14

**Regulations**

34 C.F.R. § 685.206 ............................................................................................... 2

34 C.F.R. § 685.212 ............................................................................................... 2

## INTRODUCTION

The litigation in *Sweet v. Cardona* commenced in 2019. Members of the plaintiff class ("Plaintiffs") had filed applications for borrower defense to repayment ("BD") with the U.S. Department of Education ("Department"), seeking discharge of their federal student loans. For years, the Department did not adjudicate those applications. Plaintiffs alleged that the Department failed to take action it was legally required to take, then compounded that failure by taking actions that were arbitrary, capricious, and unconstitutional. The parties settled the case with an agreement by the Department to resolve Plaintiffs' BD applications. The district court approved the Settlement after notice and hearing. The Settlement has now been operative for two years and has been fully effectuated for more than 250,000 class members.

Over seven rounds of briefing across three levels of the federal courts, Intervenor Everglades College, Inc. ("ECI") has grasped for a legal hook on which to hang its disagreement with the Department's decision to settle this case. At each turn, these arguments have been rejected.

ECI now argues that the panel incorrectly applied Circuit precedent that bars a non-settling party from appealing a settlement in which it has no stake. This latest argument, too, is unavailing. The panel's application of *Waller v. Financial Corp. of America*, 828 F.2d 579 (9th Cir. 1987), accords with comparable decisions from this and other Circuits. The Settlement does not bind ECI, nor impose any obligation

1

on it, nor purport to resolve any legal claim by or against it. The panel correctly applied *Waller* to rule that ECI did not have a basis to maintain an appeal of a decision that quite simply does not concern it.

ECI also argues that this case presents "questions of exceptional importance." As the panel correctly found, however, none of these supposed questions is properly before the Court, because ECI has no right to raise them. Regardless, these purportedly "important" questions attack straw men rather than accurately describing this litigation.

The petition should be denied.

## BACKGROUND

The Higher Education Act (HEA) provides that borrowers of federal student loans may assert a defense to repayment of those loans based on misconduct by the school they attended. *See* 20 U.S.C. § 1087e(h); 34 C.F.R. §§ 685.206, 685.212; *Sweet v. Cardona*, 121 F.4th 32, 38 (9th Cir. 2024) (hereinafter "*Sweet*"). Starting in 2015, the Department faced an influx of BD applications following the collapse of large for-profit college chains. *See Sweet*, 121 F.4th at 38. Then, despite a growing backlog of unresolved applications, the BD process came to an unlawful standstill. *See Sweet v. Cardona*, 641 F. Supp. 3d 814, 820 (N.D. Cal. 2022) ("*Sweet I*").

Plaintiffs filed this suit in June 2019, alleging that the Department's failure to adjudicate BD applications constituted agency action unlawfully withheld or

unreasonably delayed under the Administrative Procedure Act (APA). *See Sweet*, 121 F.4th at 39. On October 30, 2019, the district court certified a class of, *inter alia*, "[a]ll people . . . who have asserted a borrower defense to repayment to the U.S. Department of Education, whose borrower defense has not been granted or denied on the merits." *Id.*

In spring 2020, the parties executed their first attempt at a settlement agreement. *Id.* Soon afterward, however, thousands of class members began receiving *pro forma* notices that denied their BD applications without explanation. *Id.* at 39–40. The Department admitted that it had denied nearly 90% of class members' applications. *Id.* As a result, the district court denied final approval. *Id.*; *see Sweet v. DeVos*, 495 F. Supp. 3d 835, 837 (N.D. Cal. 2020) ("*Sweet II*"). Moreover, the court found that the form denial notices constituted a "strong showing of agency pretext," requiring further discovery. *Sweet II*, 495 F. Supp. 3d at 846–47.

Plaintiffs then filed a Supplemental Complaint that significantly expanded the scope of the case. *See Sweet*, 121 F.4th at 40. Plaintiffs alleged that the Department had adopted an unlawful "presumption of denial" policy and issued thousands of unlawful denial notices, in violation of the APA and the Due Process Clause. *See id.* In June 2022, Plaintiffs moved for summary judgment and sought an order to show cause why—given the Department's long delays and bad faith—every class member's BD application should not be granted immediately. *Id.*; *see* Government's

Supplemental Excerpts of Record at 73–77.

While that motion was pending, the parties signed the Settlement Agreement at issue in this appeal. *Sweet*, 121 F.4th at 40. The Settlement provides relief to three groups of people. "Group 1," the only group relevant to ECI, consists of class members whose federal student loans relate to one (or more) of 151 schools listed in an attachment to the Settlement, referred to as "Exhibit C." *Id.* These class members receive automatic loan discharges under the Settlement. *Id.*

As the parties explained to the district court, "strong indicia regarding substantial misconduct" at these schools, along with a high volume of BD applications from their former students, led the Department to agree that class members in Group 1 should receive presumptive relief. *Id.* This conclusion does not lead to any regulatory consequences for the schools: The Settlement will not, and cannot, serve as a basis for recoupment or enforcement action against the schools. *See id.* at 46; *Sweet I*, 641 F. Supp. 3d at 828–29.

The parties moved for preliminary approval in June 2022. *Sweet*, 121 F.4th at 40. Soon after, four educational institutions—including ECI (together, the "Intervenors")—moved to intervene in the litigation. *Id.* They argued that they had an interest in the case because they were named on Exhibit C, and that this asserted interest was powerful enough to justify rejecting the Settlement. *See Sweet I*, 641 F. Supp. 3d at 822.

4

After a hearing, the district court granted preliminary approval from the bench. *Sweet*, 121 F.4th at 40. The court explained that it might allow the schools to "oppose the settlement," Excerpts of Record ("ER") 338, but the court was "not saying that any . . . intervenors have a property interest that's at stake," ER 341. Rather, the court was "inclined to let [intervenors] in . . . to keep the system honest" by "help[ing] [the court] see the opposing arguments"— essentially, as amici. *Id.* The court later denied Intervenors' motions to intervene as of right, but allowed them permissive intervention "for the sole purpose of objecting to the class action settlement." *Sweet*, 121 F.4th at 40. Intervenors did oppose final approval and were heard at the fairness hearing. *Id.* at 40–41.

On November 16, 2022, the district court granted final approval. *Id.*; *see generally Sweet I*, 641 F.Supp.3d 814. The final approval order addressed each of the arguments Intervenors raised—including the arguments ECI now repeats—and explained in detail why those arguments failed. *See Sweet I*, 641 F. Supp. 3d at 822–35. No class member appealed the final approval order. But three of the Intervenors did, along with filing a motion to stay the judgment. *See Sweet*, 121 F.4th at 41; *Sweet v. Cardona*, 657 F. Supp. 3d 1260 (N.D. Cal. 2023) ("*Sweet III*").

The district court, a motions panel of this Court, and the Supreme Court sequentially rejected Intervenors' stay petition. *Sweet*, 121 F.4th at 41. The Settlement Agreement became effective on January 28, 2023. *Sweet III*, 657 F. Supp.

5

3d at 1269. The distribution of relief to Group 1 class members was substantially completed as of September 2024. *See* Transcript of Sept. 26, 2024, Hearing at 5–6, *Sweet v. Cardona*, No. 3:19-cv-03674 (N.D. Cal. Sept. 26, 2024), ECF No. 438.

Meanwhile, the three Intervenors pursued their appeals of the final approval order. On November 5, 2024, the panel issued its decision: A majority concluded that Intervenors lacked prudential standing to appeal the final approval; that the case was not moot; and that the district court had not erred in denying Intervenors' motions to intervene as of right. *Sweet*, 121 F.4th at 47–49. Accordingly, the appeals were dismissed. *Id.* at 49. On December 20, 2024, ECI, alone among Intervenors, filed the instant Petition.

## STANDARD OF REVIEW

"[R]ehearing en banc is not favored," Fed. R. App. P. 40(a), and generally will not be granted unless the petitioner can demonstrate that the panel decision conflicts with controlling law or that the case presents "one or more questions of exceptional importance." Fed. R. App. P. 40(b)(2); *see, e.g.*, *Atonio v. Wards Cove Packing Co.*, 810 F.2d 1477, 1479 (9th Cir. 1987) (noting the "extraordinary nature of en banc review" (quotation omitted)).

## ARGUMENT

### I.   The Panel Decision Does Not Present an Intra- or Inter-Circuit Split

The panel held that, under *Waller v. Financial Corp. of America*, 828 F.2d 579 (9th Cir. 1987), ECI did not have standing to appeal the approval of the Settlement because it could not demonstrate formal legal prejudice. *Sweet*, 121 F.4th at 45–47. This was a simple application of binding Circuit precedent. ECI's argument otherwise relies on contorting *Waller* beyond recognition.

### A.   *Waller* Applies Straightforwardly to ECI's Situation

In *Waller*, this Court addressed a settlement between a plaintiff class and some, but not all, of the defendants in a securities class action. *See* 828 F.2d at 580. To expedite this settlement, the plaintiffs initiated a separate action against the settling defendants only and moved for preliminary approval. *Id.* at 580–81. One of the non-settling defendants in the original action, Arthur Anderson & Co. ("Anderson"), sought to object to the settlement in this separate action. *Id.* at 581. The district court instructed Anderson to file a motion to establish standing to object, which the appellate court later interpreted as a motion to intervene as of right. *Id.* The district court denied the motion, and Anderson appealed. *Id.*

The *Waller* court explained that, even if Anderson should have been allowed to intervene, that did not necessarily mean that it should be allowed to lodge objections to the settlement. *Id.* at 582. This is because—as at least three other

7

Circuits had then held—"a non-settling defendant, in general, lacks standing to object to a partial settlement." *Id.* at 582–83 (citing the First, Fifth, and Seventh Circuits). The exception is if the non-settling party can "demonstrate that it will sustain some formal legal prejudice as a result of the settlement." *Id.* at 583. The court noted that "[t]his standard strikes a balance between the desire to promote settlements and the interests of justice," and also "maintains consistency with Fed. R. Civ. P. 41(a)(2) which governs voluntary dismissals," because it ensures that a non-settling party will not "have any less of a burden in attempting to prevent such a voluntary dismissal than he would if he were the party being dismissed." *Id.* (quotation omitted).

"[F]ormal legal prejudice," *Waller* explained, might exist if a settlement "strip[s] [the non-settling party] of a legal claim or cause of action" or "invalidates [its] contract rights." *Id.* It did not exist, however, in that case, where Anderson merely speculated that the settling defendants would violate the confidentiality provisions of a joint defense agreement. *See id.* at 583–84. Even if any such violation did occur, the court noted, Anderson could "seek injunctive relief or the disqualification of counsel." *Id.* at 584. "At most," the court concluded, "the settlement puts Anderson at something of a tactical disadvantage in the continuing litigation," which did not "constitute plain legal prejudice." *Id.*

*Waller*'s reasoning straightforwardly applies to ECI here, as the panel

8

detailed. *See Sweet*, 121 F.4th at 45–46. The Settlement does not strip ECI of any claims or defenses—in contrast to, for instance, the settlement at issue in *Smith v. Arthur Andersen LLP*, 421 F.3d 989 (9th Cir. 2005), which provided that the non-settling parties would be "permanently barred and enjoined from asserting or continuing to prosecute . . . any and all Claims . . . against" the settling defendants. *Id.* at 1000; *see Sweet*, 121 F.4th at 45–46. This Settlement does not impose any liabilities on ECI, but rather *removes* the possibility of future liability by insulating ECI from any recoupment action based on loans discharged under the Settlement. *Sweet*, 121 F.4th at 46. The only harm that the panel found cognizable to support Article III standing—the purported reputational harm of being included on Exhibit C—did not constitute "formal legal prejudice" because ECI could still, if it chose, seek redress for that supposed harm in separate litigation against the government. *See id.* In short, ECI falls squarely within the mine-run of third parties who are not entitled to appeal the approval of settlements between others. *Cf. Local 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. Cleveland*, 478 U.S. 501, 529–30 (1986) (intervenor could not block consent decree where decree did not "bind [intervenor] to do or not to do anything," "impose[] [any] legal duties or obligations on [intervenor] at all," or "purport to resolve any claims [intervenor] might have").

Since the *Waller* decision in 1987, at least seven other Circuits have held or affirmed their earlier holdings that a non-settling party must demonstrate formal

legal prejudice to have standing to object to a settlement between others. *See, e.g.*, *LeBlanc v. Texas Brine Company, L.L.C.*, 989 F.3d 359, 364 (5th Cir. 2021); *Bhatia v. Piedrahita*, 756 F.3d 211, 218 (2d Cir. 2014); *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1102 (10th Cir. 2001); *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 31 (D.C. Cir. 2000); *Agretti v. ANR Freight System, Inc.*, 982 F.2d 242, 246 (7th Cir. 1992); *Alumax Mill Products, Inc. v. Congress Financial Corp.*, 912 F.2d 996, 1001–02 (8th Cir. 1990); *In re School Asbestos Litig.*, 921 F.2d 1330, 1332–33 (3d Cir. 1990). There is no disagreement on this issue among the Circuits, nor between the panel in *Sweet* and this long line of precedent.

### B. ECI Mischaracterizes *Waller* to Manufacture a Split of Authority

ECI strives to create inconsistency by twisting *Waller*'s holding in knots. But there is no conflict here, either between *Waller* and *Sweet* or within *Waller* itself.[1]

*1.* ECI claims that *Waller* addresses "when non-settling defendants may challenge voluntary dismissal under Rule 41(a)(2)." Petition at 8. The *Waller* court's

---

[1] Indeed, even the panel dissent did not argue as much. *See Sweet*, 121 F.4th at 49–53 (Collins, J., dissenting). The dissent made an entirely different argument than ECI presents here: namely, that the majority's application of *Waller* should be read as a holding that the district court had wrongly granted permissive intervention, and under the abuse of discretion standard, the dissent did not believe the district court had erred. *See id.* at 49–50. This interpretation—although incorrect, for reasons explained above—does not cast doubt on *Waller*'s continuing validity or suggest that the majority strayed from Circuit precedent.

reference to Rule 41(a)(2) provided one aspect of the reasoning behind its holding, *see* 828 F.2d at 583, but the case makes clear that it is addressing situations where a third party attempts to object to a settlement between others, regardless of whether that third party is being dismissed from an action.[2] Indeed, in *Waller* itself, the court ruled that Anderson should have been treated as an intervenor; it was not a party being dismissed under Rule 41.[3] *See id.* at 582.

**2.** ECI argues that *Waller* did not "establish[] 'prudential standing' to bar intervention and negate Rule 24." Petition at 8. This misleading characterization is wrong on multiple counts. For one, both *Sweet* and *Waller* recognize, correctly, that intervention and standing to appeal are two distinct inquiries. *See Waller*, 828 F.2d at 582–84; *Sweet*, 121 F.4th at 45–46, 48–49. There is thus no inherent contradiction in a party being permitted to intervene in a case but not being permitted to maintain

---

[2] *Smith v. Lenches*, cited by ECI (Petition at 8), involved solely a Rule 41 dismissal, and no settlement at all. 263 F.3d 972, 975 (9th Cir. 2001).

[3] The principle articulated in *Waller* has likewise been applied to other types of litigants who are not co-defendants subject to Rule 41 dismissal. *See, e.g.*, *Melito v. Experian Marketing Solutions, Inc.*, 923 F.3d 85, 91–92 (2d Cir. 2019) (third-party defendant did not have standing to object to settlement); *Mayfield v. Barr*, 985 F.2d 1090, 1093 (D.C. Cir. 1993) (same, for former class members); *In re Commercial Money Ctr., Inc.*, 254 F. App'x 584, 585 (9th Cir. 2007) (same, for non-party in bankruptcy proceedings).

11

an appeal of a settlement that causes it no legal harm.[4] *See also, e.g.*, *Didrickson v. U.S. Dep't of Interior*, 982 F.2d 1332, 1338 (9th Cir. 1992) ("An interest strong enough to permit intervention is not necessarily a sufficient basis to pursue an appeal abandoned by the other parties."); *U.S. v. Gila Valley Irrigation Dist.*, 345 Fed. App'x 281, 283 (9th Cir. 2009) (plaintiff-intervenor lacked standing to object to consent decree); *Ball ex rel. Burba v. DeWine*, No. 20-3927, 2021 WL 4047032, at *3 (6th Cir. June 30, 2021) (intervenor lacked standing to object to settlement on appeal).

ECI is also incorrect in its blinkered focus on the phrase "prudential standing." As the panel acknowledged, "[t]he term 'standing' is a word of many, too many, meanings," and "federal courts use many different terms to refer to a litigant's eligibility to bring a particular claim or appeal." *Sweet*, 121 F.4th at 41 n.3 (quotation omitted). The *Sweet* court used "prudential standing" in consonance with how it was

---

[4] To the extent ECI suggests otherwise, *see* Petition at 10, it is incorrect. *United States v. Carpenter*, 526 F.3d 1237 (9th Cir. 2008), ruled on an appeal of a district court's denial of a motion to intervene, not on the putative intervenor's substantive objections to the settlement. *See id.* at 1240–41. Moreover, *Carpenter* reached exactly the opposite conclusion as what ECI seeks here: "We recognize that the intervenors whose claims are not the subject of a settlement cannot veto that settlement." *Id.* In *Portland General Electric Co. v. Bonneville Power Administration*, 501 F.3d 1009 (9th Cir. 2007), the original petitioners and the intervenors jointly made the same arguments, so there was no occasion to consider the intervenors' standing. *See id.* at 1013, 1023.

used in *Waller* and similar cases. *See id.* It did not import meaning from outside that context—including from *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) (cited in Petition at 8–9), which specifically disclaimed any applicability to questions of third-party standing. *See id.* at 127 n.3 ("This case does not present any issue of third-party standing, and consideration of that doctrine's proper place in the standing firmament can await another day.").

*3.* ECI declares that the Settlement "undisputedly" prejudiced its "procedural and substantive defenses under the BD regulations," Petition at 11, and thus that the panel must have departed from *Waller* in finding that ECI did not suffer "formal legal prejudice," *id.* at 12. This premise, however, is anything but undisputed. Indeed, the panel carefully considered ECI's argument that it had suffered harm to its procedural and substantive defenses—and the majority rejected that argument. It specifically found that ECI failed to "identify any provision in the settlement agreement or settlement approval order that formally strips them of any legal claim or defense, or any contractual right." *Sweet*, 121 F.4th at 46. In ignoring this portion of the panel decision, ECI simply seeks to relitigate its failed argument that the Settlement deprived it of legal rights. That is not the purpose of en banc review.

*4.* Finally, ECI puts undue weight on the words "rare circumstances." *See* Petition at 12. In explaining the concept of "formal legal prejudice," the panel quoted the Second Circuit's observation that such prejudice "exists only in those rare

13

circumstances when, for example, the settlement agreement *formally* strips a non-settling party of a legal claim or cause of action." *Bhatia*, 756 F.3d at 218 (quoted in *Sweet*, 121 F.4th at 45) (emphasis in original). As the following sentences in *Sweet* make clear, *Bhatia* is relevant for its commentary on the difference between a settlement that "formally" strips a non-settling party of a right and one that, allegedly, "effectively" strips it of a right. *See Sweet*, 121 F.4th at 45. The latter, under *Waller*, does not suffice. *See id.* at 45–46. The word "rare" appears nowhere else in the decision outside this quotation. ECI's argument that the decision places undue constraints on how often formal legal prejudice might occur is unfounded.

## II.    There Is No "Question of Exceptional Importance" in This Case

ECI insists that this case raises "questions of exceptional importance." Fed. R. App. P. 40(b)(2)(D). As the panel correctly found, however, none of the purported questions that ECI raises in its Petition are properly before the Court. *See Sweet*, 121 F.4th at 47; *see also Gould v. Alleco*, 883 F.2d 281, 284 (4th Cir. 1989) ("Because our resolution of the intervention/objection issues is completely dispositive, . . . we do not reach the issue of the propriety *vel non* of the settlement itself."). A court will not simply overlook a non-settling party's lack of standing because that party claims that "a settlement is allegedly illegal or against public policy." *Agretti*, 982 F.2d at 248; *see also Rahman v. Vilsack*, 673 F. Supp. 2d 15, 19 n.5 (D.D.C. 2009) (third-party claims that a settlement is "unfair and perhaps even unlawful" are "irrelevant

to the Court's standing analysis"). It was proper for the panel to decline to reach these questions, and they would not be a proper subject for en banc review.

Regardless, ECI does not identify any "question of exceptional importance" here, because none of its "questions" are actually germane to the *Sweet* litigation. Rather, ECI primarily presents a potpourri of policy arguments that have no place in an appeal by an intervenor from an order approving a negotiated settlement. *See Diamond v. Charles*, 476 U.S. 54, 62 (1986) ("[T]he decision to seek review must be placed in the hands of those who have a direct stake in the outcome," not those "who will use it simply as a vehicle for the vindication of value interests").

For example, ECI protests that approving the Settlement would "permit[] the Secretary of Education . . . to cancel, *en masse*, every student loan in the country." Petition at 2. Even a cursory reading of the Settlement shows that this is false: the Settlement resolves the specific legal claims of a certified class that consists of a defined number of people who affirmatively submitted BD applications to the Department during a certain period of time. *See Sweet*, 121 F.4th at 40.

Attempting to distract from the facts of this case, ECI focuses on *Biden v. Nebraska*, 143 S. Ct. 2355 (2023)—a case that was decided more than a year after the Settlement was signed and that addresses the Secretary of Education's authority under a different statute to implement a different program. *See id.* at 2364 (non-BD-related loan cancellation plan implemented under HEROES Act, not HEA).

15

ECI likewise argues that this case raises important questions about the procedural rights of regulated parties (*see* Petition at 17–19)—but the Supreme Court recently reaffirmed that the "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create" injury-in-fact. *Department of Education v. Brown*, 143 S. Ct. 2343, 2351–52 (2023) (quotation omitted). In *Brown*, "the Department's decision to give other people relief" did not cause the complainants "not to obtain the benefits they want." *Id.* at 2353. So too here: Providing class members with a resolution to their claims via litigation settlement does not deprive ECI of the only benefit it could ultimately seek—that is, to avoid recoupment proceedings.[5] There is thus no question, let alone an important question, at stake concerning ECI's assertion of entitlement to additional process.

---

[5] The panel found that ECI had Article III standing based on alleged reputational injury, not procedural harm. *Sweet*, 121 F.4th at 43. Notably, the panel found that this alleged injury was redressable by a favorable decision because, it speculated, "reversal or vacatur would enable and likely cause the Department to retract [Exhibit C]." *Id.* There was no evidence in the record that the Department would rescind Exhibit C. But moreover, Exhibit C is now beside the point: the list was intended to denominate who would receive relief in Group 1, and that relief has now been effectuated. *See* Transcript of Sept. 26, 2024, Hearing at 5–6, *supra*. The effectuation of settlement relief for class members who went to ECI means that those individuals no longer have live BD applications, and vacatur of the Settlement would not change that. Neither ECI's alleged reputational harm nor its alleged procedural harm, then, could be redressed by a favorable decision.

ECI's "claim, simply stated, is that [it] disagree[s] with the judgments made by the Executive Branch." *Laird v. Tatum*, 408 U.S. 1, 13 (1972). That is not enough to create a "question of exceptional importance" to justify en banc review.

## CONCLUSION

For the reasons stated above, ECI's petition for en banc review should be denied.

Dated: January 31, 2025

*Rebecca C. Ellis*

Rebecca C. Ellis
Rebecca C. Eisenbrey
Eileen M. Connor
PROJECT ON PREDATORY
STUDENT LENDING
769 Centre Street
Jamaica Plain, MA 02130
rellis@ppsl.org
reisenbrey@ppsl.org
econnor@ppsl.org
Tel.: (617) 390-2669

*Attorneys for Plaintiff-Appellees
Theresa Sweet, Chenelle Archibald,
Daniel Deegan, Samuel Hood, Tresa
Apodaca, Alicia Davis, and Jessica
Jacobson and all others similarly
situated*

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this brief complies with the limits set forth in Fed. R. App. P. 32(c)(2) and Ninth Circuit Rule 40-1(b) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 4,184 words.

This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and the type-style requirements of Fed. R. App. P. 32(a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman font.

Dated: January 31, 2025

_Rebecca C. Ellis_____
Rebecca C. Ellis

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: January 31, 2025

_Rebecca C. Ellis_____
Rebecca C. Ellis